**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **Association of American Railroads,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 1-23cv815 (DJN)** |
| | ) | |
| **Jehmal T. Hudson, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS COMMISSIONER BRICH AND DIRECTOR ROLBAND'S
MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT UNDER FEDERAL RULES OF CIVIL
PROCEDURE 12(b)(1) AND 12(b)(6)**

Jason S. Miyares
  *Attorney General*

Steven G. Popps (VSB #80817)
  *Deputy Attorney General*

Leslie A. T. Haley (VSB #36333)
  *Deputy Attorney General*

Thomas J. Sanford (VSB #95965)
R. Cooper Vaughan (VSB #92580)
  *Assistant Attorneys General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7704 – Telephone
(804) 371-0200 – Facsimile
AFerguson@oag.state.va.us

Andrew N. Ferguson (VSB #86583)
  *Solicitor General*

Erika L. Maley (VSB #97533)
  *Principal Deputy Solicitor General*

Graham K. Bryant (VSB #90592)
  *Deputy Solicitor General*

*Counsel for Defendants Michael Rolband and
Stephen C. Brich*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

LEGAL STANDARD ................................................................................................ 5

ARGUMENT ............................................................................................................. 6

I.    This Court lacks jurisdiction and the Association's claims are not justiciable.................. 6

    A.    Sovereign immunity bars the claims ...........................................................6

        1.    *Ex parte Young* is categorically inapplicable to state-law claims .................. 8

        2.    *Ex parte Young* does not apply to the Association's federal claims because the Defendants do not enforce the challenged statute ..................................... 9

    B.    This Court lacks jurisdiction to issue a declaratory judgment ................................12

    C.    The Association lacks standing .............................................................13

        1.    The Association alleges no injury in fact, and its claims are not ripe .......... 15

        2.    The Association lacks standing because its claims require the participation of individual members ...................................................................... 16

II.    The Association's claims also fail on the merits ............................................. 17

    A.    ICCTA does not preempt Va. Code § 56-16.3 ...................................................18

        1.    ICCTA does not facially preempt Va. Code § 56-16.3 ............................... 18

        2.    The "discrimination" test is inapplicable, and in any event, the statute does not discriminate against railroads ................................................................ 21

    B.    The Association's Fifth Amendment facial takings claims fail on the merits ........22

        1.    Railroads will receive just compensation and retain adequate remedies, thus foreclosing equitable relief ........................................................... 22

        2.    Takings under Va. Code § 56-16.3 are for a public use ................................ 24

C.     The Association's section 1983 claim lacks merit ................................................26

D.     The Association's state law claims also fail as a matter of law ............................28

E.     This Court should decline to hear any remaining claims .......................................29

CONCLUSION.................................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*24th Senatorial Dist. Republican Comm. v. Alcorn*,
 820 F.3d 624 (4th Cir. 2016) ................................................................5

*Adams v. Drew*,
 906 F. Supp. 1050 (E.D. Va. 1995) ......................................................30

*Adrian & Blissfield R. R. Co.—Pet. for Declaratory Ord.*,
 FD 36148, 2018 WL 659160 (STB Jan. 31, 2018) ...............................19

*Adrian & Blissfield R.R. Co. v. Blissfield*,
 550 F.3d 533 (6th Cir. 2008) ...........................................................19, 22

*AGCS Marine Ins. Co. v. Arlington Cnty.*,
 800 S.E.2d 159 (Va. 2017)....................................................................27

*Anderson v. Babb*,
 632 F.2d 300 (4th Cir. 1980) ................................................................21

*Antrican v. Odom*,
 290 F.3d 178 (4th Cir. 2002) ..................................................................8

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)................................................................................6

*Asmussen v. United States*,
 No. 14-825C, 2015 U.S. Claims LEXIS 39 (Fed. Cl. Jan. 27, 2015) ....27

*Atlas Underwriters, Ltd. v. State Corp. Comm'n*,
 375 S.E.2d 733 (Va. 1989)....................................................................23

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................................................6

*Berman v. Parker*,
 348 U.S. 26 (1954)................................................................................24

*Bland v. Roberts*,
 730 F.3d 368 (4th Cir. 2013) ..................................................................8

*Block v. Hirsch*,
 256 U.S. 135 (1921)..............................................................................25

*Bond & Share Co. v. Sec. & Exch. Comm'n*,
  303 U.S. 419 (1938)......................................................................................15

*Booth v. State of Maryland*,
  112 F.3d 139 (4th Cir. 1997) .........................................................................7

*Bragg v. West Va. Coal Ass'n*,
  248 F.3d 275 (4th Cir. 2001) ......................................................................8, 9

*Brown v. Montoya*,
  662 F.3d 1152 (10th Cir. 2011) .....................................................................7

*Carnegie-Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988)......................................................................................30

*Cemetery Ass'n v. Cox*,
  353 F.3d 1319 (11th Cir. 2003) ....................................................................17

*CGM, LLC v. BellSouth Telcoms., Inc.*,
  664 F.3d 46 (4th Cir. 2011) ..........................................................................13

*Charles E. Brauer Co. v. NationsBank of Va., N.A.*,
  466 S.E.2d 382 (Va. 1996)............................................................................29

*Chevron Corp. v. Camacho Naranjo*,
  667 F.3d 232 (2d Cir. 2012)..........................................................................13

*Church v. Kelsey*,
  121 U.S. 282 (1887)......................................................................................26

*City of Norfolk v. Chesapeake & Potomac Tel. Co. of Va.*,
  64 S.E.2d 772 (Va. 1951)................................................................................3

*City of Ozark v. Union Pac. R.R. Co.*,
  843 F.3d 1167 (8th Cir. 2016) ......................................................................19

*City of Reno v. Netflix, Inc.*,
  52 F.4th 874 (9th Cir. 2022) .........................................................................13

*City of S. Miami v. Governor of Fla.*,
  65 F.4th 631 (11th Cir. 2023) .......................................................................14

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)......................................................................................14

*Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*,
  915 F.2d 167 (5th Cir. 1990) ........................................................................13

*Creed v. Virginia*,
    596 F. Supp. 2d 930 (E.D. Va. 2009) ...................................................................8

*Cunningham v. Lester*,
    990 F.3d 361 (4th Cir. 2021) ...........................................................................7

*Disability Rights South Carolia v. McMaster*,
    24 F.4th 893 (4th Cir. 2022) ...........................................................................15

*Doe v. Sundquist*,
    106 F.3d 702 (6th Cir. 1997) ...........................................................................30

*Doyle v. Hogan*,
    1 F.4th 249 (4th Cir. 2021) ..............................................................................11

*Eastern Ala. Ry.—Pet. for Declaratory Ord.*,
    FD 35583, 2012 WL 758259 (STB Mar. 9, 2012).........................................19, 21

*Ford Motor Co. v. Department of Treasury of State of Ind.*,
    323 U.S. 459 (1945).........................................................................................6

*Fox v. Deese*,
    362 S.E.2d 699 (Va. 1987)..............................................................................29

*Franks Inv. Co. LLC v. Union Pac. R.R. Co.*,
    593 F.3d 404 (5th Cir. 2010) ...........................................................................20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)........................................................................................16

*Goldstein v. Pataki*,
    516 F.3d 50 (2d Cir. 2008)...............................................................................25

*Hanover Cnty. Unit of the NAACP v. Hanover Cnty.*,
    461 F. Supp. 3d 280 (E.D. Va. 2020) ...............................................................17

*Hawaii Housing Auth. v. Midkiff*,
    467 U.S. 229 (1984)...............................................................................24, 25, 26

*Hodel v. Virginia Surface Mining & Reclamation Ass'n. Inc.*,
    452 U.S. 234 (1981)........................................................................................16

*Hodge v. Jones*,
    31 F.3d 157 (4th Cir. 1994) .............................................................................27

*Jie Ao & Xin Zhou—Pet. for Declaratory Ord.*,
    FD 35539, 2012 WL 2047726 (STB June 6, 2012)...........................................19

*Kaetz v. United States*,
  159 Fed. Cl. 378 (2022) ..................................................................................27

*Kansas City S. R. Co. v. Arkansas La. Gas Co.*,
  476 F.2d 829 (10th Cir. 1973) .......................................................................23

*Kelo v. City of New London*,
  545 U.S. 469 (2005) (O'Connor, J., dissenting) ............................................25

*Kenny v. Wilson*,
  885 F.3d 280 (4th Cir. 2018) .........................................................................14

*Kirby v. City of Elizabeth City*,
  388 F.3d 440 (4th Cir. 2004) ...........................................................................7

*Knick v. Township of Scott*,
  139 S. Ct. 2162 (2019) .......................................................................16, 22, 24

*Langdon v. Swain*,
  29 Fed. Appx. 171 (4th Cir. 2002) ...................................................................7

*Louisville & Ind. R.R. Co. v. Ind. Gas Co.*,
  829 N.E.2d 7 (Ind. 2005) ...............................................................................23

*Lovern v. Edwards*,
  190 F.3d 648 (4th Cir. 1999) ...........................................................................5

*Maddox v. Commonwealth*,
  267 Va. 657 (2004) ...........................................................................................8

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*,
  312 U.S. 270 (1941) ........................................................................................13

*Maumee & W. R.R. & RMW Ventures, LLC*,
  FD34354, 2004 WL 395835 (STB Mar. 2, 2004) .....................................19, 22

*McBurney v. Cuccinelli*,
  616 F.3d 393 (4th Cir. 2010) ..............................................................9, 11, 12

*Michigan Corr. Org. v. Michigan Dep't of Corr.*,
  774 F.3d 895 (6th Cir. 2014) .........................................................................13

*Microchip Tech. Inc. v. Chamberlain Grp.*,
  441 F.3d 936 (Fed. Cir. 2006) .......................................................................13

*Montagna v. Holiday Inns, Inc.*,
  269 S.E.2d 838 (Va. 1980) .............................................................................26

*NAACP v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982) ..................................................................................12

*New Orleans & Gulf Coast Ry Co v. Barrois*,
  533 F.3d 323 (5th Cir. 2008) ...........................................................18, 19, 20

*Norfolk Southern Railway Co. v. City of Alexandria*,
  608 F.3d 150 (4th Cir. 2010) .....................................................................21

*Paulinus Chidi Njoku v. Unknown Special Unit Staff*,
  217 F.3d 840 (4th Cir. 2000) (table) .........................................................12

*PCS Phosphate Co. v. Norfolk S. Corp.*,
  559 F.3d 212 (4th Cir. 2009) ................................................................18, 19

*Pennell v. San Jose*,
  485 U.S. 1 (1988) ....................................................................................16

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ................................................................................8, 9

*Pharmaceutical Research & Mfrs. of Am. v. Williams*,
  64 F.4th 932 (8th Cir. 2023) ....................................................................24

*Phillips v. Mazyck*,
  643 S.E.2d 172 (Va. 2007) ...................................................................26, 27

*Preferred Sys. Sols., Inc. v. GP Consulting, LLC*,
  732 S.E.2d 676 (Va. 2012) .......................................................................29

*Presley v. City of Charlottesville*,
  464 F.3d 480 (4th Cir. 2006) ...................................................................28

*Quern v. Jordan*,
  440 U.S. 332 (1979) ..................................................................................7

*Railroad Comm'n of Tex. v. Pullman Co.*,
  312 U.S. 496 (1941) ................................................................................30

*Rent Stabilization Ass'n of City of N.Y. v. Dinkins*,
  5 F.3d 591 (2d Cir. 1993) .........................................................................14

*Richmond, Fredericksburg & Potomac R. Co. v. United States*,
  945 F.2d 765 (4th Cir. 1991) ......................................................................5

*Rindge Co. v. Los Angeles County*,
  262 U.S. 700 (1923) ................................................................................25

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984).............................................................................24

*Schaecher v. Bouffault*,
    772 S.E.2d 589 (Va. 2015)..................................................................28

*Schiff v. Kennedy*,
    691 F.2d 196 (4th Cir. 1982) ..............................................................12

*In re Sec'y of the Dep't of Crime Control & Pub. Safety*,
    7 F.3d 1140 (4th Cir. 1993) ..................................................................7

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
    549 U.S. 422 (2007)..............................................................................6

*Skidmore v. Norfolk S. Ry. Co.*,
    1 F.4th 206 (4th Cir. 2021) ..................................................................21

*Smith v. N.Y. State Sec'y of State*,
    No. 20-CV-4958, 2022 WL 970749 (E.D.N.Y. Mar. 31, 2022)...............12

*South Carolina Wildlife Fed'n v. Limehouse*,
    549 F.3d 324 (4th Cir. 2008) .....................................................9, 10, 12

*Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at*
    *Broadlands, LLC*,
    713 F.3d 175 (4th Cir. 2013) ..............................................................15

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)............................................................................14

*Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*,
    143 S. Ct. 2141 (2023)........................................................................14

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)............................................................................14

*Tanner v. City of Va. Beach*,
    674 S.E.2d 848 (Va. 2009)..................................................................21

*Trustgard Ins. Co. v. Collins*,
    942 F.3d 195 (4th Cir. 2019) ..............................................................15

*Union Pac. R.R. v. Chicago Transit Auth.*,
    647 F.3d 675 (7th Cir. 2011)..............................................................19

*United States v. Salerno*,
    481 U.S. 739 (1987)..........................................................18, 20, 21, 26

*Vinnedge v. Gibbs*,
    550 F.2d 926 (4th Cir. 1977) ...........................................................................................7

*Virginia Elec. & Power Co. v. Norfolk S. Ry. Co.*,
    No. CL93-856, 2002 Va. Cir. LEXIS 80 (Norfolk City Cir. Ct. July 3, 2002) .....................23

*Virginia Nat'l Bank v. Virginia*,
    320 F. Supp. 260 (E.D. Va. 1970) ....................................................................................3

*Virginia Off. for Prot. & Advoc. v. Stewart*,
    563 U.S. 247 (2011) ...........................................................................................................7

*Washington Legal Found. v. Legal Found. of Wash.*,
    271 F.3d 835 (9th Cir. 2001) ...........................................................................................17

*Whole Woman's Health v. Jackson*,
    142 S. Ct. 522 (2021) ...................................................................................................9, 11

*Wild Va. v. Council on Envtl. Quality*,
    56 F.4th 281 (4th Cir. 2022) .....................................................................................14, 16

*Will v. Michigan Dep't of State Police*,
    491 U.S. 58 (1989) ............................................................................................................6

*Wilson v. Wolf*,
    No. 2:20-cv-04560, 2021 U.S. Dist. LEXIS 15008 (E.D. Pa. Jan. 27, 2021) .........................26

*Wisconsin Cent. Ltd. v. City of Marshfield*,
    160 F. Supp. 2d 1009 (W.D. Wis. 2000) .........................................................................21

*Wise v. Circosta*,
    978 F.3d 93 (4th Cir. 2020) .............................................................................................30

*Ex parte Young*,
    209 U.S. 123 (1908) .....................................................................................................2, 11

*Zito v. North Carolina Coastal Res. Comm'n*,
    8 F.4th 281 (4th Cir. 2021) ...............................................................................................7

**Statutes**

28 U.S.C. § 1367 ....................................................................................................................30

49 U.S.C. § 10102 ..................................................................................................................18

49 U.S.C. § 10501 ..................................................................................................................18

220 Ill. Comp. Stat. 70/15 .....................................................................................................22

Iowa Code § 476.27 ...................................................................................................22

Minn. Stat. § 237.045 ..............................................................................................22

N.D.C.C § 49-09.1-05 ..............................................................................................22

Neb. Rev. Stat. § 86-164 ..........................................................................................22

2012 Va. Acts ch. 564 ..............................................................................................26

Va. Code § 8.01-195.1 *et seq.* ..................................................................................8

Va. Code § 33.2-223 ..................................................................................................4

Va. Code § 56-16.3 ........................................................................................... *passim*

Va. Code § 62.1-44:15:51 *et seq.*.........................................................................4, 11

Va. Code § 62.1-44.15:54 .........................................................................................11

Va. Code § 62.1-44.15:55 ......................................................................................5, 11

Va. Code § 62.1-44.15:58 .........................................................................................11

**Other Authorities**

5 VAC § 5-20-100 ....................................................................................................28

5 VAC § 5-20-140 ....................................................................................................28

5 VAC § 5-20-200 ....................................................................................................28

5 VAC § 5-20-210 ....................................................................................................28

9 VAC § 25-840 *et seq*.................................................................................................4

9 VAC § 25-880-1 *et seq.* ...........................................................................................4

24 VAC § 30-151-20 .............................................................................................4, 10

Christian Wolmar, The Great Railroad Revolution: The History of Trains in
   America (2012) ...................................................................................................1, 26

Fed. R. Civ. P. 12(b)(6)...............................................................................................6

Va. Const. art. IX, § 1 .................................................................................................3

Va. Const. art. IX, § 3 ...............................................................................................23

*Virginia State Fact Sheet*, Ass'n. of Am. R.R.s (Jun. 2023),
 https://tinyurl.com/29ubtez6 ..................................................................................................2

## INTRODUCTION

America's rapid economic development and expansion across North America in the nineteenth century was fueled by railroads. And those railroads were built largely through the States' eminent domain powers, without which the construction of tracks across thousands of miles of land owned by hundreds of thousands of different landowners would have been infeasible.[1] Broadband internet in the twenty-first century plays a similar role to the one played by railroads in the nineteenth, providing access to employment opportunities, economic development, education, and community life. And like railway tracks, the benefits of broadband require laying cables across many miles of land.

Large parts of rural Virginia lack access to broadband internet, and Virginians in those rural areas are deprived of the many benefits broadband internet provides. To rectify this inequality, the Virginia legislature recently enacted Va. Code § 56-16.3, authorizing the use of the eminent domain power to build the cable infrastructure required to expand broadband access to rural communities—the very same mechanism by which the railroads were built. But the Association of American Railroads—the largest lobbying and trade organization in the American rail industry—brings a pre-enforcement challenge contending that the statute is facially unconstitutional and preempted. These claims lack merit and should be dismissed.

The statute fully complies with the Takings Clause because it provides for railroads to obtain just compensation for any value lost when broadband service providers cross their property. And as numerous cases have held, federal law does not facially preempt such routine and necessary crossings of railroad property. Moreover, the Association cannot establish the required elements for either its section 1983 claim or its state law claims.

---

[1] Christian Wolmar, The Great Railroad Revolution: The History of Trains in America 25–26 (2012).

But this Court should not even reach the merits because sovereign immunity bars the claims. The Association relies on *Ex parte Young*, 209 U.S. 123 (1908), to overcome sovereign immunity, but it is blackletter law that *Ex parte Young* does not apply to *state* law claims against state officers. The Association's multiple state claims are therefore barred. *Ex parte Young* also does not apply to the Association's federal claims because the Department of Transportation and Department of Environmental Quality have no role whatsoever in the implementation or enforcement of the statute. Additionally, the Association lacks standing to bring a facial, pre-enforcement challenge to Va. Code § 56-16.3 based on its speculation about hypothetical crossings. The complaint should be dismissed.

## BACKGROUND

Virginia Code § 56-16.3 is a newly enacted statute designed to promote the Commonwealth's policy of rapidly expanding broadband internet access. Va. Code § 56-16.3(G). Expansion is impossible without crossing railroad property, which cuts long swathes across the Commonwealth.[2] The statute therefore provides for the exercise of the Commonwealth's eminent domain powers for broadband providers to cross railroad property, with accompanying procedural requirements and provisions for dispute resolution. Specifically, where crossing railroad property is "necessary in the construction of [the broadband service provider's] systems," the provider must apply to the railroad for the right to cross the railroad's property. Va. Code § 56-16.3(B). The provider's application must include, among other things, "engineering design plans [and] construction plans." *Id.* § 56-16.3(C)(1). The railroad can request additional information if needed. *Id.* § 56-16.3(C)(2). A proposed crossing must be "located, constructed, and operated so as not to impair, impede, or obstruct, in any material degree, the works and operations of the railroad to be

---

[2] See *Virginia State Fact Sheet*, Ass'n. of Am. R.R.s (Jun. 2023), https://tinyurl.com/29ubtez6 (depicting 3,413 miles of freight railroad tracks across Virginia).

crossed." *Id.* § 56-16.3(D). It also must be "controlled by customary and approved appliances, methods, and regulations to prevent damage to the works of the railroad and ensure the safety of its passengers." *Ibid*. The broadband company bears all expenses of the crossing. *Id.* § 56-16.3(G).

The statute sets default license fees to compensate railroads for the provider's crossing. The default license fee for a crossing is $2,000, unless the property has been abandoned and is no longer actively used for railroad service, in which case the default fee cannot exceed $1,000. Va. Code § 56-16.3(G), (I). Where the crossing is over a public right-of-way, the provider need not pay any default license fee. *Id.* § 56-16.3(K). The statute also sets a default of $5,000 for direct expenses paid to the railroad by the provider. *Id.* § 56-16.3(G). Where the default license fee constitutes "adequate compensation for the proposed crossing" and the crossing will not otherwise impose "undue hardship on the railroad company" or "create the imminent likelihood of danger to public health or safety," *id.* § 56-16.3(H), the railroad company must approve the provider's application within 35 days of receipt, *id.* § 56-16.3(C)(4).

The default license fee is just that—a default. Where a railroad believes that the default license fee is not "adequate compensation for the proposed crossing," or that the crossing would impose "undue hardship on the railroad company" or "create the imminent likelihood of danger to public health or safety," the railroad may petition the State Corporation Commission (SCC)[3] for review of the crossing. *Id.* § 56-16.3(H). The SCC enjoys plenary power to "make any necessary findings of fact and determinations related to the adequacy of compensation, the existence of undue hardship on the railroad company, or the imminent likelihood of danger to public health or safety,

---

[3] The SCC is an independent commission comprising commissioners elected by the General Assembly, Va. Const. art. IX, § 1, that "exercises judicial, legislative, administrative and ministerial functions," *Virginia Nat'l Bank v. Virginia*, 320 F. Supp. 260, 265 (E.D. Va. 1970); see *City of Norfolk v. Chesapeake & Potomac Tel. Co. of Va.*, 64 S.E.2d 772, 776–77 (Va. 1951).

as well as any relief to be granted, including any amount to which the railroad company is entitled in excess of the [default] license fee." *Ibid*. If the SCC rejects a railroad's petition, the railroad has the right to appeal to the Supreme Court of Virginia. *Id.* § 12.1-39.

The Virginia Department of Transportation (VDOT) and Department of Environmental Quality (DEQ) have no role in the exercise of eminent domain under Va. Code § 56-16.3, nor in resolving any disputes that arise from its exercise. The § 56-16.3 process implicates VDOT only if the broadband provider proposes to cross VDOT's property. The statute provides that the "Commonwealth shall grant a right-of-way to any broadband service provider seeking to" use the Commonwealth's property "for broadband deployment." Va. Code § 56-16.3(J). In addition, "no work of any nature shall be performed on any real property under the ownership, control, or jurisdiction of VDOT until written permission has been obtained from VDOT." FAC ¶ 12 (citing Va. Code § 33.2-223 and 24 VAC § 30-151-20); See Ex. A, Declaration of Stephen Brich (Brich Decl.) ¶ 3. That is true, however, of any work done by anyone on any VDOT property; that principle does not apply only to railroad crossings. 24 VAC § 30-151-20; Brich Decl. ¶¶ 4, 11.

DEQ similarly plays no role in the eminent domain process established by Va. Code § 56-16.3. Instead, the General Assembly has given DEQ general authority to implement environmental regulations that apply to all construction projects, including the prevention of water pollution. See, *e.g.*, Va. Code § 62.1-44:15:51 *et seq.*; 9 VAC § 25-840 *et seq.*; 9 VAC § 25-880-1 *et seq*. For example, Virginia requires developers to submit an erosion and sediment control plan to a Virginia Erosion and Sediment Control Program authority (VESCP authority) before beginning any construction project involving land-disturbing activities—including constructing underground utility lines. Va. Code § 62.1-44.15:51; see Ex. B, Declaration of Michael Rolband (Rolband Decl.) ¶¶ 3–12. Alternatively, an entity may obtain approval for "general erosion and

sediment control standards and specifications," making "[i]ndividual approval" of certain projects unnecessary. Va. Code § 62.1-44.15:55(D); see Rolband Decl. ¶¶ 13–18.

The Association filed a complaint, ECF No. 1, and the operative first amended complaint, ECF No. 35 (complaint or FAC), against VDOT Commissioner Stephen Brich and DEQ Director Michael Rolband[4] (collectively, the Defendants). The complaint raises claims under the Interstate Commerce Commission Termination Act, 49 U.S.C. §§ 10501 *et seq*. (ICCTA) (Count I); the Takings Clause of the Fifth Amendment to the U.S. Constitution (Counts II and III); the Due Process Clause of the Fourteenth Amendment (Count IV); and Virginia common law (Counts V–VI). FAC ¶¶ 152–86. The Association asks this Court to declare Va. Code § 56-16.3 unlawful, to enjoin "all Defendants, and their employees or agents, from prospectively taking any action to give effect to Virginia Code [] § 56-16.3 against Plaintiff and its members," and to award nominal damages for Counts IV–VI. FAC pp. 42–43.

## LEGAL STANDARD

"A defendant may challenge subject matter jurisdiction" under Rule 12(b)(1) both by "contend[ing] that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," and by "contend[ing] that the jurisdictional allegations of the complaint were not true." *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 629 (4th Cir. 2016) (cleaned up). "It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). In considering a Rule 12(b)(1) motion, a court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac*

---

[4] The complaint also names as a defendant SCC Commissioner Jehmal Hudson, who responds separately.

*R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

A defendant may also move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555.

## ARGUMENT

### I.     This Court lacks jurisdiction and the Association's claims are not justiciable

The Association's claims against Defendants should be dismissed because this Court lacks jurisdiction and the claims are not justiciable. *First*, sovereign immunity bars the claims. *Second*, declaratory relief against Commissioner Brich and Director Rolband is barred because they do not enforce the challenged statute. *Third*, the Association lacks standing, and its claims are not ripe.[5]

### A.     Sovereign immunity bars the claims

The Commonwealth's sovereign immunity bars the Association's claims. Sovereign immunity "denies to the federal courts authority to entertain a suit brought by private parties against a state without its consent." *Ford Motor Co. v. Department of Treasury of State of Ind.*, 323 U.S. 459, 464 (1945). Because the States necessarily act through their agents, the States' sovereign immunity extends to state officials sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

---

[5] Where, as here, there are multiple threshold reasons to dismiss a case, "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007).

Sovereign immunity bars the official-capacity claims against the Defendants[6] unless the Commonwealth waives immunity, Congress has validly abrogated the Commonwealth's immunity, or the *Ex parte Young* exception applies. See *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). The Association does not, and could not, allege that the Commonwealth has waived its immunity or consented to be sued.

Nor has Congress abrogated the Commonwealth's immunity here. The complaint states that its claims are brought pursuant to (a) the Declaratory Judgment Act, 28 U.S.C. § 2201, (b) 42 U.S.C. § 1983, (c) Virginia common law, or (d) *Ex parte Young*. FAC ¶ 5. The Declaratory Judgment Act does not abrogate a state's sovereign immunity. *Booth v. State of Maryland*, 112 F.3d 139, 146 (4th Cir. 1997). And it has long been settled that Congress did not abrogate the States' sovereign immunity in section 1983. *Quern v. Jordan*, 440 U.S. 332, 342 (1979); see also *In re Sec'y of the Dep't of Crime Control & Pub. Safety*, 7 F.3d 1140, 1149 (4th Cir. 1993). Further, "the Eleventh Amendment bars Fifth Amendment taking claims against States in federal court when the State's courts remain open to adjudicate such claims." *Zito v. North Carolina Coastal Res. Comm'n*, 8 F.4th 281, 286–87 (4th Cir. 2021). Virginia's courts are open to adjudicate takings

---

[6] The Association's individual-capacity claims are a pleading artifice. See *Cunningham v. Lester*, 990 F.3d 361, 368 (4th Cir. 2021). The Association cannot seek injunctive or declaratory relief from Defendants in their individual capacities; "plaintiffs may sue individual-capacity defendants only for money damages." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 452 n.10 (4th Cir. 2004). Nor can the Association bring a takings claim against Defendants individually; "takings actions sound against governmental entities rather than individual state employees in their individual capacities." *Langdon v. Swain*, 29 Fed. Appx. 171, 172 (4th Cir. 2002). The Association's request for nominal damages also fails because "liability will only lie" for individual capacity claims "where it is affirmatively shown that the official charged *acted personally* in the deprivation of [a plaintiff's] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). The FAC is devoid of any allegations establishing any "personal connection" between Commissioner Brich and Director Rolband and the deprivation of their rights. *Ibid*.

claims. See pp. 3, *supra*; 22–24, *infra*. Common law tort claims do not waive sovereign immunity, see *Maddox v. Commonwealth*, 267 Va. 657, 661 (2004), and the Association's tort claims do not qualify for the limited waiver of sovereign immunity in the Virginia Tort Claims Act (VTCA). VTCA actions must be brought against the Commonwealth itself, not its officials, and the waiver of sovereign immunity operates only in Virginia state courts, not federal court. See, *e.g.*, *Creed v. Virginia*, 596 F. Supp. 2d 930, 938–39 (E.D. Va. 2009); Va. Code § 8.01-195.1 *et seq*.

Thus, sovereign immunity bars the Association's claims unless it demonstrates that they fall within the limited *Ex parte Young* exception, which in certain circumstances "permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law." *Bland v. Roberts*, 730 F.3d 368, 390–91 (4th Cir. 2013). The Association's claims do not fall within this exception: several do not allege violations of federal law at all, and none shows the required special relationship between the alleged violations and the Defendants.

### 1.   *Ex parte Young* is categorically inapplicable to state-law claims

The *Ex parte Young* exception is categorically inapplicable to the Association's state-law claims, Counts V and VI. It is hornbook law that "the *Ex parte Young* exception requires the allegation of an ongoing violation of *federal* law" and "does not apply to actions against State [defendants] seeking to compel their compliance with *State* law." *Antrican v. Odom*, 290 F.3d 178, 186–87 (4th Cir. 2002) (emphasis added). In such a case, "the entire basis for the doctrine of" *Ex parte Young* "disappears" because a "federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). A State's "sovereign dignity reserves to its own institutions the task of keeping its officers in line with [state] law." *Bragg v. West Va. Coal Ass'n*, 248 F.3d 275, 297 (4th Cir. 2001). Indeed, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials

on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106. Thus "sovereign immunity . . . bars a court's grant of any type of relief, whether retrospective or prospective, based upon a State official's violation of State law." *Bragg*, 248 F.3d at 293.

Counts V and VI unequivocally seek to force state officers to comply with the Association's understanding of state law. See, *e.g.*, FAC p. 43, ¶ d (requesting with respect to Counts V and VI "a judgment against all Defendants awarding nominal damages and declaring that Virginia Code Ann. § 56-16.3 violates Section 11 of Article I of the Virginia Constitution . . . and is therefore unconstitutional."). These claims violate decades-old limitations on the *Ex parte Young* exception to sovereign immunity and should be dismissed.

### 2. *Ex parte Young* does not apply to the Association's federal claims because the Defendants do not enforce the challenged statute

*Ex parte Young* is also inapplicable to the Association's claims because neither Commissioner Brich nor Director Rolband play any role whatsoever in the enforcement of the challenged statute. The "exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, *and* who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act.'" *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010). Federal courts do not have the power "to enjoin challenged 'laws themselves'"; they have the power to enjoin people from engaging in certain conduct—including enjoining state officers from enforcing particular laws. *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 534–35 (2021). Thus, to invoke *Ex parte Young*, the Association must show a "'special relation' between the officer being sued and the challenged statute." *McBurney*, 616 F.3d at 399, 402. This requirement ensures both that "the appropriate party is before the federal court, so as not to interfere with the lawful discretion of state officials," and that "a federal injunction will be effective with respect to the underlying claim." *South*

*Carolina Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332–33 (4th Cir. 2008). A state official has a "special relation" to the challenged statute if he has "proximity to and responsibility for the challenged state action." *Id.* at 333. That requirement is not met here.

Tellingly, few paragraphs in the complaint even mention the Defendants or their respective agencies. FAC ¶¶ 11–12; 135–42. That is because Commissioner Brich and Director Rolband have nothing to do with enforcement of the challenged statute. See FAC ¶¶ 135–42 (claiming merely that Brich and Rolband's challenged actions are "preconditions of fiber railroad crossings").

In the case of Commissioner Brich, a broadband service provider must obtain VDOT's permission to perform a railroad crossing if that crossing occurs on VDOT's property. FAC ¶¶ 12, 45, 136–40; 24 VAC § 30-151-20. And, unsurprisingly, part of the process for obtaining permission to conduct work on the roads of the Commonwealth is having a plan to manage traffic. FAC ¶¶ 139–40; Brich Decl. ¶¶ 11–12. But the requirement to obtain VDOT's permission has nothing to do with the provisions of Va. Code § 56-16.3 that the Association challenges. To the contrary, a broadband service provider must obtain VDOT approval for *any* work it performs on VDOT property irrespective of whether the work involves a railroad crossing. See 24 VAC § 30-151-20; FAC ¶ 12 (alleging that broadband providers already "routinely coordinate permitting with VDOT as part of new and ongoing projects."); Brich Decl. ¶¶ 3–4, 13. Commissioner Brich plays no role in enforcing Va. Code § 56-16.3, in setting the amount of compensation for any condemnation, or in the procedures by which that compensation amount is determined. Brich Decl. ¶ 14.

The same is true of Director Rolband. Again, the FAC alleges nothing more than that DEQ has general regulatory authority over the environmental aspects of construction projects. In particular, if a railroad crossing involves "land-disturbing activities" or "stormwater

management," then "construction will require DEQ's advance review and approval by permit or as effectuated through" erosion and sediment control plans. FAC ¶¶ 46, 141–42. But these requirements apply to *any* construction project in the Commonwealth and have nothing to do with the eminent-domain procedures at issue here. See Va. Code §§ 62.1-44.15:51, :55; Rolband Decl. ¶¶ 3–4. And even that connection is overstated because approval comes from a VESCP authority, rather than DEQ directly. Va. Code §§ 62.1-44.15:51, :54, :55, :58; Rolband Decl. ¶¶ 5–19.

These allegations fall far short of showing that the Defendants "have a specific statutory duty to enforce" Va. Code § 56-16.3. *McBurney*, 616 F.3d at 400. *Ex parte Young* permits officer suits only against an officer who "must be able to enforce, if he so chooses, *the specific law* the plaintiff challenges." *Doyle v. Hogan*, 1 F.4th 249, 255 (4th Cir. 2021) (emphasis added). "Without this enforcement duty, the officer is merely 'a representative of the State' who cannot be sued because allowing such a suit would essentially 'make the State a party'"—precisely what the Constitution forbids. *Id.* at 254 (quoting *Ex parte Young*, 209 U.S. at 157). But the complaint does not "direct this Court to any enforcement authority" that either Commissioner Brich or Director Rolband "possesses in connection with" Va. Code § 56-16.3 "that a federal court might enjoin." *Whole Women's Health*, 142 S. Ct. at 534. Nor could it; Commissioner Brich and Director Rolband have no "responsibility for the[se] challenged state action[s]." *McBurney*, 616 F.3d at 399. All the Association has identified is the sort of "general authority to enforce the laws of the state [that] is an insufficient ground for abrogating Eleventh Amendment immunity." *McBurney*, 616 F.3d at 400–01; see also *Doyle*, 1 F.4th at 256 ("[A] general 'supervisory' role does not permit an individual to sue an officer under *Ex Parte Young*.").

Because the Defendants lack a "special relation" to the enforcement of Va. Code § 56-16.3 or any role whatsoever in the implementation of the challenged eminent-domain provisions,

*McBurney*, 616 F.3d at 399, the injunction would not "be effective with respect to the underlying claim," *Limehouse*, 549 F.3d at 332–33. The only conduct the Association alleges Defendants engage in is granting permission for broadband service providers to conduct work on VDOT property and permitting land-disturbing activities. But an injunction can "restrain only *unlawful* conduct and the persons responsible for conduct of that character." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 924 n.67 (1982). The Association includes no allegations suggesting anything unlawful about granting access to VDOT property or issuing environmental permits, both of which are powers exercised without regard to the eminent-domain provisions challenged here. Thus, instead of remedying the Association's "underlying claim," the requested injunction would simply "interfere with the lawful discretion of state officials" in applying the environmental laws of this Commonwealth and managing their own property. *Limehouse*, 549 F.3d at 333–34. Indeed, for crossings that did not involve VDOT's property or land-disturbing activities (*e.g.*, an aerial crossing), the requested injunction would accomplish nothing at all. See Rolband Decl. ¶ 21, Brich Decl. ¶¶ 3, 7. *Ex parte Young* therefore does not apply to the Association's claims.[7]

### B.     This Court lacks jurisdiction to issue a declaratory judgment

Similarly, because Commissioner Brich and Director Rolband lack authority to enforce Va. Code § 56-16.3 against the Association or its members, this Court lacks jurisdiction to issue a

---

[7] The Association cannot evade the Commonwealth's sovereign immunity by employing the disfavored practice of naming unidentified John Doe defendants. *Paulinus Chidi Njoku v. Unknown Special Unit Staff*, 217 F.3d 840, at *1 (4th Cir. 2000) (table); see FAC ¶ 13. Despite already having access to Defendants' documents via the Freedom of Information Act, FAC ¶¶ 136, 141, the complaint alleges no facts about the John Does and includes no basis to conclude they are "real, but unidentified, defendants," *Schiff v. Kennedy*, 691 F.2d 196, 197 (4th Cir. 1982). Nor does the Association plead facts demonstrating that "[t]hese seemingly mythical John Doe Defendants" would even have the necessary authority and duty to enforce the challenged provisions of Va. Code § 56-16.3 against the Association's members. *Smith v. N.Y. State Sec'y of State*, No. 20-CV-4958, 2022 WL 970749, at *7 (E.D.N.Y. Mar. 31, 2022). As with Commissioner Brich and Director Rolband, the purported John Does "lack the power and duty to grant the requested relief"; the claims against them should likewise be dismissed. *Smith*, 2022 WL 970749, at *8.

declaratory judgment in the Association's favor. The Declaratory Judgment Act "is remedial only and neither extends federal courts' jurisdiction nor creates any substantive rights." *CGM, LLC v. BellSouth Telcoms., Inc.*, 664 F.3d 46, 55 (4th Cir. 2011). Nor does it "create an independent cause of action." *Chevron Corp. v. Camacho Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012); see *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) (collecting cases). Likewise, "*Ex parte Young* by itself does not create . . . a cause of action;" rather, it "provides a path around sovereign immunity if the plaintiff already has a cause of action from somewhere else." *Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 905 (6th Cir. 2014). But except for the section 1983 claim and common-law claims, FAC ¶¶ 163–86, the Association has not identified any separate causes of action. Counts I–III should be dismissed on that basis.

In addition, the Declaratory Judgment Act requires showing "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Adverse legal interests "require that there be an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff has preempted it." *Microchip Tech. Inc. v. Chamberlain Grp.*, 441 F.3d 936, 943 (Fed. Cir. 2006); see also *Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990) (same). Because Commissioner Brich and Director Rolband have no authority to do anything under Va. Code § 56-16.3, much less to bring a cause of action against the Association's members, the Association cannot bring a claim for a declaratory judgment.

### C.    The Association lacks standing

The complaint should also be dismissed because the Association lacks standing. To establish "the 'irreducible constitutional minimum' of standing," plaintiffs must show that they

"(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339. Where, as here, plaintiffs seek "declaratory and injunctive relief, they must establish an ongoing or future injury in fact." *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018). To do that, a plaintiff must demonstrate that a "threatened injury is 'certainly impending,' or there is 'a substantial risk that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Thus, "[a] claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'" *Wild Va. v. Council on Envtl. Quality*, 56 F.4th 281, 294 (4th Cir. 2022).

The Association does not allege that it owns any property in Virginia that could be subject to a condemnation. Instead, it purports to bring suit on behalf of its members "who operate in Virginia." FAC ¶ 9. A representative organization like the Association may establish representational standing by adequately alleging that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 143 S. Ct. 2141, 2157 (2023). The Association must therefore show that at least one of its members suffers a "certainly impending" future injury, *City of S. Miami v. Governor of Fla.*, 65 F.4th 631, 637 (11th Cir. 2023) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)), and that the injury is such that the member's participation is not necessary to the conduct of the litigation, *Rent Stabilization Ass'n of City of N.Y. v. Dinkins*, 5 F.3d 591, 597

14

(2d Cir. 1993) (denying associational standing to landlords' group bringing as-applied takings claims). The Association can establish neither.

### 1.    The Association alleges no injury in fact, and its claims are not ripe

The Association's alleged injuries are highly speculative and hypothetical. The Association brings a facial, pre-enforcement challenge; it does not allege an actual or imminent crossing under Va. Code § 56-16.3—much less an actual injury. Rather, the Association asks this Court to imagine hypothetical crossings of unknown railroads at unidentified locations. And the complaint lacks anything approaching specific factual allegations about the particular problems it hypothesizes arising at actual railroad crossings. Instead, the Court is "invited to enter into a speculative inquiry for the purpose of condemning statutory provisions the effect of which in concrete situations, not yet developed, cannot now be definitely perceived." *Bond & Share Co. v. Sec. & Exch. Comm'n*, 303 U.S. 419, 443 (1938). To rule at this point would be to issue an "advisory decree" forbidden by Article III. See *ibid*; *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 200 (4th Cir. 2019). In addition, any future injuries would not be "fairly traceable to the challenged action" of Defendants or redressable by the requested relief against them, for the same reasons discussed above: Commissioner Brich and Director Rolband do not enforce the challenged provisions. *Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013); *Disability Rights South Carolia v. McMaster*, 24 F.4th 893, 902 (4th Cir. 2022) ("When a defendant has no role in enforcing the law at issue, it follows that the plaintiff's injury allegedly caused by that law is not traceable to the defendant."); see Part I.A.2, *supra*.

The Association's lack of standing is particularly acute because it brings facial claims. The Association's preemption claim is evaluated on an as-applied standard, see Part II.A.1, *infra*, and necessarily will turn upon the particular circumstances of specific proposed crossings. The same is true of the Association's takings claims. In the context of a taking, "[a] property owner has an

actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Knick v. Township of Scott*, 139 S. Ct. 2162, 2167 (2019). Here, no taking—much less an uncompensated taking—has yet occurred. The Association speculates that there could be future takings of railroad property, that the default license fees under Va. Code § 56-16.3(G) and (I) could be inadequate to compensate the railroads, and that broadband providers and the SCC could then refuse to provide just compensation. See FAC ¶¶ 97–110, 108–113. But these claims all turn on unknowable details about the undetermined crossings, the costs of those crossings, and the SCC's actions. Without identifying any actual railroad property used for a broadband crossing, it is impossible to know whether the value of that property will exceed the default compensation under Va. Code § 56-16.3, much less whether, if so, the railroad will be unable to obtain just compensation. Thus, this case falls squarely within the Supreme Court's warning that it is "particularly important in takings cases to adhere to our admonition that 'the constitutionality of statutes ought not be decided except in an actual factual setting that makes such a decision necessary.'" *Pennell v. San Jose*, 485 U.S. 1, 10 (1988) (quoting *Hodel v. Virginia Surface Mining & Reclamation Ass'n. Inc.*, 452 U.S. 234, 294–95 (1981)). Thus, the Association wholly fails to establish an injury in fact and therefore fails to establish that its members could sue in their own right. See *Wild Va.*, 56 F.4th at 294.

## 2. The Association lacks standing because its claims require the participation of individual members

The Association also lacks standing because "the claim asserted . . . requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). *First*, ICCTA preemption in this context is analyzed on an "as-applied" basis, requiring an evaluation of each individual crossing. See Part II.A.1, *infra*. Indeed, the Association alleges the "simple truth that crossing rail lines is a *particularized*

undertaking with respect to location, engineering, safety, and cost." FAC ¶ 2 (emphasis altered); see also *id*. ¶ 66 (comparing a "6-foot-wide single-track right-of-way" with a rail yard "of approximately 36 tracks spanning roughly 80 acres"). As a result, the Association's preemption claim requires "individualized proof" and cannot be adjudicated without the participation of individual member companies able to plead specific facts regarding particular crossings. *Hanover Cnty. Unit of the NAACP v. Hanover Cnty.*, 461 F. Supp. 3d 280, 289 (E.D. Va. 2020).

*Second*, the takings claims likewise require the participation of individual members whose property has allegedly been taken. The crux of the Association's claims is that the default license fee will deprive its members of just compensation for railroad crossings. But determining whether that is true will require "determining what, if any, just compensation is due to the owner of the property taken," which "necessarily requires the participation of the individual members." *Washington Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835, 850 (9th Cir. 2001) (holding plaintiff lacked "representational standing to pursue a Fifth Amendment taking claim"). That is particularly the case here "because the economic impact of these provisions will vary depending upon the economic circumstances of each of its members," including whether the value of the specific property at issue exceeds the statute's default compensation. See *Cemetery Ass'n v. Cox*, 353 F.3d 1319, 1322 (11th Cir. 2003) (rejecting associational standing in a challenge to a state law that capped the fee for transferring burial rights in a cemetery to $50). The Association has failed to establish that its claims can be litigated without the participation of individual members and accordingly lacks standing.

## II.   The Association's claims also fail on the merits

The Association's claims also lack merit. *First*, the ICCTA preemption claim (Count I) fails because the challenged law does not regulate or impede rail transportation. *Second*, the Fifth Amendment claims (Counts II–III) lack merit because the challenged law permits takings for a

legitimate public use with provisions for obtaining just compensation, and the Association seeks impermissible equitable relief. *Third*, the section 1983 claim (Count IV) fails to allege a violation of the Due Process Clause of the Fourteenth Amendment because the Association has not alleged the abridgement of a property right, much less a deprivation without due process. *Fourth*, the Association's state law claims are facially deficient. *Finally*, this Court should decline to exercise supplemental jurisdiction over the state-law claims (Counts V–VI), and it should abstain from hearing any remaining claims pursuant to the *Pullman* doctrine.

### A.     ICCTA does not preempt Va. Code § 56-16.3

#### 1.     ICCTA does not facially preempt Va. Code § 56-16.3

To state a facial preemption claim against Va. Code § 56-16.3, the Association must "establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). It cannot do so. To the contrary, easements for railroad crossings "do not fall into the category of . . . 'facially preempted' state actions" under ICCTA. *New Orleans & Gulf Coast Ry Co v. Barrois*, 533 F.3d 323, 333 (5th Cir. 2008).

ICCTA regulates rail transportation along with the construction, operation, and abandonment of rail tracks and facilities. 49 U.S.C. § 10501(b); *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 218 (4th Cir. 2009). With some exceptions, ICCTA grants the Surface Transportation Board (STB or the Board) exclusive authority to regulate transportation by rail. 49 U.S.C. § 10501; 49 U.S.C. § 10102(1). As part of that grant, ICCTA contains a clause preempting state regulation of rail transportation. 49 U.S.C. § 10501(b); *Norfolk S. Corp.*, 559 F.3d at 218. "Congress narrowly tailored the ICCTA preemption provision to displace only 'regulation,' *i.e.*, those state laws that may reasonably be said to have the effect of 'managing' or 'governing' rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *Norfolk S. Corp.*, 559 F.3d at 218. Courts defer to the

Board's interpretation of ICCTA, including its interpretation of the preemption provision. *Ibid*.

Because railroad property, by its nature, tends to be in contiguous strips stretching long distances, public utilities frequently need to cross railroad tracks. The use of eminent domain powers to secure nonexclusive easements for such crossings is "routine" and does not typically regulate rail transportation within the meaning of ICCTA. See *Eastern Ala. Ry.—Pet. for Declaratory Ord.*, FD 35583, 2012 WL 758259, at *4 (STB Mar. 9, 2012). "Crossing disputes, despite the fact that they touch the tracks in some literal sense, thus do not fall into the category of 'categorically preempted' or 'facially preempted' state actions." *Barrois*, 533 F.3d at 333 (quoting *Eastern Ala. Ry.*, 2012 WL 758259, at *2); *Adrian & Blissfield R.R. Co. v. Blissfield*, 550 F.3d 533 (6th Cir. 2008) (same); see *Adrian & Blissfield R. R. Co.—Pet. for Declaratory Ord.*, FD 36148, 2018 WL 659160, at *4 (STB Jan. 31, 2018) (same). Rather, the Board recognizes that "it is often possible for an easement that crosses over, under, or across a [railroad] right-of-way, to co-exist with active rail operations without necessarily interfering with the latter." *Jie Ao & Xin Zhou—Pet. for Declaratory Ord.*, FD 35539, 2012 WL 2047726, at *7 (STB June 6, 2012). Preemption is therefore evaluated on an "as-applied" basis, and such crossings are not preempted where they "would not impede rail operations or pose undue safety risks." *Maumee & W. R.R. & RMW Ventures, LLC*, FD34354, 2004 WL 395835, at *2 (STB Mar. 2, 2004); *Jie Ao & Xin Zhou*, 2012 WL 2047726, at *6; *City of Ozark v. Union Pac. R.R. Co.*, 843 F.3d 1167, 1169 (8th Cir. 2016).

The Association's ICCTA preemption claim requires a fact-specific, as-applied analysis, as "each instance necessarily varies with the facts of the case and the specific property subject to the condemnation." *Union Pac. R.R. v. Chicago Transit Auth.*, 647 F.3d 675, 679–80 (7th Cir. 2011). "General" allegations that crossings can cause "safety, drainage, and maintenance issues" are insufficient to find that a crossing is preempted—a successful preemption claim "would need to

19

address specific crossings." *Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404, 415 (5th Cir. 2010). Here, the Association speculates that some broadband crossings may not "conform to a railroad's engineering, safety, and permitting requirements," or may "create safety hazards." FAC ¶ 29. But the Association does not allege "that *all* crossings unreasonably interfere with railroad operations" or create safety hazards. *Barrois*, 533 F.3d at 335. The Association thus cannot "establish that no set of circumstances exists under which the Act would be valid," as required for its facial challenge. *Salerno*, 481 U.S. at 745.

Indeed, the legislature designed the statute to avoid interference with rail operations and to prevent safety risks. See Va. Code § 56-16.3(D); pp. 2–4, *supra*. A proposed crossing must be "located, constructed, and operated so as not to impair, impede, or obstruct, in any material degree, the works and operations of the railroad to be crossed." *Ibid*. It also must "prevent damage to the works of the railroad and ensure the safety of its passengers." *Ibid*. The statute therefore prohibits the unduly burdensome or dangerous crossings that the Association fears. See FAC ¶¶ 88–89.

The legislature further ensured a neutral adjudicator to resolve disputes about potential interference with railroad operations and safety concerns. If a "proposed crossing will cause undue hardship on the railroad company," then the company may petition the SCC for relief. Va. Code § 56.1-16.3(H). The statute also contemplates that a railroad may reject or delay applications when necessary for safety or operational reasons; a broadband provider may petition the SCC for relief if the railroad "*wrongfully* rejected or delayed its application." Va. Code § 56-16.3(H) (emphasis added). The SCC, assisted by "expert engineers," may "reject[ ], approv[e], or modify[ ]" the planned crossing. Va. Code § 56-16.3(H).

The Association speculates that the SCC will issue rulings conflicting with ICCTA because the statute is not worded identically to ICCTA. FAC ¶¶ 74–82. But again, such speculation cannot

support a facial challenge because the issue will not arise with *every* crossing. *Salerno*, 481 U.S. at 745. Indeed, it is highly speculative whether the statutory standards would ever conflict with ICCTA. The statute contains no definition of "undue hardship" or "wrongfully rejected or delayed," and the SCC—much less the Supreme Court of Virginia—has not interpreted it. The Association's facial preemption claim impermissibly rests on speculation, not only that such issues will in fact arise, but also that the SCC and Supreme Court of Virginia will interpret and apply the statute in a way that conflicts with federal law notwithstanding the Supremacy Clause. Again, such speculation is not a proper basis for a facial challenge, particularly in light of the basic principle that courts will interpret statutes to avoid such conflict. See *Anderson v. Babb*, 632 F.2d 300, 308 (4th Cir. 1980); *Tanner v. City of Va. Beach*, 674 S.E.2d 848, 852 (Va. 2009).

      **2.**      **The "discrimination" test is inapplicable, and in any event, the statute does not discriminate against railroads**

The Association cites *Norfolk Southern Railway Co. v. City of Alexandria*, 608 F.3d 150, 158 (4th Cir. 2010), for the proposition that "[a] state [or] local law[]" cannot "discriminate against rail carriers." FAC ¶¶ 33, 62; see *id.* ¶¶ 55–62, 153. That is certainly true, but the Association cites no case or STB decision applying that standard to nonexclusive easements. Nor could it, because the use of eminent domain to grant nonexclusive easements for utilities to cross railway tracks is not a "regulation" of rail transportation within the meaning of ICCTA.

In the ICCTA context, regulations are "those state laws that may reasonably be said to have the effect of 'managing' or 'governing' rail transportation." *Skidmore v. Norfolk S. Ry. Co.*, 1 F.4th 206, 213 (4th Cir. 2021). ICCTA can preempt some takings of railroad property if the taking would permanently prevent the use of the property for railroad operations. See, *e.g.*, *Eastern Ala. Ry.*, 2012 WL 758259, at *4; *Wisconsin Cent. Ltd. v. City of Marshfield*, 160 F. Supp. 2d 1009, 1013 (W.D. Wis. 2000). But eminent domain actions of nonexclusive easements to create railroad

crossings are not "regulations" of railroads, and therefore need not demonstrate that they are non-discriminatory. Rather, as discussed above, such crossings are "routine" matters that are not preempted unless they would "impede rail operations or pose undue safety risks." *Maumee & W. R.R.*, 2004 WL 395835, at *2 (STB Mar. 2, 2004); see pp. 19–20, *supra*.

In any event, Va. Code § 56-16.3 does not discriminate against railroads. "The fact that [a law] applies specifically to railroads does not make it discriminatory." *Blissfield*, 550 F.3d at 541. Rather, a railroad must demonstrate that the law treats it in a discriminatory fashion compared to "similarly situated entities." *Id.* at 541–42. The complaint contains no factual allegations demonstrating that other parties are similarly situated to railroads and are treated more favorably, and it therefore fails to show any discrimination.

### B.   The Association's Fifth Amendment facial takings claims fail on the merits

#### 1.   Railroads will receive just compensation and retain adequate remedies, thus foreclosing equitable relief

The Association's facial takings claims for injunctive and declaratory relief are invalid. Again, no violation of the Fifth Amendment's Takings Clause can occur until "the government takes [the owner's] property without paying for it." *Knick*, 139 S. Ct. at 2167. But even where a plaintiff has a Takings Clause claim, "equitable relief is generally unavailable" "[s]o long as the property owner has some way to obtain compensation after the fact." *Id.* at 2168, 2176, 2179.

This principle forecloses the Association's claims for equitable relief under the federal Takings Clause. Railroads have ample avenues to obtain just compensation for a taking under Va. Code § 56-16.3. The statute itself incorporates the constitutional requirement of adequate compensation. For most crossings, the statute sets a default $2,000 license fee. *Id.* § 56-16.3(G).[8]

---

[8] This default amount exceeds the compensation provided under similar statutes in other states. See, *e.g.*, N.D.C.C § 49-09.1-05 ($1,750); Iowa Code § 476.27(2)(b) (same); Minn. Stat. § 237.045 (6)(1) ($1,250); Neb. Rev. Stat. § 86-164 (same); 220 Ill. Comp. Stat. 70/15 ($1,500).

In the event that higher compensation is necessary, however, it shall be paid if "agreed to by the broadband service provider and the railroad company." Va. Code § 56-16.3(G)(i). And if no agreement is reached, the railroad may petition the SCC "for additional reimbursement." *Id.* § 56-16.3(G)(ii), (H)(i). And as "a tribunal of a stature and dignity equal to that of" Virginia's general jurisdiction trial courts, the SCC has authority to decide a constitutional challenge to Va. Code § 56.16-3's compensation mechanism. *Atlas Underwriters, Ltd. v. State Corp. Comm'n*, 375 S.E.2d 733, 734 (Va. 1989) (citing Va. Const. art. IX, § 3).

The Association points to two provisions setting a lower default license fee in certain circumstances: $1,000 for legally abandoned rail track, Va. Code § 56-16.3(I), and no fee for the crossing of a public right-of-way, *id.* § 56-16.3(K). But the claim that these provisions are facially invalid fails. The complaint does not allege that the value of a nonexclusive easement over abandoned land will always exceed $1,000. FAC ¶ 106. Indeed, the railroad will sometimes have *no* right to compensation for such easements because a railroad's property rights over a particular crossing may vary wildly. For example, a railroad may not even enjoy property rights to an abandoned right of way. See *Virginia Elec. & Power Co. v. Norfolk S. Ry. Co.*, No. CL93-856, 2002 Va. Cir. LEXIS 80, at *31, 37, 67 (Norfolk City Cir. Ct. July 3, 2002). And a broadband crossing through a public right-of-way will typically not diminish the property's value, and therefore not require compensation. See *Louisville & Ind. R.R. Co. v. Ind. Gas Co.*, 829 N.E.2d 7, 12 (Ind. 2005) (finding that placing a pipeline within a public-right of way "does not place an additional burden on the land," and so "the [r]ailroad is not entitled to compensation"). Further, railroads sometimes have no subterranean or aerial property rights, and thus their property rights will sometimes not be affected at all by a broadband crossing. See *Kansas City S. R. Co. v. Arkansas La. Gas Co.*, 476 F.2d 829, 835 (10th Cir. 1973). The facial challenge therefore fails.

If higher compensation is necessary, however, the railroad may petition the SCC. Va. Code § 56-16.3(H). Because a compensation remedy is available, injunctive or declaratory relief is inappropriate. *Knick*, 139 S. Ct. at 2167. The Association's contention that compensation is not an adequate remedy because its members will have to "engage in repetitive lawsuits indefinitely" also fails. FAC ¶ 133 (quoting *Pharmaceutical Research & Mfrs. of Am. v. Williams*, 64 F.4th 932, 942 (8th Cir. 2023)). The complaint does not allege facts showing how frequently broadband providers will seek to cross property of any particular railroad company, nor how frequently the value of property taken will exceed the default license fees—both of which are necessary to allege the need for "repetitive lawsuits indefinitely." Given the availability of "just compensation remedies to property owners who have suffered a taking . . . there is no basis to enjoin the government's action" or declare the statute invalid. *Knick* 139 S. Ct. at 2176. The takings claim should be dismissed.

### 2.     Takings under Va. Code § 56-16.3 are for a public use

The Association's claim that the statute facially violates the Fifth Amendment because takings of railroad property for broadband internet crossings are not for public use also fails. The Fifth Amendment's public-use requirement is "coterminous with the scope of a sovereign's police powers," and is satisfied "where the exercise of the eminent domain power is rationally related to a conceivable public purpose." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 240–41 (1984). "The definition [of public use] is essentially the product of legislative determinations addressed to the purposes of government." *Berman v. Parker*, 348 U.S. 26, 32 (1954). "Subject to specific constitutional limitations, when the legislature has spoken, the public interest has been declared in terms well-nigh conclusive." *Ibid.* "The role of the courts in second-guessing the legislature's judgment of what constitutes a public use is extremely narrow." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1014 (1984). For example, the taking of property for the construction of a private railroad—the method by which the Association's members came to acquire their expansive rail

networks, see p. 1 n.1, *supra*—or the construction of a public utility is a classic example of a "public use." *Kelo v. City of New London*, 545 U.S. 469, 498 (2005) (O'Connor, J., dissenting).

Here, the express purpose of the statute is "to promote the rapid deployment of broadband." Va. Code § 56-16.3(G). Railroad crossings can be proposed by broadband service providers only when "necessary" to extend their infrastructure. Va. Code § 56-16.3(A), (B), (F). Extending broadband internet access is clearly a "conceivable public purpose" no differently than the expansion of America's rail network or the laying of telephone and telegraph wires. See pp. 1–3, *supra*. Indeed, in modern society, adequate internet access is critical to promoting economic development, as well as access to education, and community and governmental services. See p. 1, *supra*. Granting nonexclusive easements to cross broadband systems over rail tracks is "rationally related" to that public interest. *Midkiff*, 467 U.S. at 241.

The Association nevertheless argues that this obvious public benefit is a pretext for "the private gain, private benefit, and private enterprise of broadband service providers." FAC ¶ 117. But this conclusory allegation is woefully insufficient to show that economic development is a mere pretext justifying the taking of "'one person's property . . . for the benefit of another private person without a justifying public purpose.'" *Goldstein v. Pataki*, 516 F.3d 50, 57, 60 (2d Cir. 2008). Particularly in a case where the public benefits of the taking are so obvious, the fact that broadband service providers may also benefit from the taking "does not condemn that taking as having only a private purpose." *Midkiff*, 467 U.S. at 243–44.[9] Indeed, such a principle would have condemned the construction of the railroads themselves, from which their owners reaped

---

[9] The Supreme Court "long ago rejected," *Midkiff*, 46 U.S. at 244, the requirement that "the entire community, []or even any considerable portion, should directly enjoy or participate in an improvement in order to constitute a public use," *Rindge Co. v. Los Angeles County*, 262 U.S. 700, 707 (1923); see *Block v. Hirsch*, 256 U.S. 135, 155 (1921).

tremendous profit. See Wolmar, p.1, n.1, *supra*, at xxi–xxii. The Association thus provides no reason to depart from the rule that "courts must defer to [the legislature's] determination that the taking will serve a public use." *Midkiff*, 467 U.S. at 244. And, in any event, they have failed plausibly to allege that no broadband crossing could ever be for a public use, as they must to state a facial takings challenge. See *Salerno*, 481 U.S. at 745.

### C.     The Association's section 1983 claim lacks merit

The Association states no valid due process claim under section 1983 because it has not identified a property interest and Virginia law provides sufficient process. The Association alleges that (1) Article I, Section 11 of the Constitution of Virginia "establish[es] a contractual relationship between" the Commonwealth and the Association's members, (2) that the provisions of Va. Code § 56-16.3 "abridge the terms of that contract," thereby, depriving the Association's members of their property right in that contract, and (3) that the deprivation occurs without due process in violation of the Fourteenth Amendment. FAC ¶¶ 165–71. This argument fails at every stage.

First, the Association's members lack a property interest because "[a] state constitution is not a contract." *Church v. Kelsey*, 121 U.S. 282, 283 (1887). "[I]t is the fundamental law adopted by the people for their government." *Id.* at 284; see *Wilson v. Wolf*, No. 2:20-cv-04560, 2021 U.S. Dist. LEXIS 15008, at *8 (E.D. Pa. Jan. 27, 2021) ("The Pennsylvania Constitution is not an enforceable contract. It is an organizational document for the Pennsylvania government."). This conclusion is a matter of hornbook contract law. A contract requires an "offer," "acceptance," and "consideration," *Montagna v. Holiday Inns, Inc*., 269 S.E.2d 838, 844 (Va. 1980), along with "mutuality of assent—the meeting of the minds of the parties," *Phillips v. Mazyck*, 643 S.E.2d 172, 175 (Va. 2007). The present version of Article I, Section 11 was proposed by the General Assembly and submitted to Virginia voters for their adoption. 2012 Va. Acts ch. 564. This legislative process did not involve an offer to the Association's members or their acceptance. And, of course, it is

impossible for the Association's members to have paid consideration. Likewise, there was no "meeting of the minds" between the Commonwealth's electorate and the Association's members. *Phillips*, 643 S.E.2d at 175. Thus, as courts have consistently held, a constitutional provision cannot "be considered an express or implied-in-fact contract." *Asmussen v. United States*, No. 14-825C, 2015 U.S. Claims LEXIS 39, at *6 (Fed. Cl. Jan. 27, 2015); see also *Kaetz v. United States*, 159 Fed. Cl. 378, 381 (2022) (collecting cases universally rejecting breach-of-contract claims brought on the theory that the Constitution is a contract).

Although the Supreme Court of Virginia has used the language of "implied contracts" to explain why sovereign immunity does not bar an inverse condemnation claim, that "characterization" by no means supports the Association's claim that Article I, Section 11 *itself* is a contract. *AGCS Marine Ins. Co. v. Arlington Cnty.*, 800 S.E.2d 159, 163–64 (Va. 2017). Rather, the Constitution of Virginia contains an "implied constitutional *promise*" that when the government takes property outside a condemnation proceeding, it will provide "compensation" for that taking. *Id.* at 164 (emphasis added). And in any event, this characterization of inverse condemnation claims is irrelevant to the Association's claims because the Association has not alleged that any taking has occurred. See Part I.C.1, *supra*. At most, the Association's members have an implied promise from the Commonwealth that if a future taking occurs, then they will be compensated. Of course, if an uncompensated taking actually occurs, any affected member will have a takings claim. See Part II.B.1, *supra*. But there is no support for the Association's assertion that a contract presently exists, much less that it has been abridged. The lack of any "protected liberty [or property] interest [] implicated by Defendants' actions obviates any federal constitutional requirement of procedural due process." *Hodge v. Jones*, 31 F.3d 157, 168 (4th Cir. 1994).

Second, even if the Association's members had a protected interest, binding Fourth Circuit precedent forecloses the Association's due process claim. "[I]n the takings context, the Due Process Clause only entitles property owners to adequate notice prior to a judicial condemnation or just-compensation proceeding." *Presley v. City of Charlottesville*, 464 F.3d 480, 490 (4th Cir. 2006). The Association's members would plainly have notice of proceedings before the SCC under Va. Code § 56-16.3 and the opportunity to be heard before that body. See, *e.g.*, SCC Rules of Practice and Procedure, 5 VAC §§ 5-20-100 (requiring service), -140 (service of filings), -200 (briefing), -210 (oral argument). And the Association's attempt to evade that fact by alleging that "Virginia's authorization of broadband service providers to cross a railroad's rail lines qualifies as a physical taking," FAC ¶ 98; see also *id.* ¶ 35, is to no avail because, even if true, "the government need not provide notice prior to a physical taking that . . . is not itself preceded by any judicial process," *Presley*, 464 F.3d at 490. Rather, "when the alleged deprivation is effectively a physical taking," like the Association claims here, "procedural due process is satisfied so long as private property owners may pursue meaningful postdeprivation procedures to recover just compensation." *Ibid*. The members of the Association plainly have such a procedure if their property is taken—they can seek just compensation from the SCC. Va. Code § 56-16.3(H). "Because Virginia law provides an adequate procedure for obtaining compensation for a taking— a procedure readily available to [the Association's members]—[the Association] has alleged no denial of procedural due process." *Presley*, 464 F.3d at 490.

### D.     The Association's state law claims also fail as a matter of law

Count V's allegation that Defendants tortiously interfered with the contract between the Commonwealth and the Association's members established by Article I, Section 11 of the Constitution of Virginia fails for two reasons. First, "a claim for tortious interference" requires "the existence of a valid contractual relationship," *Schaecher v. Bouffault*, 772 S.E.2d 589, 602

(Va. 2015), but the Association lacks a valid contract because state constitutional provisions are not contracts, *see* Part II.C, *supra*. And second, where a government employee "act[s] within the scope of his employment," as here, "the [government's] contract [is] also his contract." *Fox v. Deese*, 362 S.E.2d 699, 708 (Va. 1987). Thus, the claim for tortious interference fails because "a person cannot intentionally interfere with his own contract." *Ibid.*

Count VI's claim that Defendants tortiously interfered with the Association's members' purported contract expectancy, prospective business relationship, or prospective economic advantage to use their monopolistic position to extort higher fees from broadband service providers, FAC ¶¶ 181–83, similarly fails because it requires a plaintiff to show that a defendant "used improper means or methods to interfere with the expectancy." *Preferred Sys. Sols., Inc. v. GP Consulting, LLC*, 732 S.E.2d 676, 688 (Va. 2012). The Association cannot make that showing because "the lawful exercise of [a defendant's] statutory and contractual rights which incidentally may have interfered with the [plaintiff's] private negotiations . . . is not actionable and will not support recovery for tortious interference." *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 387 (Va. 1996). The Association conclusorily alleges that Defendants' actions were "in violation of state and federal law," FAC ¶ 184, but the few factual allegations merely show that Defendants are lawfully fulfilling their statutorily imposed duties to issue certain permits and protect the Commonwealth's environment. *See* FAC ¶¶ 11–12, 136–42. There is nothing illegal or improper about issuing a statutorily authorized permit, even if it may "incidentally" interfere with "private negotiations." *Charles E. Brauer Co.*, 466 S.E.2d at 387.

### E.      This Court should decline to hear any remaining claims

If the Court concludes that it would otherwise have jurisdiction over Counts V and VI, but *see* Part I.A.1, *supra*, it should decline to exercise supplemental jurisdiction over these state-law claims. A district court "may decline to exercise supplemental jurisdiction" if "the district court

has dismissed all claims over which it has original jurisdiction" or "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c). Both grounds are present here. *First*, all the federal claims should be dismissed. See Part II.A–C, *supra*. "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). *Second*, the state-law claims raise paradigmatic examples of "novel . . . issue[s] of State law." 28 U.S.C. § 1367(c). Count V depends on the novel theory of treating the Constitution of Virginia as a contract, and both Counts V and VI require interpreting a newly enacted statute that no court of the Commonwealth has yet addressed and analyzing how it interacts with the Constitution of Virginia. See *Doe v. Sundquist*, 106 F.3d 702, 708 (6th Cir. 1997) (declining supplemental jurisdiction due to "respect for the right of a state court system to construe that state's own constitution and [newly enacted state] statute"); *Adams v. Drew*, 906 F. Supp. 1050, 1058 (E.D. Va. 1995) (declining supplemental jurisdiction because "the Virginia courts have not passed on th[e] statute"); FAC ¶¶ 174–76, 184, p. 43 ¶ d. These questions of Virginia law should be left for a conclusive resolution by Virginia tribunals.

For similar reasons, this Court should abstain from hearing any remaining federal claims pursuant to *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). Here, both *Pullman* factors are met. *First*, construction of Va. Code § 56-16.3 and its interaction with Virginia's Takings Clause are "unclear issue[s] of state law," particularly in the absence of any authority from Virginia tribunals. *Wise v. Circosta*, 978 F.3d 93, 101 (4th Cir. 2020). *Second*, the Virginia law issues could be determinative of or moot the federal claims in this case. This Court should accordingly abstain. *Wise*, 978 F.3d at 102.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the First Amended Complaint.

Dated: October 13, 2023    Respectfully submitted,

             **MICHAEL ROLBAND AND STEPHEN C. BRICH**


          By: */s/ Andrew N. Ferguson*
              Andrew N. Ferguson (VSB #86583)
               *Solicitor General*

Jason S. Miyares       Erika L. Maley (VSB #97533)
 *Attorney General*       *Principal Deputy Solicitor General*

Steven G. Popps (VSB #80817)   Graham K. Bryant (VSB #90592)
 *Deputy Attorney General*     *Deputy Solicitor General*

Leslie A. T. Haley (VSB #36333)
 *Deputy Attorney General*

Thomas J. Sanford (VSB #95965)
R. Cooper Vaughan (VSB #92580)
 *Assistant Attorneys General*

Office of the Attorney General    *Counsel for Defendants Michael Rolband and*
202 North Ninth Street      *Stephen C. Brich*
Richmond, Virginia 23219
(804) 786-7704 – Telephone
(804) 371-0200 – Facsimile
AFerguson@oag.state.va.us

**<u>CERTIFICATE OF SERVICE</u>**

THIS IS TO CERTIFY that on October 13, 2023, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to all parties of record.

<u>    /s/ Andrew N. Ferguson    </u>
Andrew N. Ferguson (VSB #86583)
*Counsel for Defendants Michael Rolband and*
*Stephen C. Brich*

32