THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

ASSOCIATION OF AMERICAN
RAILROADS,

      **Plaintiff,**

      **v.**                                  **Case No.: 1:23-cv-815 (DJN)**

JEHMAL T. HUDSON, et al.

      **Defendants.**

**MEMORANDUM IN SUPPORT OF DEFENDANT JEHMAL T. HUDSON'S
MOTION TO DISMISS PURSUANT TO RULES 12(B)(1) AND 12(B)(6)**

**INTRODUCTION**

The plaintiff claims that Virginia Code § 56-16.3—which gives broadband companies a right to cross railroad lines—is preempted by federal law and violates the federal and state rights of its railroad company members. Because it fails to allege that this statute has been applied in any specific circumstance, the plaintiff only asks for a declaration that this statute is void and to enjoin its application.

But the Eleventh Amendment bars the plaintiff's claims against Defendant Commissioner Jehmal T. Hudson. The Eleventh Amendment prohibits federal courts from exercising "judicial power" over suits against state officials, *see* U.S. Const. amend. XI, and it protects Commissioner Hudson here.

Virginia Code § 56-16.3 gives the Virginia State Corporation Commission a purely judicial role: adjudicating disputes between broadband providers and railroad companies. That function insulates Commissioner Hudson from suit under the *Ex parte Young* exception to Eleventh Amendment immunity, just as it does for other state courts and state judges. Because Commissioner Hudson cannot be sued for prospective injunctive and declaratory relief, this court is without jurisdiction to hear the plaintiff's claims.

The Amended Complaint suffers from another threshold bar: it fails to allege standing under Article III or the Declaratory Judgment Act. Specifically, the Amended Complaint lacks any allegation that Code § 56-16.3 has been invoked by either the broadband providers, the railroad companies that are members of the plaintiff-organization, or the state officials named as defendants in this lawsuit. The plaintiff's claims, in other words, are entirely speculative and hypothetical.

The Declaratory Judgment Act and Article III of the United States Constitution preclude this sort of future casting. Article III standing "prevent[s] the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). So the "standing inquiry is especially rigorous when reaching the merits of the dispute would force [the court] to decide whether an action taken" by another branch of government is unconstitutional. *Roe v. Shanahan*, 359 F. Supp. 3d 382, 406 (E.D. Va. 2019) (internal quotes omitted). Applied rigorously or not, though, standing principles preclude the plaintiff's claims because there is no case or controversy to litigate, much less without the individual participation of the plaintiff's members.

2

"[F]ederal courts should strive to avoid rendering constitutional rulings unless absolutely necessary." *Norfolk S. Ry Co. v. City of Alexandria*, 608 F.3d 150, 156–57 (4th Cir. 2010). This is especially true if a case can be decided on a non-constitutional ground. *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 68 (4th Cir. 2023). Defendant Jehmal T. Hudson respectfully asks the Court to dismiss the Amended Complaint with prejudice.

## FACTUAL BACKGROUND

### 1.    THE VIRGINIA STATE CORPORATION COMMISSION.

The plaintiff sues Commissioner Hudson in his official capacity as a Commissioner of the State Corporation Commission of Virginia. The Commission is composed of three members elected by the General Assembly, and each member serves regular six-year terms. Va. Const. Art. IX, § 1. Commissioner Hudson is currently the only member of the Commission, and he is the only Commission-related defendant in this lawsuit.

The Commission is a unique government entity. Created by the Constitution of Virginia, the Commission is a "department of government" that issues charters and licenses for domestic and foreign corporations doing business in Virginia, including railroads. Va. Const. Art. IX, § 2; Va. Code § 12.1-12. The Commission is the "instrumentality through which the state exercises its governmental powers for the regulation and control of public service corporations." *Commonwealth v. Atl. Coast Line R. Co.*, 106 Va. 61, 64 (1906). To fulfill these roles, the Commission has "administrative, judicial, and legislative functions." *Potomac Edison Co. v. State Corp. Comm'n*, 276 Va. 577, 586 (2008).

3

In its judicial function, the Commission is constitutionally empowered to "function as a judicial tribunal having Statewide authority and whose verdicts may be appealed to the Supreme Court" of Virginia. *Croatan Books Inc. v. Commonwealth*, 574 F. Supp. 880, 885 (E.D. Va. 1983); *see also Potomac*, 276 Va. at 586 ("[T]he Commission is an expert tribunal . . . .). The Constitution expressly gives the Commission the "the powers of a court of record…in all matters within [its] jurisdiction." Va. Const. Art. IX, § 3; Va. Code § 12.1-13. And by statute, "the Commission's writs, processes, and orders are in the name of the Commonwealth of Virginia," Va. Code § 12.1–29, "all monies paid to the Commission are credited to the State Treasurer," Va. Code § 12.1–17, and all "Commission judgments must be entered in favor of the Commonwealth and paid into the State treasury," Va. Code § 12.1-35. The Commission is not independent of the Commonwealth; it "*is* the Commonwealth itself" and "has no life other than that derived from the State." *Croatan Books*, 574 F. Supp. at 885.

Because the Commission derives its power directly from the Constitution of Virginia and not any delegated authority from the executive or legislative branches, the Commission is not an "agency" under state law. *See Christian v. State Corp. Comm'n*, 282 Va. 392, 400 (2011) (finding that the Commission is not a "public body" or "agency" under FOIA laws). Indeed, one leading Virginia commentator has called the Commission "[a] fourth branch of the government." W. Hamilton Bryson, Judicial Independence in Virginia, 38 U. Rich. L. Rev. 705, 720 n.1 (2004).

4

2.      THE COMMISSION'S ROLE IN VIRGINIA CODE § 56-16.3.

Virginia Code § 56-16.3 reflects the Commonwealth's policy "to promote the rapid deployment of broadband throughout the Commonwealth." Va. Code § 56-16.3(G). The statute authorizes broadband providers to cross rail lines in the Commonwealth in exchange for paying a license fee to the railroad company whose line is crossed.

The statutory process is as follows. First, if a broadband provider "deems it necessary" to cross a rail line or facility, the provider applies to the railroad company. *Id.* at (B). The statute provides application requirements, including a statutory license fee of $2,000. *Id.* at (C)(1). Although the statute sets the default compensation fee at $2,000, the parties may negotiate a different amount. *Id.* at (G). The railroad company then must review and approve the application within a certain timeframe and can request additional information and "coordinate to schedule the crossing date" with the broadband provider. *Id.* at (C)(3), (C)(4) and (E).

Both parties have the right to petition the Commission during this process. The railroad company can petition the Commission if it believes:

1)  "the license fee is not adequate compensation for the crossing";

2)  "the proposed crossing will cause undue hardship on the railroad company"; or

3)  "the proposed crossing will create the imminent likelihood of danger to public health or safety."

Va. Code § 56-16.3(H). The broadband provider can also petition the Commission if it believes the railroad company violated the section "or has otherwise wrongfully rejected or delayed its application." *Id.*

5

Once either party files a petition, the Commission has jurisdiction to "hear and resolve claims between the railroad companies and broadband service providers concerning crossings and this section." *Id.* The Commission then has the authority to "make any necessary findings of fact and determinations related to" the issues raised, "as well as any relief to be granted, including the amount to which the railroad company is entitled in excess of the license fee." *Id.* The Commission can also employ expert engineers to advise the Commission on the plan for the crossing, the railroad company's objections, and whether to accept, reject, or modify the specifications in the plan. *Id.* The Commission "shall adjudicate any petition by the railroad company or broadband service provider and issue a final order within 90 days of the petition's initial filing." *Id.*

### 3.  THE AMENDED COMPLAINT'S ALLEGATIONS AGAINST COMMISSIONER HUDSON.

The plaintiff is a "voluntary association" that represents both freight and passenger railroads, including railroads located in Virginia. Am. Compl. (ECF No. 35) at ¶ 7. The plaintiff claims standing "in its representational capacity to assert the rights of its member railroads who operate in Virginia," including CSX Transportation and Norfolk Southern Railway. *Id.* at ¶ 9.

The plaintiff filed this declaratory judgment action against Commissioner Hudson and two other government officials—Michael Rolband of the Virginia Department of Environmental Quality, and Stephen Brich of the Virginia Department of Transportation. While the plaintiff asserts six counts against these defendants, plaintiff asserts each count pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201, and each count has the same goal: to declare Virginia Code § 56-16.3 as "void and unenforceable" because it

is preempted by federal law and is unconstitutional on its face. *See* Am. Compl. ¶¶ 5-6, 156, 159, 162, 172, 179, 186; *see also* pp. 42-43.

Count I claims that Virginia Code § 56-16.3 is preempted by the Interstate Commerce Commission Termination Act. Virginia Code § 56-16.3, the plaintiff asserts, "discriminates against railroads by imposing an artificial cap on the fees and cost railroads may charge broadband service providers." Am. Compl. ¶ 153. The plaintiff also alleges that the statute is preempted because it permits "broadband service providers to occupy railroad property permanently" and otherwise "unreasonably burdens rail transportation." *Id.* at ¶¶ 154-55.

Count II claims that Virginia Code § 56-16.3 violates the Takings Clause of the U.S. Constitution by restricting the amount of just compensation, and Count III claims the statute violates the Takings Clause by allowing a taking for private use. *Id.* at ¶¶ 158-59, 161-62.

Count IV asserts that Virginia Code § 56-16.3 violates the due process rights of plaintiff's members by depriving them of a property interest created by Article I, § 11 of the Virginia Constitution. Counts V and VI assert claims for tortious interference with a contract and tortious interference with a business expectancy, respectively. Counts IV, V, and VI are asserted against Commissioner Hudson in his individual capacity.

## STANDARD OF REVIEW

Commissioner Hudson moves to dismiss all claims against him for lack of jurisdiction. Federal Rule of Civil Procedure 12(b)(1) permits a party to dismiss claims for lack of subject-matter jurisdiction. *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir.

7

2005). Both standing and Eleventh Amendment immunity implicate a federal court's subject-matter jurisdiction and are appropriate to raise on a Rule 12(b)(1) motion. *Roach v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 48 (4th Cir. 1996); *CGM, LLC v. BellSouth Telecomm'ns*, 664 F.3d 46, 52 (4th Cir. 2011).

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted). When considering a motion to dismiss, the court should accept as true all well-pleaded allegations, viewed in a light most favorable to the plaintiff. *Ostrzenski v. Seigel,* 177 F.3d 245, 251 (4th Cir. 1999). However, the court does not accept legal conclusions or conclusory statements. *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).

## ANALYSIS

### 1.  THE PLAINTIFF'S CLAIMS ARE BARRED BY ELEVENTH AMENDMENT IMMUNITY.

#### 1.1.  The Eleventh Amendment protects Commissioner Hudson.

The Eleventh Amendment provides that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment therefore creates a form of "sovereign immunity" that bars "lawsuits brought by private citizens against their own state." *Hussein v. Miller*, 232 F. Supp. 2d 653, 656–57 (E.D. Va. 2002) (citation and internal quotes omitted). Thus, the Eleventh Amendment bars any claims against entities that are the "arm of the State," as well as claims against individual state officials sued in

8

their official capacity. *Goldman v. Northam*, 566 F. Supp. 3d 490, 500 (E.D. Va. 2021), *vacated and appeal dismissed on other grounds*, 41 F.4th 366 (4th Cir. 2022)).

When applying Eleventh Amendment immunity, courts distinguish between suits against government officials in their "official-capacity" and suits against them in their "personal-capacity." *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.* Official-capacity suits, by contrast, are akin to "pleading an action against an entity of which an officer is an agent." *Id.* (citation omitted). Although deemed official-capacity suits, such a lawsuit "is not a suit against the official but rather is a suit against the official's office." *Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001).

The Commission is an agency created exclusively by the Virginia Constitution as a "department of government." Va. Const. Article IX, § 2. It "*is* the Commonwealth itself." *Croatan Books*, 574 F. Supp. at 885. It thus enjoys Eleventh Amendment immunity, *see id.*, and Commissioner Hudson in his official capacity does too.

### 1.2. The *Ex parte Young* exception does not apply to the claims against Commissioner Hudson.

In its Amended Complaint, the plaintiff invokes the *Ex parte Young* exception to support its claims against Commissioner Hudson. Am. Compl. ¶ 5, 144. *Ex parte Young*, 209 U.S. 123 (1908), is based on the "fiction…that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011). The *Ex parte Young* exception "allows private citizens, in proper cases, to petition

a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute." *Antrican v. Odom,* 290 F.3d 178, 184 (4th Cir. 2002). This exception applies to claims against state officers sued in their official capacity, but only if a plaintiff seeks "prospective, injunctive relief against a state officer to prevent ongoing violations of federal law." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010).

The exception does not apply to the claims against Commissioner Hudson for three independent reasons. First, *Ex parte Young* does not apply to state courts and state judges, which is Commissioner Hudson's role under Virginia Code § 56-16.3. And second, the Amended Complaint fails to allege that Commissioner Hudson has adjudicated any dispute under the statute. Finally, the plaintiff's state-law claims fail because the exception only applies to violations of *federal* law.

### 1.2.1. *Ex parte Young* **does not apply because Commissioner Hudson's role under Code § 56-16.3 is purely judicial.**

*Ex parte Young* does not apply to state courts or judges. "The *Ex parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the *enforcement* of the laws of the state, *and* who threaten and are about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act.'" *McBurney*, 616 F.3d at 399 (first emphasis added) (quoting *Ex parte Young,* 209 U.S. at 155–56). This requires "a special relation between the officer being sued and the challenged statute before invoking the exception" that covers both "proximity to and responsibility for the challenged state action." *Id.* (cleaned up).

10

Given its proper target, the *Ex parte Young* exception to Eleventh Amendment immunity "does not normally permit federal courts to issue injunctions against state-court judges or clerks." *Whole Women's Health v. Jackson*, 142 S. Ct. 522, 532 (2021); *see Ex parte Young*, 209 U.S. at 163 ("[T]he right to enjoin . . . a state official . . . does not include the power to restrain a court from acting in any case brought before it"). Unlike state officials who enforce state laws, judges "resolve disputes between parties." *Whole Women's Health*, 142 S. Ct. at 532. And any mistakes they make in doing so are subject to those parties' appellate rights, obviating the need for "the entry of an *ex ante* injunction preventing the state court from hearing cases." *Id. Ex parte Young*, then, does not change the basic protections sovereign immunity gives to state court judges and "their ability to "act[] in any case." *Courthouse News Serv. v. Gilmer*, 48 F.4th 908, 912 (8th Cir. 2022) (distinguishing administrative duties of court clerks from courts hearing cases). "[T]he right to enjoin an individual, even though a state official, from commencing suits . . . does not include the power to restrain a court from acting in any case brought before it"; to do so "would be a violation of the whole scheme of our government." *Ex parte Young*, 209 U.S. at 163.

When exercising its judicial function, the Commission "is undeniably a court" and is entitled to Eleventh Amendment protection here. *See Virginia Nat. Bank v. Com. of Va. ex rel. State Corp. Comm'n*, 320 F. Supp. 260, 262 (E.D. Va. 1970). The Virginia Constitution clothes the Commission "with legislative, judicial, and executive powers." *Atl. Coast Line*, 106 Va. at 64. Exercising its judicial power, the Commission has "the powers of a court of

record . . . in all matters within [its] jurisdiction." Va. Const. Art. IX, § 3; Va. Code § 12.1-13 (same). These judicial powers include the power to:

- Administer oaths;
- Compel the attendance of witnesses;
- Compel the production of documents;
- Punish for contempt;
- Enforce compliance with its order via "fines or other penalties"; and
- Issue temporary and permanent injunctions.

Va. Code §§ 12.1-9 and -13. Plus, "at least one . . . Commissioner must have the qualifications prescribed for judges of courts of record." *Nat'l Home Ins. Co. v. State Corp. Comm'n*, 838 F. Supp. 1104, 1115 (E.D. Va. 1993) (citing Va. Code § 12.1-13). And "like other courts," the Commission "must afford all parties reasonable notice of proceedings, an opportunity to be heard, and the opportunity to present evidence prior to entry of any finding, order, or judgment." *Id.* (citing Va. Const. Art. IX, § 3 and Va. Code § 12.1-28).

In *National Home Insurance*, this Court concluded that the Commission was a "court" under state law and carried a "stature and dignity equal to that of a circuit court." *Id.* at 1114-15 (analyzing the phrase "court of competent jurisdiction" under the Product Liability Risk Retention Act). The Supreme Court of Virginia has held the same. *See Atlas Underwriters, Ltd. v. State Corp. Comm'n*, 237 Va. 45, 47 (1989) ("Clearly, [the Commission] is a tribunal of a stature and dignity equal to that of a circuit court."). This Court has also concluded that the Commission is a "court" under federal law, specifically finding that it constituted a "court" for purposes of the federal removal statute, 28 U.S.C. § 1441. *See Zayo Group LLC v. Norfolk So. Ry. Co.*, Case No. 1:21cv1300, 2022 WL 3273906, *4 (E.D. Va. 2022).

Turning to Code § 56-16.3 specifically, the Commission acts as a court, and only as a court, during a proceeding under that section. "[W]hen a body has both legislative and judicial powers, a determination of the capacity in which the body acts 'depends . . . upon the character of the proceedings.'" *Nat'l Home Ins. Co.*, 838 F. Supp. at 1116 (quoting *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 226 (1908)). When, for example, the Commission "enters a general order or regulation not directed against a specific party"—like when it sets utility rates—it acts in its legislative capacity. *Id.* But when the Commission "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist" and "enters an order or judgment against a specific, named party," the Commission "acts in an adjudicative capacity." *Id.*

Code § 56-16.3 provides a narrow—and solely *judicial*—role for the Commission: adjudicating disputes. After setting forth the requirements for the broadband company to apply for a crossing, the statute says the railroad "shall approve" the application "unless the railroad company petitions the Commission" under subsection H. Va. Code § 56-16.3(C). The statute sets the standard compensation fee at $2,000 but allows the parties to negotiate for something different. Va. Code § 56-16.3(G). The railroad company can file a petition with the Commission if it believes either that the statutory license fee is inadequate compensation, that the crossing will cause them "undue hardship," or that it will "create the imminent likelihood of danger" to the public. Va. Code § 56-16.3(H). The broadband provider, in turn, can petition the Commission "if the railroad company does not comply with this section or has otherwise wrongfully rejected or delayed its

13

application." *Id.* If, and only if, the provider or railroad files such a petition does the Commission have any role.

The Commission then has exclusive jurisdiction to "*hear and resolve claims* between the railroad companies and broadband service providers concerning crossings and this section." *Id.* (emphasis added). Once a petition is filed, the Commission has 90 days to "adjudicate" it. *Id.* To do so, it has the authority to

> make any necessary findings of fact and determinations related to the adequacy of compensation, the existence of undue hardship on the railroad company, or the imminent likelihood or any danger to public health or safety, as well as any relief to be granted, including the amount to which the railroad company is entitled in excess of the license fee.

*Id.* The Commission can also employ expert engineers to advise the Commission on the plan for the crossing, the railroad company's objections, and whether to accept, reject, or modify the specifications in the plan. *Id.* Armed with the procedural rights given by the Virginia Constitution for Commission proceedings, the parties in turn have the right "to be represented by counsel, to examine and cross-examine witnesses, to produce any and all legal evidence in their behalf, and to be fully heard in their own behalf on all matters of law or fact which they may desire to allege or put forward in their own defense." *Winchester & S.R. Co. v. Commonwealth*, 106 Va. 264, 273 (1906); *see generally* 5 VAC 5-20-10, et seq. (Commission's Rules of Practice and Procedure). Any aggrieved party then has an appeal of right of the Commission's ruling to the Supreme Court of Virginia. Code § 12.1-39.[1]

---

[1] This purely judicial role is the same for the Commission in other proceedings related to railroad crossings. *See* Va. Code § 56-16.1 (authorizing Commission to adjudicate

In short, when it comes to Code § 56-16.3, the Commission acts as a court. A proceeding under that statute involves two adverse parties—the broadband provider and the railroad—and a neutral arbiter, which is the Commission. At the conclusion of such proceeding, the Commission issues a "final order" that only binds those adverse parties. *See* Va. Code § 56-16.3(H). The Commission's role is therefore akin to that of the state judge in *Whole Woman's Health*. Enjoining its authority to resolve claims between broadband providers and railroad companies is no different than enjoining any other state court from deciding cases properly before it. This relief falls outside the bounds of *Ex parte Young* and is thus entitled to the protection of the Eleventh Amendment.

### 1.2.2. *Ex parte Young* does not apply because there is no allegation of an ongoing or imminent threat of enforcement.

*Ex parte Young* applies to claims against state officials sued in their official capacity, but only where a plaintiff seeks "prospective, injunctive relief against a state officer to prevent *ongoing violations* of federal law." *McBurney*, 616 F.3d at 399 (emphasis added). This "ongoing" requirement is satisfied when "a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent." *Id.* (internal citations and quotation marks omitted). Not only must the claim be directed against a state official with enforcement duties, but it must be one who "*threaten[s] and [is] about to commence proceedings . . . to enforce against parties affected [by] an unconstitutional act.*" *Id.*; *see Lighthouse Fellowship Church v. Northam*, 515 F. Supp. 3d 384,

---

petitions related to compensation and damages for crossings by telephone, telegraph, or electric power companies); Va. Code § 56-16.2 (same as to crossings by public utility lines).

397 (E.D. Va. 2021) (refusing to apply *Ex parte Young* because "Plaintiff has not alleged that the Governor . . . acted or threatened to act to enforce the Executive Orders.") (cleaned up), *vacated and remanded on other grounds*, 20 F.4th 157 (4th Cir. 2021). The imminence of enforcement applies even where a plaintiff files a facial challenge to a statute. *See Courthouse News Service v. Hade*, 580 F. Supp. 3d 289, 293-94 (E.D. Va. 2022) (facial challenge, finding the defendants had "acted or threatened to enforce" the allegedly unconstitutional statute at issue). Most importantly, this enforcement requirement in *Ex Parte Young* means the exception applies to enforcement by "executive officials." *Whole Woman's Health*, 595 U.S. at 39.

Commissioner Hudson does not "enforce" Code § 56-16.3 as an "executive official[]." As argued above, the Commission acts in a purely judicial capacity in presiding over a Virginia Code § 56-16.3 proceeding. By statute, the Commission cannot act under that statute until a railroad company or broadband provider files a petition. And when they do, Commissioner Hudson will be called upon to "adjudicate" the dispute. *See* Code § 56-16.3(H). To resolve the dispute, he will do what other judges do: make findings of fact and determinations of law and issue an order resolving the dispute between the parties before him. But Commissioner Hudson will not "enforce" the statute any more or less than a judge does in litigation.

In any event, the Amended Complaint lacks any allegation that Commissioner Hudson has adjudicated any dispute under the statute. Absent allegations that Commissioner Hudson's application of the statute is ongoing or imminent against the plaintiff's members, *Ex parte Young* cannot be invoked against him.

16

### 1.2.3. *Ex parte Young* does not apply to the plaintiff's state law claims.

*Ex parte Young* applies only where a plaintiff seeks prospective injunctive relief for ongoing violations of *federal* law. *McBurney*, 616 F.3d at 399. It does not apply to any alleged "violation of State law." *Bragg v. W. Virginia Coal Ass'n*, 248 F.3d 275, 292–93 (4th Cir. 2001). "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Thus, "suits against state officers for violations of state law are absolutely barred by Eleventh Amendment immunity." *Lighthouse Fellowship Church*, 515 F. Supp. 3d at 398.

Counts V and VI in the plaintiff's Amended Complaint assert violations of state law, so the Eleventh Amendment prohibits this Court from adjudicating them.

## 2.    THE PLAINTIFF HAS NO STANDING TO PURSUE ITS CLAIMS.

Article III gives this court jurisdiction to adjudicate "Cases" and "Controversies." U.S. Const., Art. III, Sec. 2. Courts "have no business deciding legal disputes or expounding on the law in the absence of such a case or controversy." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (internal quote omitted). A plaintiff must, therefore, "demonstrate standing—a personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* (internal quote omitted).

All six claims against Commissioner Hudson are claims pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. *See* Am. Compl. ¶¶ 5, 156, 159, 162, 172, 179, 186; *see also* pp. 42-43. The Declaratory Judgment Act gives the federal courts power "[i]n a case of actual controversy within its jurisdiction" to "declare the rights and other legal relations

of any interested party." 28 U.S.C. § 2201(a). Pursuant to Article III, a federal court may exercise its jurisdiction in a declaratory judgment proceeding only when "the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (internal quote omitted). Declaratory relief thus cannot rely on a "hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). When it comes to "cases raising allegations of an unconstitutional taking of private property," the presence of an "actual factual setting" is "particularly important" because Takings Clause jurisprudence relies on "ad hoc, factual inquiries" instead of a "set formula." *Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 294–95 (1981).

Plaintiff lacks standing because the Amended Complaint fails to allege an "actual controversy" under Article III and the Declaratory Judgment Act, and because Plaintiff lacks associational standing.

**2.1.    There is no actual controversy here because there are no allegations that Virginia Code § 56-16.3 has been either invoked by a broadband provider or applied by the Commission.**

The plaintiff's case is hypothetical and fails to allege an "actual controversy" or an "actual or threatened injury" to support jurisdiction under Article III or the Declaratory Judgment Act. And assuming it did, it is not one where Commissioner Hudson has adverse legal interests.

First, the Amended Complaint fails to allege an "actual factual setting" on which to base declaratory relief. *See Hodel*, 452 U.S. at 294–95. The Amended Complaint does not

allege that anything permitted by Virginia Code § 56-16.3 has, in fact, happened. There is no allegation that a broadband provider has filed an application with a railroad company; that a railroad company has received compensation—adequate or not—for a crossing by a broadband provider; that either a railroad company or a broadband provider has petitioned the Commission; or that the Commission has issued any ruling under the statute. In other words, the Amended Complaint does not allege that there is an ongoing or threatened proceeding pursuant to Virginia Code § 56-16.3 before Commissioner Hudson. Instead, the Amended Complaint invites the Court to imagine hypothetical takings, hypothetical unjust compensation, and hypothetical Commission proceedings and rulings. This sort of speculation is not an "actual or threatened injury" sufficient for Article III standing or the Declaratory Judgment Act. *See Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).

The absence of an "actual factual setting" in the Amended Complaint particularly undermines the plaintiff's "allegations of an unconstitutional taking of private property." *See Hodel*, 452 U.S. at 294–95. Courts analyze takings claim in an "ad hoc" style without a "set formula." *See id.* Whether compensation is adequate depends on the factual particularities of each taking. Consider, for example, the location, topography, degree of intrusion, method of crossing, or alleged disruption to railroad activities in any given rail line crossing. In a hypothetical Virginia Code § 56-16.3 proceeding, the Commission would consider these types of facts in determining just compensation.

The plaintiff's own allegations hint at this problem. Code § 56-16.3 provides $2,000 as the default license fee to be paid by a broadband provider to a railroad company, $1,000

for a crossing at a legally abandoned railroad, and $0 for a crossing at a public right-of-way. In attacking these fees as unjustly compensating its members, the plaintiff says these fee amounts are "generally" not reflective of either market value or the highest and best use. Am. Compl. ¶¶ 105-07. Maybe so. But in some circumstances, they might be. The point is, the specifics of each taking matter, and the plaintiff has none to offer.

Assuming the plaintiff's claim presented an "actual controversy," no proceeding under the statute would involve "adverse legal interests" between the plaintiff and the Commission. *See MedImmune*, 549 U.S. at 127. Article III gives courts the power to "resolve only actual controversies between *adverse* litigants." *Whole Women's Health*, 142 S. Ct. at 532 (emphasis added) (internal quote omitted). State courts and judges who decide cases "generally are not" litigants: "[N]o case or controversy exists between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute." *Id.* (quoting *Pulliam v. Allen*, 466 U.S. 522, 538 n. 18 (1984)).

As explained above, Commissioner Hudson's role under Code § 56-16.3 is purely judicial: he is tasked with resolving claims between adverse railroad companies and broadband providers, including specifically resolving whether the statutory license fee is adequate compensation. Under the statute, Commissioner Hudson "*adjudicate[s]* any petition" and "issue[s] a final order." Va. Code § 56-16.3 (H) (emphasis added). Resolving a dispute between adverse parties, by definition, makes Commissioner Hudson *not adverse* to the plaintiff in a hypothetical proceeding under Virginia Code § 56-16.3. In other words, the Commission has no stake in a Virginia Code § 56-16.3 proceeding. It is not entitled to any damages, award, or relief under that statute.

20

Finally, even if the plaintiff sufficiently invoked this court's declaratory jurisdiction, "it may nonetheless, in the exercise of its discretion, decline to entertain the action." *See Volvo*, 386 F.3d at 592 (Courts have "great latitude in determining whether to assert jurisdiction over declaratory judgment actions."). In deciding whether to exercise their discretion, "courts must refrain from making… premature interventions, especially in the field of public law"; "[a] maximum of caution is necessary [when] a ruling is sought that would reach far beyond the particular case." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 243-44 (1952). The plaintiff here seeks an extraordinary remedy: to declare a state statute void and unenforceable. Because "federal courts should strive to avoid rendering constitutional rulings unless absolutely necessary," *Norfolk S. Ry Co. v. City of Alexandria*, 608 F.3d 150, 156–57 (4th Cir. 2010), this Court should avoid ruling on the facial constitutionality of Virginia Code § 56-16.3 until there is a specific factual context for its application.

### 2.2. The plaintiff does not meet the requirements of associational standing because the participation of its individual members is required.

Aside from there being no case or controversy for the plaintiff to assert, the plaintiff also lacks the requisite elements for associational standing.

An association claiming representational standing must show:

> (1) "its members would otherwise have standing to sue in their own right";

> (2) "the interests it seeks to protect are germane to the organization's purpose"; and

> (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2158 (2023) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).

The plaintiff cannot meet the third element. "While the first two of these requirements are constitutional in nature, the third reflects the prudential concerns of 'administrative convenience and efficiency.'" *Jefferson v. School Bd. of City of Norfolk, Va.*, No. 2:10cv316, 2010 WL 11527350, at *3 (E.D. Va. Nov. 18, 2010) (quoting *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996)). "Whether the third prong is satisfied depends 'in substantial measure on the nature of the relief sought.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)). "If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Warth*, 422 U.S. at 515.

But an association does not "automatically satisfy[y] the third prong of the *Hunt* test simply by requesting equitable relief rather than damages." *Jefferson*, 2010 WL 11527350 at *3. Rather, "an organization lacks standing to assert claims of injunctive relief on behalf of its members where the fact and extent of the injury that gives rise to the claims for injunctive relief would require individualized proof" or "the participation of individual members in the lawsuit." *Hanover Cnty. Unit of the NAACP v. Hanover Cnty.*, 461 F. Supp. 3d 280, 289 (E.D. Va. 2020) (internal quotation marks omitted); 13A C. Wright & A. Miller, § 3531.9.5 (3d ed.) ("Individual participation also may seem required because of the need for specific fact information to illuminate the basis for decision.").

While the plaintiff here seeks injunctive and declaratory relief, "the fact and extent" of the claimed injuries to its members have fact-specific bases that require individual proof. This is particularly true of the plaintiff's takings claim. *See N. New Mexicans Protecting Land Water & Rts. v. United States*, 161 F. Supp. 3d 1020, 1041 (D.N.M. 2016), *aff'd*, 704 F. App'x 723 (10th Cir. 2017) ("[A]ssociations usually lack standing to bring takings claims for 'just compensation.'"). "[D]etermining what, if any, just compensation is due to the owner of the property taken . . . necessarily requires the participation of the individual members." *Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835, 849-50 (9th Cir. 2001). If and when its members face an alleged taking under Code § 56-16.3, or become subject to a Commission proceeding, or receive supposedly inadequate compensation, those members will have to establish the specifics.

Not every possible taking is the same. A crossing in Farmville, Virginia, is different than a crossing in the City of Alexandria; and a crossing above-ground is different than a crossing below-ground. And so on. The plaintiff cannot establish its takings claim in a vacuum. The particulars matter, and only the individual members can assert them. *See Jefferson*, 2010 WL 11527350 at *4 (finding the third prong not met because there was no allegation that the members' rights were threatened "as a whole" and proof related to "individual members" was required).

3.    **Count IV Fails to State a Claim against Commissioner Hudson in His Personal Capacity.**

3.1.   **Plaintiff cannot seek prospective declaratory and injunctive relief here**.

In Count IV, and pursuant to 42 U.S.C. § 1983, the plaintiff seeks injunctive and declaratory relief against Commissioner Hudson in his *personal* capacity. But "defendants are not subject to suit under § 1983 for injunctive or declaratory relief in their individual capacities." *Muhammad v. Arrett*, No. 1:19CV746, 2020 WL 7647635, at *5 (E.D. Va. Dec. 23, 2020) (citing authorities); *see Brown v. Montoya*, 662 F.3d 1152, 1161 n. 5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."); *Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) ("[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."). The plaintiff thus attempts to disguise Count IV as a personal capacity claim when it really seeks declaratory and injunctive relief that would only bind Commissioner Hudson in his official capacity. Section 1983 does not permit such a pleading.

Plus, the Amended Complaint lacks sufficient allegations about Commissioner Hudson's actions in his personal capacity. In a personal capacity clam under § 1983, "liability will only lie where it is affirmatively shown that the official charged *acted personally* in the deprivation of the plaintiffs' rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Such a claim requires factual allegations indicating the defendant's "personal involvement" in, or "personal responsibility" for, the alleged denial of a constitutional right. *Id.*; *Woodley v. Dep't of Corr.*, 934 F.2d 321 (4th Cir. 1991). The essence

of a § 1983 personal capacity claim, then, is "a showing of personal fault" against the defendant. *See Roberts v. Walker*, No. CIV.A. GLR-14-720, 2015 WL 993463, at *4, n.7 (D. Md. Mar. 4, 2015) (citing *Vinnedge*, 550 F.2d at 928), *aff''d*, 616 F. App'x 634 (4th Cir. 2015). There is no such showing here. *See* Virginia Code § 56-16.3(H) (stating that "the Commission" conducts the statutory proceeding). Va. Code § 56-16.3(H).

### 3.2.   Count IV fails to state a due process violation.

Count IV asserts a procedural due process claim under the United States Constitution. Am. Compl. ¶ 165.

According to Plaintiff:

- Article I, § 11 of the Virginia Constitution "establish[es] a contractual relationship between the Commonwealth of Virginia and [Plaintiff's] members as property owners";

- Code § 56-16.3 breaches the terms of that contract by altering the just compensation clause;

- Commissioner Hudson deprived Plaintiff of that property interest by "assuming the administrative role contemplated in" Virginia Code § 56-16.3 and giving practical effect to its terms; and

- Code § 56-16.3 "provides no notice or opportunity to challenge the fairness or legality of that deprivation."

Am. Compl. ¶¶ 167-70. As a procedural due process claim, Plaintiff must therefore demonstrate the existence of a protected property interest, that Commissioner Hudson deprived it of that interest, and that he did so without constitutionally sufficient process. *See Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 719 (E.D. Va. 2015). The Amended Complaint fails to meet these elements.

First, the Amended Complaint does not establish a protected property interest. Article I, § 11 does not establish a contract between the "Commonwealth" and Plaintiff's members. "A state constitution is not a contract." *Church v. Kelsey*, 121 U.S. 282, 283–84 (1887) (interpreting the Contract Clause of the United States Constitution). Plus, the "Commonwealth" generally—identified in the Amended Complaint as the contracting party, *see* Am. Compl. ¶ 167—can only enter into contracts through agents acting on its behalf. *See Richard L. Deal & Assocs., Inc. v. Commonwealth*, 224 Va. 618, 621 (1983). The Amended Complaint fails to allege that any agent of the Commonwealth entered into a contract with railroad companies. But more fundamentally, the constitution-is-a-contract theory would transform every constitutional violation into a breach of contract claim. Who would the defendant be in this new and expansive field of contract litigation?

And even if Article I, § 11 could establish a contract, it cannot create a property interest sufficient to trigger due process. A contract creates a property interest only if it creates an "entitlement in the continuation of a contract." *Amaram v. Virginia State Univ.*, 476 F. Supp. 2d 535, 542 (E.D. Va. 2007), *aff'd* 261 F. App'x 552 (4th Cir. 2008). Plaintiff claims a property right in the continued performance of Article I, § 11, which continued performance is abridged by Code § 56-16.3. But "the Takings Clause *protects* private property; it does not create it." *Washlefske v. Winston*, 234 F.3d 179, 183–84 (4th Cir. 2000); *see generally Bajwa v. Sunoco, Inc.*, 320 F. Supp. 2d 454, 459 n.4 (E.D. Va. 2004) (noting that aside from Virginia's express provision for damaged property, "the analyses under the Virginia and Federal constitutions are identical."). "Property interests," generally speaking, "are not created by the Constitution." *Roth*, 408 U.S. at 577. Instead, courts "look

26

outside the Takings Clause to traditional rules of property law to determine whether a constitutionally protected property interest exists." *Id*. Thus, Plaintiff has no property right in the continued "performance" of Article I, § 11.

Finally, Plaintiff fails to allege a deprivation without due process. *See Rusu v. U.S. I.N.S.*, 296 F.3d 316, 321 (4th Cir. 2002) (Due process merely requires "the opportunity to be heard at a meaningful time and in a meaningful manner."). The Amended Complaint asserts that Virginia Code § 56-16.3 "provides no notice or opportunity to challenge the fairness or legality" of the deprivation of Plaintiff's alleged property interest. Am. Compl. ¶ 170. But it does. Code § 56-16.3 provides both notice and a hearing. If a railroad company thinks that the statutory license fee "is not adequate compensation for the proposed crossing . . . then the railroad company may petition the Commission for relief." Va. Code § 56-16.3(H). The Commission then may determine, based on the evidence and argument of the railroad, adequate compensation. *Id.* The statute thus directly contemplates a railroad company having meaningful opportunity to petition the Commission for just compensation. Procedural due process does not mandate anything more.

**4.   Count V Fails to State a Claim for Tortious Interference with a Contract.**

In Count V, Plaintiff asserts that Commissioner Hudson tortiously interfered with the purported contract established by Article I, § 11 of the Virginia Constitution. Am. Compl. ¶ 174. The elements of a tortious interference with a contract claim are: (1) a valid contract, (2) the defendant's knowledge of that contract, (3) the defendant's intentional

interference with the contract causing a breach or termination thereof, and (4) resultant damage to the plaintiff. *Dunlap v. Cottman Transmission Sys.*, LLC, 287 Va. 207, 216 (2014).

The Amended Complaint fails to show the first element for the reasons explained above—Article I, § 11 does not establish a contract.

The claim fails the other elements too. A defendant "cannot intentionally interfere with his own contract." *Fox v. Deese*, 234 Va. 412, 427 (1987). Commissioner Hudson is a representative of the Commission, which "*is* the Commonwealth itself." *See Croatan Books Inc.*, 574 F. Supp. at 885. As such, he cannot interfere with the purported contract in Article I, § 11—the Commonwealth cannot tortiously interference with itself.

The Amended Complaint also fails to allege intentional interference on the part of Commissioner Hudson. Plaintiff alleges that Commissioner Hudson committed interference when he "knowingly and intentionally assume[d] the administrative role contemplated in § 56-16.3." Am. Compl. ¶ 177. This assumption of his role, Plaintiff goes on, "brought" the statute "into practical effect." *Id.*

It is unclear how "assuming" a role—administrative or not—can constitute intentional interference or bring a statute into effect. And Plaintiff does not allege any facts as to what Commissioner Hudson did to "assume" this role. Whatever that might mean, though, there is no allegation that Commissioner Hudson has ever presided over any proceeding pursuant to the statute or indeed taken any action with respect to the statute. Commissioner Hudson can only act under the statute when a railroad company or broadband provider asserts a claim at the Commission. And even then, he acts as a

judge and a court in adjudicating rights. He would not be interfering with a contract any more than this court interferes with contracts when it resolves contract disputes.

5. **C**OUNT **VI** **F**AILS TO **S**TATE A **C**LAIM FOR **T**ORTIOUS **I**NTERFERENCE WITH A **B**USINESS **E**XPECTANCY.

Unlike Counts IV and V, Count VI does not rely on a purported contract in Article I, § 11. Instead, Count VI asserts that Commissioner Hudson tortiously interfered with Plaintiff's business expectancy in its "longstanding practice of entering into contracts with broadband service providers regarding crossings of railroad rights-of-way." Am. Compl. ¶ 181. Count VI alleges that Commissioner Hudson interfered with such expectancy by "bringing the provisions of § 56-16.3 into practical effect." Am. Compl. ¶ 183.

Similar to interference with a contract, tortious interference with a business expectancy requires plaintiff to have a business expectancy, the defendant's knowledge of the expectancy, defendant's intentional interference with the expectancy that causes its termination, and damage. *Dunlap*, 287 Va. at 216. Unlike an interference with a contract claim though, a business expectancy interference claim also requires that the defendant act with "improper methods."

The plaintiff has not alleged any "improper methods" under Virginia law. "Improper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship." *Duggin v. Adams*, 234

29

Va. 221, 227 (1987). The Amended Complaint lacks any allegation regarding these methods.

Nor has the plaintiff demonstrated that Commissioner Hudson has intentionally interfered with the business expectancy that the plaintiff has with broadband providers. "[B]ringing the provisions" of the statute "into practical effect" is not intentional interference and does not rise to this level. *See* Am. Compl. ¶ 183. Commissioner Hudson's only role here, and it is one he is not alleged to have even undertaken yet, is to adjudicate a dispute under the statute. Even if acting in accord with that role interfered with the plaintiff's members' business expectancies, it does not amount to tortious interference. *See Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 387 (Va. 1996) ("the lawful exercise of [his] statutory and contractual rights which incidentally may have interfered with the [plaintiff's] private negotiations . . . is not actionable and will not support recovery for tortious interference.").

## CONCLUSION

For these reasons, the Court should dismiss the Amended Complaint with prejudice.

**Date:** October 13, 2023

Respectfully submitted,

JEHMAL T. HUDSON
By Counsel

/s/ John P. O'Herron
John P. O'Herron (VSB No. 79357)
Peter S. Askin (VSB No. 93371)
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, VA 23219
Telephone: (804) 698-6253
Facsimile: (804) 780-1813
joherron@t-mlaw.com
paskin@t-mlaw.com
*Counsel for Defendant Jehmal T. Hudson*

## CERTIFICATE OF SERVICE

I certify that on the 13th day of October, 2023, the foregoing was filed electronically using the CM/ECF system, and that a Notice of Electronic Filing (NEF) was thereby sent to the following counsel of record:

Lucas W.E. Croslow, Esq.
Gordon D. Todd, Esq.
Raymond A. Atkins, Esq.
Chike B. Croslin, Esq.
Stephen S. Laudone, Esq.
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202) 736-8711
gtodd@sidley.com
ratkins@sidley.com
ccroslin@sidley.com
lcroslow@sidley.com
slaudone@sidley.com
*Counsel for Plaintiff*

Andrew N. Ferguson, Esq.
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
Telephone: (804) 786-7704
Facsimile: (804) 371-0200
aferguson@oag.state.va.us
*Counsel for Defendants Robland and Birch*

/s/ Peter S. Askin
Peter S. Askin (VSB No. 93371)
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, VA 23219
Telephone: (804) 698-6253
Facsimile: (804) 780-1813
paskin@t-mlaw.com
*Counsel for Defendant Jehmal T. Hudson*