**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **Association of American Railroads,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 1-23cv815 (DJN)** |
| | ) | |
| **Jehmal T. Hudson, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS COMMISSIONER BRICH AND DIRECTOR ROLBAND'S REPLY
MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT UNDER FEDERAL RULES OF CIVIL
PROCEDURE 12(b)(1) AND 12(b)(6)**

Jason S. Miyares
   *Attorney General*

Steven G. Popps (VSB #80817)
   *Deputy Attorney General*

Leslie A. T. Haley (VSB #36333)
   *Deputy Attorney General*

Thomas J. Sanford (VSB #95965)
R. Cooper Vaughan (VSB #92580)
   *Assistant Attorneys General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7704 – Telephone
(804) 371-0200 – Facsimile
AFerguson@oag.state.va.us

Andrew N. Ferguson (VSB #86583)
   *Solicitor General*

Erika L. Maley (VSB #97533)
   *Principal Deputy Solicitor General*

Graham K. Bryant (VSB #90592)
   *Deputy Solicitor General*

*Counsel for Defendants Michael Rolband and
Stephen C. Brich*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

   I.   The Court lacks jurisdiction because sovereign immunity bars this action and the
       Association lacks standing ................................................................................................. 2

       A.   *Ex parte Young* does not apply ............................................................................. 2

       B.   The Association's individual capacity claims are a pleading artifice that cannot
            evade sovereign immunity ..................................................................................... 5

       C.   The Association lacks standing and its claims are unripe and inappropriate  for
            declaratory relief .................................................................................................... 6

   II.   The Association's claims fail on the merits ...................................................................... 8

       A.   ICCTA does not preempt Va. Code § 56-16.3 ...................................................... 8

           1.   ICCTA does not facially preempt the statute ............................................. 8

           2.   The as-applied ICCTA claim is premature and lacks merit ....................... 11

       B.   The Association's Fifth Amendment facial takings claims fail on the merits ........15

           1.   Railroads receive just compensation and retain adequate remedies, thus
              foreclosing equitable relief ......................................................................... 15

           2.   Takings under Va. Code § 56-16.3 are for a public use ............................... 17

       C.   The Association's personal capacity claims also fail because there is no contract
            nor cognizable allegations of personal involvement ..............................................18

   CONCLUSION.............................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adrian & Blissfield R.R. Co. v. Blissfield*,
    550 F.3d 533 (6th Cir. 2008) .................................................................10, 11, 13, 14

*AES Sparrows Point LNG, LLC v. Smith*,
    470 F. Supp. 2d 586 (D. Md. 2007) ........................................................................9

*AGCS Marine Ins. Co. v. Arlington Cty.*,
    800 S.E.2d 159 (Va. 2017)....................................................................................19

*American Apparel & Footwear Ass'n, Inc. v. Allen*,
    608 F. Supp. 3d 1005 (D. Or. 2022) ........................................................................9

*Anderson v. Edwards*,
    514 U.S. 143 (1995).................................................................................................9

*Antrican v. Odom*,
    290 F.3d 178 (4th Cir. 2002) ...................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................15, 20

*Association of Am. R.R. v. South Coast Air Quality Mgmt. Dist.*,
    622 F.3d 1094 (9th Cir.) .......................................................................................13

*BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.*,
    904 F.3d 755 (9th Cir. 2018) .................................................................................13

*Booth v. State of Md.*,
    112 F.3d 139 (4th Cir. 1997) ...................................................................................5

*Bostic v. Schaefer*,
    760 F.3d 352 (4th Cir. 2014) ...................................................................................4

*Bragg v. West Virginia Coal Ass'n*,
    248 F.3d 275 (4th Cir. 2001) .................................................................................18

*Burns v. Board of Supervisors*,
    238 S.E.2d 823 (Va. 1977)....................................................................................19

*CareFirst, Inc. v. Taylor*,
    235 F. Supp. 3d 724 (D. Md. 2017) ........................................................................8

*City of Ozark v. Union Pac. R.R. Co.*,
   843 F.3d 1167 (8th Cir. 2016) ....................................................................10, 14

*Cunningham v. Lester*,
   990 F.3d 361 (4th Cir. 2021) ..............................................................................5, 6

*DiGiacinto v. Rector & Visitors of George Mason Univ.*,
   704 S.E.2d 365 (Va. 2011)......................................................................................19

*Disability Rights South Carolina v. McMaster*,
   24 F.4th 893 (4th Cir. 2022) ...............................................................................3, 6

*Doyle v. Hogan*,
   1 F.4th 249 (4th Cir. 2021) .................................................................................3, 4

*Eastern Ala. Ry.—Pet. for Declaratory Ord.*,
   FD 35583, 2012 WL 758259 (STB Mar. 9, 2012)..........................................10, 11

*Ford Motor Co. v. Department of Treasury*,
   323 U.S. 459 (1945)................................................................................................5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)................................................................................................7

*Gutierrez de Martinez v. DEA*,
   111 F.3d 1148 (4th Cir. 1997) ...............................................................................20

*Hawaii Housing Auth. v. Midkiff*,
   467 U.S. 229 (1984)..............................................................................................17

*Idaho v. Coeur d'Alene Tribe of Idaho*,
   521 U.S. 261 (1997)................................................................................................5

*Jie Ao & Xin Zhou*,
   FD 35539, 2012 WL 2047726 (STB June 6, 2012)................................................14

*Kirby v. City of Elizabeth City*,
   388 F.3d 440 (4th Cir. 2004) .................................................................................6

*Knick v. Township of Scott*,
   139 S. Ct. 2162 (2019)................................................................................15, 16, 17

*Light v. Danville*,
   190 S.E. 276 (Va. 1937)...........................................................................................7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................................................6

*Martin v. Wood,*
    772 F.3d 192 (4th Cir. 2014) ...........................................................................5, 6

*Maumee & W. R.R. & RMW Ventures, LLC,*
    FD 34354, 2004 WL 395835 (STB Mar. 2, 2004)............................................10, 14

*McBurney v. Cuccinelli,*
    616 F.3d 393 (4th Cir. 2010) ........................................................................1, 2, 3

*NAACP v. Claiborne Hardware Co.,*
    458 U.S. 886 (1982)..............................................................................................4

*New Orleans & Gulf Coast Ry. Co. v. Barrois,*
    533 F.3d 321 (5th Cir. 2008) ............................................................................10

*Norfolk S. Ry. Co. v. City of Alexandria,*
    608 F.3d 150 (4th Cir. 2010) .......................................................................11, 12

*NYSDOT Island Park, LLC v. CSX Transp.,*
    559 F.3d 96 (2d Cir. 2009)................................................................................11

*Pennell v. San Jose,*
    485 U.S. 1 (1988).................................................................................................8

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984)...............................................................................................6

*PETA, Inc. v. N.C. Farm Bureau Fed'n, Inc.,*
    60 F.4th 815 (4th Cir. 2023) ...............................................................................9

*Pharmaceutical Research & Manufacturers of America v. Williams,*
    64 F.4th 932 (8th Cir. 2023) ........................................................................16, 17

*Prairie Band Potawatomi Nation v. Wagnon,*
    476 F.3d 818 (10th Cir. 2007) ........................................................................3, 4

*Skidmore v. Norfolk S. Ry. Co.,*
    1 F.4th 206 (4th Cir. 2021) ........................................................................10, 12

*South Carolina Wildlife Fed'n v. Limehouse,*
    549 F.3d 324 (4th Cir. 2008) .........................................................................3, 4

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016)..........................................................................................6, 7

*Sprint Telephony PCS, Ltd. P'ship v. Cty. of San Diego,*
    543 F.3d 571 (9th Cir. 2008) (en banc) ...............................................................9

*United States v. 8.41 Acres of Land*,
    680 F.2d 388 (5th Cir. 1982) .................................................16

*United States v. Hansen*,
    599 U.S. 762 (2023) ...........................................................9

*United States v. Salerno*,
    481 U.S. 739 (1987) .......................................................9, 15

*United States v. Stevens*,
    599 U.S. 460 (2010) ...........................................................9

*United States v. Virginia Electric Co.*,
    365 U.S. 624 (1961) ..........................................................16

*Vermont. Ry. v. Town of Shelburne*,
    287 F. Supp. 3d 493 (D. Vt. 2017)..........................................13

*Vermont Ry. v. Town of Shelburne*,
    918 F.3d 82 (2d Cir. 2019)...................................................12

*Whole Woman's Health v. Jackson*,
    595 U.S. 30 (2021) ............................................................4

*Williamson v. Stirling*,
    912 F.3d 154 (4th Cir. 2018) ................................................20

*Ex parte Young*,
    209 U.S. 123 (1908).........................................................1, 2

*Zayo Group, LLC v. Norfolk Southern Railway Co.*,
    No. 22-1837, 2023 WL 8230499 (4th Cir. Nov. 28, 2023) (unpublished) ............11

**Statutes**

49 U.S.C. § 10501................................................................11

Va. Code § 1-219.1..............................................................18

Va. Code § 55.1-306.1.......................................................17, 18

Va. Code § 56.1-16.3.....................................................14, 16, 17

**Other Authorities**

John Harrison, *Ex parte Young*, 60 Stan. L. Rev. 989 (2008) ........................8

**INTRODUCTION**

The Association of American Railroads' arguments that Va. Code § 56-16.3 is facially unconstitutional and preempted rest on misconstructions of the law and unsupported speculation about hypothetical problems. The statute promotes the public good by expanding broadband internet access to underserved rural areas. It prevents railroads from exploiting their unique position to delay broadband expansion or extract monopoly rents when providers cannot avoid crossing tracks. At the same time, the statute provides railroads adequate compensation for the crossings and ensures that the crossings will not damage railroad property or pose safety risks. What the Association portrays as inflexible caps on the available compensation and timelines are nothing of the sort. Rather, they are merely statutory defaults that may be adjusted as necessary. As the Association's own amicus shows, these defaults will be entirely adequate for many crossings. And where unusually complex crossings require greater compensation, or more time to be completed safely, railroads can negotiate the necessary adjustments with providers, and resolve any outstanding disputes by filing suit in the State Corporation Commission, with an appeal of right to the Supreme Court of Virginia. The Association's facial federal pre-enforcement challenge to the statute is therefore inappropriate. The speculative issues that the Association raises should be addressed only if and when they arise in the context of specific proposed crossings.

The suit suffers from multiple jurisdictional deficiencies. The Association argues that the heads of the Virginia Department of Transportation (VDOT) and Department of Environmental Quality (DEQ) fall within the *Ex parte Young*, 209 U.S. 123 (1908), exception to sovereign immunity simply because they issue permits under other statutes that the Association does not challenge. But this argument is flatly contrary to a bevy of Fourth Circuit precedents requiring "a 'special relation' between the officer being sued and *the challenged statute*." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (emphasis added). It is undisputed that VDOT

1

Commissioner Brich and DEQ Director Rolband do not enforce Va. Code § 56-16.3. For similar reasons, the Association lacks standing and its claims are unripe. The claims must be brought by its member railroads alleging facts about specific proposed crossings.

The Association's claims are equally faulty on the merits. Its argument that the takings clause of the Virginia Constitution creates a "contract" enforceable by a federal injunction against a proposed taking is baseless. Rather, the takings clause provides for suits for compensation for a taking in Virginia court. The Association's federal takings clause claims likewise lack merit; member railroads may bring suit for compensation if and when they are inadequately compensated for a particular crossing. The Association's facial preemption arguments under the Interstate Commerce Commission Termination Act (ICCTA) similarly fail because they can be raised only if and when any conflicts actually arise. This action should be dismissed.

## ARGUMENT

I.  **The Court lacks jurisdiction because sovereign immunity bars this action and the Association lacks standing**

A.   *Ex parte Young* **does not apply**

First, the Motion to Dismiss should be granted because sovereign immunity bars the claims. The Association concedes that Counts I–III can proceed only if they qualify for the limited "immunity exception recognized in *Ex Parte Young*." Opp. 7. But *Ex parte Young* does not apply because neither Defendant plays any role in enforcing the challenged statute.

The Association acknowledges that for *Ex parte Young* to apply, Defendants must "have 'some connection with the enforcement of' the statute." Opp. 15 (quoting *Ex parte Young*, 209 U.S. at 157). To establish such a connection, the Court "must find a 'special relation' between the officer being sued and the challenged statute." *McBurney*, 616 F.3d at 399. No such special relation exists here. The Association contends that VDOT Commissioner Brich and DEQ Director Rolband

are appropriate Defendants because VDOT must issue permits where a crossing occurs on VDOT property, and DEQ must issue environmental permits for land-disturbing activities. Opp. 15–16. But the VDOT and DEQ permits are not "the challenged state action." *McBurney*, 616 F.3d at 399. The Association does not dispute the independent legality of those permits or the laws authorizing them. Opp. 16 (maintaining "[i]t does not matter whether [Defendants'] permits and approvals are independently unlawful."). Rather, the challenged state action is the eminent domain procedures set forth in Va. Code § 56-16.3. See Opp. 1–2. It is undisputed that Commissioner Brich and Director Rolband play no role in resolving compensation or design disputes between broadband providers and railroads. See Brich Decl. ¶ 14; Rolband Decl. ¶ 22.

Apparently recognizing that it cannot satisfy the "special connection" requirement, the Association disputes its existence. Pointing to one sentence from a Tenth Circuit opinion, the Association argues that Defendants need only "assist in giving effect to the law." Opp. 16 (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007)). It effectively argues that this Court should expand the *Ex parte Young* exception to require merely but-for causation: because some crossings could not proceed absent VDOT and DEQ permits, Commissioner Brich and Director Rolband are appropriate Defendants. This argument is contrary to Fourth Circuit precedent, which requires an *Ex parte Young* defendant to have "proximity to and responsibility for the challenged state action." *South Carolina Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008). A "general duty to enforce state laws" is not enough. *Disability Rights South Carolina v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022). Rather, *Ex parte Young* requires that the defendant "be able to enforce, if he so chooses, *the specific law* the plaintiff challenges." *Doyle v. Hogan*, 1 F.4th 249, 255 (4th Cir. 2021) (emphasis added). Whether this duty arises from "general law," Opp. 17, or from the challenged statute itself, is irrelevant. The duty

that triggers the *Ex parte Young* exception is the duty to enforce "the law at issue," no matter where that duty arises. *Doyle*, 1 F.4th at 255. Because Commissioner Brich and Director Rolband do not enforce Va. Code § 56-16.3, *Ex parte Young* is inapplicable.

Even the cases that the Association relies upon do not support its expansive approach to *Ex parte Young*. *Wagnon* clarifies that "state officials must have a particular duty to 'enforce' *the statute in question* and a demonstrated willingness to exercise that duty." *Wagnon*, 476 F.3d at 828 (emphasis added). Defendants in that case met that requirement because they "decided to deny the validity of the Tribe's [motor vehicle] registrations," the challenged state action there. *Wagnon*, 476 F.3d at 821, 828. The other cases that the Association cites likewise involve defendants with authority to enforce the challenged provisions. See *Bostic v. Schaefer*, 760 F.3d 352, 371 & n.3 (4th Cir. 2014) (circuit court clerk who was "responsible for issuing marriage licenses," and denied license to a same-sex couple, was a proper defendant in challenge to the "license denial").

The Opposition further confirms that Commissioner Brich and Director Rolband are not proper *Ex parte Young* defendants because any injunction against them would not "be effective with respect to [the Association's] underlying claim." *Limehouse*, 549 F.3d at 332–33; see also Brich and Rolband Br. in Supp. of Mot. to Dismiss at 11–12, ECF No. 48 (hereinafter, "Br."). The Association acknowledges that "some crossings may not require VDOT or VDEQ approval." Opp. 17 n.8. Far from "irrelevant," *ibid.*, this fact disproves the Association's theory that Defendants' "general authority is essential to fully effectuating § 56-16.3." Opp. 15. Moreover, an injunction can "restrain only *unlawful* conduct and the persons responsible for conduct of that character." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 924 n.67 (1982); *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021). Because the Association does not claim that Defendants' issuance of the permits is unlawful, an injunction against them would be improper. See Br. 12. The

4

Association offers no response to this point.

**B.**   **The Association's individual capacity claims are a pleading artifice that cannot evade sovereign immunity**

Sovereign immunity also bars the Association's putative "personal capacity" claims (Counts IV–VI).[1] Br. 7 n.6. The Association does not dispute that the *Ex parte Young* exception is categorically inapplicable to Counts V and VI because they are state-law claims, and the exception reaches only "an ongoing violation of *federal* law." *Antrican v. Odom*, 290 F.3d 178, 186–87 (4th Cir. 2002) (emphasis added); see also Br. 8–9.

The Association's sole argument is that "sovereign immunity is irrelevant" to personal-capacity claims. Opp. 7–8. That argument is incorrect. See Br. 7 n.6. The Association cannot "sidestep the substantive focus of sovereign immunity doctrine through the subterfuge of artful pleading." *Cunningham v. Lester*, 990 F.3d 361, 368 (4th Cir. 2021); *Martin v. Wood*, 772 F.3d 192, 195 (4th Cir. 2014) ("[A]llowing an action to proceed simply because the complaint names a state official in his or her individual capacity, . . . 'would be to adhere to an empty formalism and to undermine the principle . . . that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction.'") (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997). Personal-capacity claims are thus treated as official-capacity claims when "state officials . . . are merely the nominal defendants and 'the state is the real, substantial party in interest.'" *Booth v. State of Md.*, 112 F.3d 139, 142 (4th Cir. 1997) (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945) (overruled on other grounds)).

The Commonwealth is undoubtedly the "the real party in interest" here. *Cunningham*, 990 F.3d at 367. A State is the real party in interest where "the named defendants committed the

---

[1] The Association clarifies that Counts I–III are exclusively official capacity claims, while Counts IV–VI are brought exclusively as personal capacity claims. Opp. 6–8.

complained-of conduct in the course of performing their official duties," and the "effect of the relief sought" would be to invalidate state law. *Id.* at 366 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 107 (1984)). Here, the "complained-of conduct" is Defendants' granting of regulatory permits, an act they perform only as a part of their "official duties." *Ibid*. Furthermore, the "relief sought" on the personal-capacity claims includes declarations that Va. Code § 56-16.3 violates the United States Constitution and the Constitution of Virginia, as well as an injunction to prevent Defendants from "taking any action to give effect to Virginia Code [] § 56-16.3." FAC pp. 42–43, Prayer for Relief ¶¶ C–E. This relief obviously runs against the Commonwealth, not Commissioner Brich and Director Rolband as individuals. Thus, it "'could only be awarded against the [defendants] in their official capacities.'" Opp. 43 (quoting *Kirby v. City of Elizabeth City*, 388 F.3d 440, 452 n.10 (4th Cir. 2004)). Accordingly, Counts IV–VI are also barred by sovereign immunity. Br. 7 n.6.

### C.    The Association lacks standing and its claims are unripe and inappropriate for declaratory relief

This Court additionally lacks jurisdiction because the Association does not have standing. The Association contends that its members have been injured, but glosses over the requirements that those injuries be "fairly traceable to [Defendants'] challenged conduct" and redressable by the Court. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); Br. 13–14; Opp. 19–20. Commissioner Brich and Director Rolband have not caused the Association's purported injuries. See Part I.A, *supra*. Indeed, the Association maintains that each of the claimed injuries "derives directly from the statute." Opp. 19–20. But "[w]hen a defendant has no role in enforcing the law at issue . . . the plaintiff's injury allegedly caused by that law is not traceable to the defendant." *McMaster*, 24 F.4th at 902; see also *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); Br. 15. Commissioner Brich and Director Rolband do not enforce Va. Code § 56-16.3. For the same

6

reason, an injunction against Commissioner Brich and Director Rolband would not redress the Association's purported injuries. See Part I.A, *supra*; *Spokeo*, 578 U.S. at 338.

Further, the Association has not identified a cognizable and ripe injury-in-fact. It argues that the statute limits its members' absolute "right to exclude," which in turn negates their "powerful bargaining chip"—their ability to use their monopolistic position to extract higher fees from broadband service providers. Opp. 20. This argument is misplaced. Private property is always subject to the Commonwealth's sovereign power of eminent domain. See, *e.g.*, *Light v. Danville*, 190 S.E. 276, 281 (Va. 1937) (explaining "eminent domain is a most important incident of the power of a sovereign . . . and there is no doubt about the power of the State to exercise it."). The possibility of that power being exercised does not alter any railroad's ability to exclude until an actual taking occurs. The mere existence of the statute is thus not an injury-in-fact. The Association's claims are not ripe absent an actual or imminent crossing. See Br. 16.

Furthermore, the Association lacks standing because its claims "require[] the participation of individual members." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). The Association argues that individual members are not needed because it brings a facial challenge. Opp. 21. But facial ICCTA preemption is inapplicable in this context. See Part II.A.1, *infra*; see also Br. 19–20. And, despite acknowledging that its complaint includes claims for both "'categorical' preemption" and "'as applied' preemption," the Association makes no attempt to explain how it can bring an as-applied claim without the participation of its members. Opp. 21–22. Any "as-applied" preemption claim clearly requires the participation of individual members, and allegations regarding individual crossings. See Br. 18–20; Part II.A.2, *infra*.

Nor does the Association dispute that the participation of individual members is necessary for takings claims that concern "the details of any particular crossing." Opp. 21. The Association

avers that its challenges do not turn on such details, based on the conclusory allegation that just compensation will "generally" exceed the statutory defaults. *Ibid.*; but see Br. 15–17. But it does not dispute that the value of the crossings will vary widely, that for some crossings a railroad will not suffer any loss, and that for others the default license fee will be more than sufficient. See Br. 23. Indeed, the amicus brief supporting the Association confirms these points. See Brief of Amicus Curiae RailPros Field Services Inc., ECF No. 71 at 6 (hereinafter, "RailPros Amicus Br."). The Association offers no reason to depart from the rule that "takings cases . . . ought not be decided except in an actual factual setting." *Pennell v. San Jose*, 485 U.S. 1, 10 (1988).

Declaratory judgment is also improper here. The Association does not dispute that "adverse legal interests" are a prerequisite to such relief. Br. 13; Opp. 18 (acknowledging that "[a] party seeking a declaratory judgment" must establish that it has been "adversely affected"). There is no adversity between the Association and Director Rolband or Commissioner Brich, because they have no enforcement authority under Va. Code § 56-16.3. See Part I.A, *supra*. Nor does the Association claim that there is any cause of action that Director Rolband or Commissioner Brich could bring against its members. Opp. 18; see also Br. 13. They are thus not proper Defendants.[2]

## II.     The Association's claims fail on the merits

### A.     ICCTA does not preempt Va. Code § 56-16.3

#### 1.     ICCTA does not facially preempt the statute

If the Court reaches the merits, the complaint also fails to state a claim. First, the

---

[2] Moreover, Defendants' lack of any enforcement authority makes the Association's arguments regarding the use of "*Ex parte Young* as a shield against [] enforcement" inapposite. Opp. 18, n.9 (quoting *CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 740 (D. Md. 2017)); Br. 13; see also John Harrison, *Ex parte Young*, 60 Stan. L. Rev. 989, 990 (2008) (explaining there is "no new cause of action" from *Ex parte Young* because it concerned an "anti-suit injunction," which permits "a party who would be the defendant in a corresponding lawsuit [to] enforce in equity a legal position that would be a defense at law.").

Association's facial preemption claim fails. A facial challenge to a statute must demonstrate "that *no set of circumstances* exists under which the [statute] would be valid." *United States v. Hansen*, 599 U.S. 762, 769 (2023) (emphasis in original) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). The Association seeks a declaration that Va. Code § 56-16.3 is "void and unenforceable" because it is facially preempted by ICCTA, and "[p]ermanent injunctive relief restraining all Defendants . . . from prospectively taking any action to give effect" to the statute. FAC ¶¶ 6, 151 & pp. 42–43, Prayer for Relief ¶¶ a, e. Therefore, the Association must meet the demanding *Salerno* standard. The Association contends that *Salerno* is inapplicable, citing *PETA, Inc. v. N.C. Farm Bureau Fed'n, Inc.*, 60 F.4th 815, 834 (4th Cir. 2023). But *PETA* held that *Salerno* did not apply there because "*Salerno* is not 'a speech case,'" and First Amendment claims implicate a different standard. *PETA*, 60 F.4th at 834 (quoting *United States v. Stevens*, 599 U.S. 460, 472 (2010)); see *Stevens*, 599 U.S. at 472 (quoting the *Salerno* standard with approval for application "in a typical facial attack," but declining to apply it in a First Amendment challenge).

The Association argues that "most courts do not invoke *Salerno* in the context of preemption." Opp. 23 (quoting *AES Sparrows Point LNG, LLC v. Smith*, 470 F. Supp. 2d 586, 600 (D. Md. 2007)). But "[t]he Supreme Court has applied the *Salerno* rule to a federal preemption *facial* challenge to a state statute." *American Apparel & Footwear Ass'n, Inc. v. Allen*, 608 F. Supp. 3d 1005, 1016 (D. Or. 2022) (citing *Anderson v. Edwards*, 514 U.S. 143, 155 n.6 (1995)); see also *Sprint Telephony PCS, Ltd. P'ship v. Cty. of San Diego*, 543 F.3d 571, 579 n.3 (9th Cir. 2008) (en banc) ("In cases involving federal preemption of a local statute . . . the [*Salerno*] rule applies with full force."). Indeed, even the case the Association relies upon explains that "a finding of express or field preemption inherently means that there are no circumstances under which the challenged statute or regulation could be valid," and thus "the *Salerno* standard is satisfied." *AES*

9

*Sparrows Point LNG, LLC*, 470 F. Supp. 2d at 601.

Here, the Association cannot satisfy *Salerno* because it cannot show that every application of Va. Code § 56-16.3 necessarily conflicts with ICCTA. To the contrary, numerous cases hold that ICCTA does not facially preempt the exercise of eminent domain to secure a non-exclusive easement to cross railroad property. See, *e.g.*, *Eastern Ala. Ry.—Pet. for Declaratory Ord.*, FD 35583, 2012 WL 758259, at *4 (STB Mar. 9, 2012); *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 333 (5th Cir. 2008); *Adrian & Blissfield R.R. Co. v. Blissfield*, 550 F.3d 533, 541 (6th Cir. 2008); *Maumee & W. R.R. & RMW Ventures, LLC*, FD 34354, 2004 WL 395835, at *2 (STB Mar. 2, 2004). Instead, preemption of such crossings is evaluated on an "as-applied" basis. *City of Ozark v. Union Pac. R.R. Co.*, 843 F.3d 1167, 1169 (8th Cir. 2016); see Br. 18–21.

The Association argues that ICCTA facially "preempts any 'application of state law . . . that would take rail property for another, conflicting use.'" Opp. 30 (quoting *Skidmore v. Norfolk S. Ry. Co.*, 1 F.4th 206, 214 (4th Cir. 2021)). But *Skidmore* did not involve a non-exclusive easement to cross railroad property; instead, it analyzed a claim "to adversely possess a railroad's property." *Skidmore*, 1 F.4th at 213. The Court held the claim preempted because it "would remove the land at issue from the national railway system and deprive [the railroad] of the ability to use the land to support its rail transportation operations." *Id.* at 214. *Skidmore* expressly distinguished claims for "prescriptive *nonexclusive* easement[s]," holding that "state courts can and should address prescriptive easement claims" because ICCTA does not facially preempt them. *Id.* at 214–15. The Association objects to the characterization of the easements here as "non-exclusive," contending that "[n]o other equipment can occupy the same physical space as the broadband provider's fiberoptic cable." Opp. 35 n. 17. But that is not the question: whether a taking triggers facial preemption turns on whether "the railroad could still use the land for rail transportation."

*Skidmore*, 1 F.4th at 215. The Association does not contend that the utility crossings here will prevent the railroads from continuing to use the land.

The Association's argument that only takings under "laws of general applicability" can escape facial preemption is likewise mistaken. Opp. 29. ICCTA preempts "regulation of rail transportation," 49 U.S.C. § 10501(b); in other words, a state law that has "the effect of 'managing' or 'governing' rail transportation" is preempted. *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 157 (4th Cir. 2010). And again, a host of cases hold that takings of "non-exclusive easements for at-grade road crossings, wire crossings, sewer crossings, etc." typically do *not* regulate "rail transportation," and therefore are not facially preempted. *Eastern Ala. Ry.*, 2012 WL 758259, at *4; see p. 10, *supra*. This principle is equally true when the state law "applies specifically to railroads." *Adrian*, 550 F.3d at 541; see also *NYSDOT Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 106 (2d Cir. 2009) (finding that a state law which applied exclusively to railroad crossings was not preempted under ICCTA). The Association's facial preemption claim therefore fails; any ICCTA preemption issues must be assessed on an as-applied basis.

**2.      The as-applied ICCTA claim is premature and lacks merit**

The Association's as-applied ICCTA claim should be dismissed because it is premature; an as-applied preemption analysis requires the participation of member railroads and factual allegations regarding specific crossings. See Part II.A.1, *supra*. Until a broadband provider "has actually sought . . . an 'easement,' the scope of the ICCTA's preemption cannot be fully measured and any interference with the railroad is speculative." *Zayo Group, LLC v. Norfolk Southern Railway Co.*, No. 22-1837, 2023 WL 8230499 at *5 (4th Cir. Nov. 28, 2023) (unpublished) (finding that a preemption challenge was premature as "[i]t is only in the condemnation proceeding itself that the railroad's property may be affected and thus potentially preempted by the ICCTA.").

In addition, the Association's ICCTA preemption arguments rest on a misinterpretation of

11

both ICCTA and Va. Code § 56-16.3. The Association posits a three-prong test for ICCTA preemption, contending that ICCTA preempts laws that "discriminate against rail carriers" or "unreasonably burden" them even if the laws do not "have the effect of managing or governing rail transportation." Opp. 22. But "Congress has narrowly tailored the ICCTA preemption provision to displace only 'regulation,' *i.e.*, those state laws that may reasonably be said to have the effect of 'managing' or 'governing' rail transportation." *Norfolk S. Ry.*, 608 F.3d at 157; *Skidmore*, 1 F.4th at 213. The discrimination and burden tests that the Association cites are part of an *exception* to ICCTA preemption: Where a State exercises its police powers to manage or govern rail transportation, it escapes preemption if it does "not (1) discriminate against rail carriers or (2) unreasonably burden rail carriage." *Norfolk S. Ry.*, 608 F.3d at 160; see also *Vermont Ry. v. Town of Shelburne*, 918 F.3d 82, 86 (2d Cir. 2019) (describing these elements as part of the "police powers exception" to preemption). The discrimination and burden tests are thus inapplicable here because non-exclusive utility easements to cross railroad property do not generally manage or govern rail transportation. See Part II.A.1, *supra*; Br. 21–22.

The Association cites *Norfolk Southern Railway* to support its proposed test, Opp. 22, but that case involved a local ordinance requiring the railroad to obtain permits to transload hazardous material. 608 F.3d at 159. The Court held that because the ordinance "necessarily regulate[d] the transloading operations," it "regulated 'transportation by a rail carrier.'" *Id.* at 159. Only after holding that the law regulated rail transportation did the Court proceed to consider the police power exception test by analyzing whether the ordinance discriminated against rail carriers or unreasonably burdened rail carriage. *Id.* at 160. The other cases the Association cites all involve a

similar analysis.[3] It cites no cases supporting the application of the police power exception test—including the discrimination prong—to an exercise of eminent domain to take a non-exclusive easement. The police powers exception and its discrimination and burden prongs are simply inapplicable in this analysis. See p. 10, *supra.*

Moreover, even if the discrimination and burden prongs applied here, they would provide no grounds for holding the statute preempted—particularly not in the context of a facial pre-enforcement challenge. The law does not discriminate against railroads. "The fact that [a law] applies specifically to railroads does not make it discriminatory." *Adrian*, 550 F.3d at 541. Instead, a law is discriminatory if it treats railroads less favorably than "similarly situated entities." *Id.* at 541–42. The Association asserts that railroads are treated differently than "any other landowner." Opp. 26. But the Association's railroad members have unique monopoly power to halt a broadband provider from extending its network. If a typical landowner attempted to charge monopoly rents for a broadband provider to cross its property, the broadband provider could simply reroute its cables to avoid the property. See Brief of Amicus Curiae Virginia, Maryland, and Delaware Ass'n of Broadband Cooperatives, ECF No. 57 at 11. But broadband providers cannot reroute to avoid railroad property, which by its nature tends to be in continuous strips across great distances. See *ibid.*; Br. 2 n.2. The Association admits that, prior to Va. Code § 56-16.3, railroads in Virginia used their "right to exclude" as a "powerful bargaining chip" to drive up the easement prices that they

---

[3] See, *e.g.*, *BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 755, 760–61 (9th Cir. 2018) (holding fee on rail transportation preempted as it had "the effect of managing or governing rail transportation."); *Association of Am. R.R. v. South Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1098 (9th Cir.) (holding exercise of police powers preempted where it "ha[d] the effect of managing or governing rail transportation"); *Vermont. Ry. v. Town of Shelburne*, 287 F. Supp. 3d 493, 495 (D. Vt. 2017) (holding that a regulation "d[id] not fit within the police power exception to preemption . . . because (1) it discriminates against the Railway and (2) the significant burden it places on the Railway outweighs the . . . public health and safety concerns").

charged broadband providers. Opp. 20. Thus, just as in *Adrian*, the law "applies specifically to railroads" because it addresses "concerns that . . . apply only to the Railroad," while furthering a "general state concern"—the expansion of broadband internet access. *Adrian*, 550 F.3d at 541–42; see Br. 2, 22. The law does not discriminate against railroads.

Nor does the law permit crossings that would trigger as-applied preemption because they would impede railroad operations or "pose undue safety risks." See generally *Maumee & W. R.R. & RMW Ventures, LLC*, FD34354, 2004 WL 395835, at *2 (STB Mar. 2, 2004); *Jie Ao & Xin Zhou*, FD 35539, 2012 WL 2047726, at *6 (STB June 6, 2012); *City of Ozark v. Union Pac. R.R. Co.*, 843 F.3d 1167, 1169 (8th Cir. 2016). Rather, Va. Code § 56.1-16.3 provides that the crossings shall be designed to "prevent damage to the works of the railroad and ensure the safety of its passengers," and that the railroad may petition the SCC and extend the default timeline if it believes the crossing will cause hardship or safety issues. Va. Code § 56.1-16.3(D), (H); see Br. 20–21. The Association concedes that "if a railroad objects to a proposed crossing, the SCC works with technical experts and both parties to assess and potentially modify the 'plans and specifications' for the project and determine proper compensation." Opp. 12. Thus, the statute provides avenues to resolve any burden or safety issues that may arise for particular crossings.

The Association also argues that the Court should hold the statute facially preempted due to the potential for "future conflicts" and "cumulative effect on the rail network." Opp. 31–32. But again, the Association's claims of unreasonable future or cumulative burdens come down to its unadorned speculation that the statute will lead to "poorly planned or executed crossings" that will "create safety hazards." Opp. 32. And again, the statute addresses those concerns by permitting railroads to petition the SCC, and ultimately the Supreme Court of Virginia, to object to crossing plans they consider unsafe. See Br. 3–4, 20–21; Va. Code § 56.1-16.3(H). Further, the Association

14

does not argue that such issues will arise with *every* crossing. Indeed, its amicus explains that for "simple aerial installations," for instance, "industry practice already meets" the statutory default timing and fees. RailPros Amicus Br. 5–6. Thus, the Association's speculative arguments that the statute could cause safety problems certainly cannot demonstrate "that *no set of circumstances* exists under which the [statute] would be valid." *Salerno*, 481 U.S. at 745. It therefore cannot support the requested blanket pre-enforcement injunction against the statute. To the extent the Association disputes the proper interpretation of Va. Code § 56.1-16.3, that is merely an additional reason to abstain from hearing this facial pre-enforcement challenge, and instead to permit the courts of the Commonwealth to construe the statute authoritatively. See Br. 30.

**B.     The Association's Fifth Amendment facial takings claims fail on the merits**

**1.     Railroads receive just compensation and retain adequate remedies, thus foreclosing equitable relief**

The Association's facial takings claim likewise fails. The Association cannot establish that the statute is facially unconstitutional for every conceivable crossing. See *Salerno*, 481 U.S. at 745. The normal rule that prospective and injunctive relief are unavailable for takings claims applies. *Knick v. Township of Scott*, 139 S. Ct. 2162, 2179 (2019).

The Association argues that a facial claim is proper because the statute's default license fees are generally less than the fair market value. Opp. 35; see Br. 22–24. But the Association's conclusory contentions are unsupported by specific factual allegations, and thus need not be taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In any event, they do not support a facial takings claim because the Association does not contend that the default fees are *always* inadequate. Some utility crossings will not affect railroads' property rights at all, for instance, when the crossing occurs in a public right-of-way or the railroad has only surface rights to the property. Br. 23. Indeed, the Association's own amicus confirms these points, explaining that "[g]enerally,

railroads do not charge an 'occupancy' fee or 'license' fee for installations within the confines of a public right of way," or "where the railroad holds only an easement interest." RailPros Amicus Br. 6. And the relatively generous default license fee will be more than adequate for a typical crossing. See *ibid*.; Br. 22 n.8 (comparing Virginia's default fee to those of other states).[4] And, of course, when the default license fee does not provide adequate compensation, railroads can obtain additional compensation by petitioning the SCC. See Br. 3, 22; Va. Code § 56-16.3(H). This case thus does not present the very rare circumstances warranting a facial injunction against a state statute under the takings clause. See Br. 16, 22. Rather, as for nearly all takings claims, the railroads should bring suit for compensation when and if an uncompensated taking actually occurs. *Knick*, 139 S. Ct. at 2168.

The Association argues that its remedies at law are insufficient because "countless after-the-fact" actions will be necessary to determine compensation, relying on *Pharmaceutical Research & Manufacturers of America v. Williams*, 64 F.4th 932 (8th Cir. 2023). Opp. 36–37. But that case is wholly inapposite. It involved a challenge to a law requiring insulin manufacturers to provide free insulin to certain customers. *Williams*, 64 F.4th at 936, 938. The court held that inverse condemnation actions did not provide an adequate remedy because the manufacturers would have to bring a multiplicity of suits seeking compensation for repeated takings of the same property— doses of insulin. *Id.* at 942, 946. Here, by contrast, far from every application of the statute will require a suit seeking compensation; rather, such issues will rarely arise. Unlike the "repetitive"

---

[4] To the extent the Association contends that the default fees are not the "fair market value" because they are lower than the amount the railroads would have charged broadband providers absent the statute, see Opp. 35, that is not the test. See *United States v. 8.41 Acres of Land*, 680 F.2d 388, 392 (5th Cir. 1982) (observing that when the property interest taken "is merely an easement, the proper measure of damages is . . . the difference between the market value of the land free of the easement and the market value as burdened with the easement." (citing *United States v. Virginia Electric Co.*, 365 U.S. 624, 630 (1961))).

takings of the same property in *Williams*, the value of the crossings here will necessarily vary, requiring individualized inquiry. See, *e.g.*, Opp. 32–33. And although the Association speculates that there may eventually be "hundreds" of crossings under Va. Code § 56-16.3, that is far from the "essentially endless" number of takings at issue in *Williams*, 64 F.4th at 942. The Association has not demonstrated that any railroad will have to bring a multiplicity of suits to obtain adequate compensation. The dispute-resolution provisions of Va. Code § 56-16.3 provide an appropriate means of resolving the limited number of disputes concerning whether the default fee is adequate. Prospective relief is therefore foreclosed. *Knick*, 139 S. Ct. at 2168.

### 2.      Takings under Va. Code § 56-16.3 are for a public use

The Association's claim that the statute violates the Fifth Amendment because potential crossings do not qualify as public uses fails as a matter of law. The statute itself identifies the requisite "conceivable public purpose" for the takings in question, *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 240–41 (1984): "promot[ing] the rapid deployment of broadband." Va. Code § 56-16.3(G); see Br. 24–26. And internet access is undeniably important; it provides access to employment opportunities, economic development, education, and community life. See Br. 1.

The Association points to no federal constitutional precedent suggesting that this purpose does not qualify as a public use. Rather, the Association points to a different Virginia statute (not at issue in this case) stating that "[n]othing *in this section* shall be deemed to make the use of an easement for broadband . . . a public use for the purposes of § 1-219.1, or other applicable law." Opp. 34 (quoting Va. Code § 55.1-306.1(B)(2), (6) (emphasis added)). That provision is irrelevant for multiple reasons. First, by its terms it does not apply to the statute at issue here, Va. Code § 56-16.3; it applies only to Va. Code § 55.1-306.1. *Id.* But Va. Code § 55.1-306.1 does not involve eminent domain or railroad crossings at all. Rather, it concerns the use of existing utility easements to expand broadband. *Id.* Second, the Association's argument that the statute "declare[s] that

broadband expansion is not a 'public use' for eminent-domain purposes" is incorrect. Opp. 34. Rather, Va. Code § 55.1-306.1 simply notes that its declaration of Virginia's policy to expand broadband internet access is "intended to provide guidance to courts," rather than attempt to "deem" the easements a "public use" under Virginia law. Va. Code § 55.1-306.1(B).

Third, the Association erroneously conflates the takings clauses of the federal and Virginia Constitutions. The Association asserts that Defendants "[i]gnor[e] § 1-219.1's definition of 'public use.'" Opp. 34. By its own terms, Va. Code § 1-219.1 concerns the definition of "[t]he term 'public uses' mentioned in Article I, Section 11 of the Constitution of Virginia"—Virginia's takings clause. As the Association itself maintained in its original complaint, Virginia's takings clause employs a very different definition of "public use" than the federal clause. Compl. ¶¶ 28–30, 93–94. And the Association brings no claim under the Virginia Constitution—its takings claim is solely under the Fifth Amendment. FAC ¶¶ 157–62. Indeed, the Association voluntarily abandoned the takings claims under the Virginia Constitution included in its original complaint, see Compl. ¶¶ 143–151— presumably because it recognized this Court lacks jurisdiction to decide it. *Bragg v. West Virginia Coal Ass'n*, 248 F.3d 275, 293 (4th Cir. 2001) ("[S]overeign immunity . . . bars a court's grant of any type of relief, whether retrospective or prospective, based upon a State official's violation of State law."). Because expanding internet access plainly is a public use under the federal takings clause, the Association's claim should be dismissed.

### C.   The Association's personal capacity claims also fail because there is no contract nor cognizable allegations of personal involvement

The Association's personal capacity claims (Counts IV–VI) also fail. First, each of those claims depends upon the Association's novel interpretation of the Constitution of Virginia as a contract. That theory is wrong; each of these counts can be dismissed for that reason alone. The Supreme Court of Virginia has long analogized inverse condemnation actions to implied-contract

18

claims in explaining why property owners can seek compensation in Virginia courts despite the Commonwealth's immunity from tort claims. *AGCS Marine Ins. Co. v. Arlington Cty.*, 800 S.E.2d 159, 163, 168 (Va. 2017). But this precedent holds only that Virginia state courts have jurisdiction over inverse-condemnation claims because the takings clause is "self-executing." See *id.* at 163–64; see also *DiGiacinto v. Rector & Visitors of George Mason Univ.*, 704 S.E.2d 365, 371 (Va. 2011) ("[S]overeign immunity does not preclude declaratory and injunctive relief claims based on self-executing provisions of the Constitution of Virginia . . . ."). The Association provides no support for its contention that it may instead sue in federal court to enjoin a Virginia statute on the ground that it constitutes tortious interference with an eminent domain "contract." Opp. 38–40. This novel and baseless argument, unsupported by a single authority, should be rejected.

Indeed, the Association's contract theory fails even on its own terms. The precedent that the Association cites does not say that the Virginia Constitution is itself a contract. Rather, it analogizes the "implied constitutional promise of compensation" to an implied-in-fact contract created when the taking occurs. *AGCS Marine Ins. Co.*, 800 S.E.2d at 164; *Burns v. Board of Supervisors*, 238 S.E.2d 823, 825 (Va. 1977) (Once the taking occurs, "[t]he owner whose property is taken or damaged for public use has a right to waive all other remedies and to sue upon an implied contract that he will be paid therefor such amount as would have been awarded if the property had been condemned under the eminent domain statute."). Thus, even if this Court treated inverse condemnation claims as contract claims, there can be no implied contract to pay just compensation until the Commonwealth actually takes the property. The complaint does not allege that a taking has occurred, much less an uncompensated taking. Even on the Association's own theory, it lacks a valid contract claim.

The claims also fail because the Association does not allege facts showing that each

Defendant "acted personally in the deprivation of the plaintiff's [member's] rights," as § 1983 requires. *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018). The Association concedes that such personal involvement is required. Opp. 44. The only identified involvement, however, is that Commissioner Brich "runs VDOT" and that "under [his] leadership" VDOT issues permits. Opp. 44. Similarly, the Association argues that Director Rolband is personally involved because he "oversees DEQ's review and approval" process. Opp. 44–45. That is insufficient: "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Here, again, the Association does not even allege that the VDOT or DEQ permits violate the Constitution at all. See Part I.A, *supra*.

Counts V and VI fail for additional reasons as well. The Association's only response to the elementary rule that a party cannot interfere with his own contract, see Br. 28–29, is to contend that Defendants' conduct was not attributable to the Commonwealth because it was not within the scope of their employment, Opp. 46–47. But the Association does not even attempt to explain how that could be so, particularly given that the Association does not contend that Defendants act unlawfully in issuing permits under other Virginia statutes that the Association has not challenged. See Part I.A, *supra*. "Virginia courts generally take a broad view of the employment relationship, and have held that even intentional torts may be within the scope of employment." *Gutierrez de Martinez v. DEA*, 111 F.3d 1148, 1158 (4th Cir. 1997). Defendants' wholly lawful actions here were plainly within the scope of their employment. Similarly, the Association does not dispute that its tortious interference claim requires the use of "improper means." Br. 29; Opp. 47. It argues that illegal means are improper, Opp. 47, but again does not explain how Defendants' issuance of the permits is illegal. These baseless claims should be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the First Amended Complaint.

20

Dated: December 19, 2023

Respectfully submitted,

**MICHAEL ROLBAND AND STEPHEN C. BRICH**

By:    */s/ Andrew N. Ferguson*
        Andrew N. Ferguson (VSB #86583)
        *Solicitor General*

Jason S. Miyares
   *Attorney General*

Steven G. Popps (VSB #80817)
   *Deputy Attorney General*

Leslie A. T. Haley (VSB #36333)
   *Deputy Attorney General*

Thomas J. Sanford (VSB #95965)
R. Cooper Vaughan (VSB #92580)
   *Assistant Attorneys General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7704 – Telephone
(804) 371-0200 – Facsimile
AFerguson@oag.state.va.us

Erika L. Maley (VSB #97533)
   *Principal Deputy Solicitor General*

Graham K. Bryant (VSB #90592)
   *Deputy Solicitor General*

*Counsel for Defendants Michael Rolband and Stephen C. Brich*

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY that on December 19, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

    */s/ Andrew N. Ferguson*    
Andrew N. Ferguson (VSB #86583)
*Counsel for Defendants Michael Rolband and Stephen C. Brich*
