THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ASSOCIATION OF AMERICAN
RAILROADS,

      Plaintiff,

      v.                                  Case No.: 1:23-cv-815 (DJN)

JEHMAL T. HUDSON, et al.

      Defendants.

REPLY IN SUPPORT OF DEFENDANT JEHMAL T. HUDSON'S
MOTION TO DISMISS PURSUANT TO RULES 12(B)(1) AND 12(B)(6)

INTRODUCTION

The plaintiff's brief opposing dismissal shows that its claims against Commissioner Hudson cling to the thinnest of reeds: when the General Assembly passed Code § 56-16.3, Commissioner Hudson damaged it and its members. The statute's passage alone, the plaintiff says, is enough for the plaintiff to request declaratory and injunctive relief, assert official and individual capacity claims, and charge constitutional and tortious violations of law. With so broad a sweep, one might expect the statute itself to grant powers of similar reach. But no: Code § 56-16.3 merely authorizes Commissioner Hudson to adjudicate specific legal disputes between railroad companies and broadband providers. And nothing, either in that statute or elsewhere, transforms that judicial role into something

1

properly subject to *Ex Parte Young* exception to Eleventh Amendment immunity, or render Commissioner Hudson personally liable.

The Court should dismiss the Amended Complaint against Commissioner Hudson.

**ARGUMENT**

1.  **ELEVENTH AMENDMENT IMMUNITY APPLIES TO THE PLAINTIFF'S CLAIMS AGAINST COMMISSIONER HUDSON.**

The plaintiff argues that its claims against Commissioner Hudson fall within the *Ex Parte Young* exception to Eleventh Amendment immunity because 1) Commissioner Hudson enforces, not adjudicates, Code § 56-16.3 proceedings, and 2) because the Complaint sufficiently alleges the threat of actual enforcement to make its claims ripe for adjudication. Neither is true.

   **1.1.   Commissioner Hudson adjudicates Code § 56-16.3 proceedings.**

The parties agree that, under *Ex Parte Young*, Commissioner Hudson must have "a special relation" to "the challenged statute." Memo. in Opp. at 20; *see Waste Management Holdings, Inc. v. Gilmore*, 252 F. 3d 316, 331 (4th Cir. 2001). That special relation requires a government official to have "some connection with the enforcement of the act." *Doyle v. Hogan*, 1 F. 4th 249, 254 (4th Cir. 2021). There must be "authority to enforce the particular law at issue." *Id.*

It is true that "a more general law providing enforcement authority, or the general duties of the officer" can satisfy this requirement. *Id.* at 255 (cleaned up). But that enforcement authority or general duties of the officer must relate to "the specific law the plaintiff challenges." *Id.* This "special relation" is not met, for example, with an executive official

under a general duty to enforce the general laws. *See Waste Management*, 252 F.3d at 331 ("although Governor Gilmore is under a general duty to enforce the laws of Virginia by virtue of his position as the top official of the state's executive branch, he lacks a specific duty to enforce the challenged statutes.").

The plaintiff invites too loose a connection between Commissioner Hudson and "enforcing" Virginia Code § 56-16.3. Instead of pointing to Commissioner Hudson's authority or duties *to enforce Code § 56-16.3* specifically, the plaintiff merely handwaves at the Commission's general authority to enforce law, regulate public service companies, and inspect rail lines for their compliance with Virginia law. Memo. in Opp. at 21-22. There's little difference between this and a governor's general authority to enforce the law. *See Waste Management*, 252 F.3d at 331 (no special connection). The Commission's general authority to enforce the laws within its jurisdiction fails to show enforcement of the statute at issue in this case.

The plaintiff also invokes a hodgepodge of links between Commissioner Hudson and the statute. So, for example, it cites Commissioner Hudson's power to enforce his own rulings under that statute via fine or contempt. Memo. in Opp. at 10. True enough, but the same is true of any adjudicatory body's power to enforce its orders, including this court. The power to enforce a ruling is not the same thing as the power to enforce the statute on which a ruling is based. Like this court, Commissioner Hudson does not *enforce* a statute by interpreting or applying it. Like any adjudicatory body, the Commission and Commissioner Hudson must await a dispute to be filed before it exercises its § 56-16.3 authority. That is a key difference between judicial and executive power.

3

Finally, the plaintiff relies on several cases applying *Ex Parte Young* to state commissioners. But none of them help. In *MCI Telecommunications Corporation v. Bell Atlantic-Virginia, Inc.*, the court applied *Ex Parte Young* to the commissioners of the State Corporation Commission, but the opinion is silent on the statute in question there and short on analysis. No. 3:97CV629, 1997 WL 1133714 (E.D. Va. Dec. 24, 1997). And on appeal, the Fourth Circuit did not address *Ex Parte Young* at all. *See AT&T Communications of Virginia, Inc. v. Bell Atlantic-Virginia, Inc.*, 197 F.3d 663 (4th Cir. 1999). In *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, the plaintiff rightly notes that the state public service commissioners were proper *Ex Parte Young* defendants. 535 U.S. 635, 645 (2002). But on closer look, the statute in question bears little resemblance to Code § 56-16.3: it specifically gave the commission non-judicial functions, and it specifically granted judicial review of the commission's decisions in federal district court. *See* 47 U.S.C. § 252(e)(6). Nor was the judicial function of the commissioners litigated in that case.

A hypothetical proceeding under Code § 56-16.3 proves the point. Either the railroad company or the broadband provider—not the Commission—can file a petition: the former if it believes either that the statutory license fee is inadequate compensation, that the crossing will cause them "undue hardship," or that it will "create the imminent likelihood of danger" to the public, *see* Va. Code § 56-16.3(H); the latter "if the railroad company does not comply with this section or has otherwise wrongfully rejected or delayed its application." The Commission then "hear[s] and resolve[s] the claims" and has 90 days to "adjudicate" it. *Id.* While the Commission has the authority to employ engineers and modify the plan, the proceeding results in a "final order" that only binds those adverse

4

parties. *See* Va. Code § 56-16.3(H). And the aggrieved party then has an appeal of right of the Commission's ruling to the Supreme Court of Virginia. Code § 12.1-39. In other words, the very constitutional claims the plaintiff makes here can be raised in the Commission and appealed to the Supreme Court. Regardless of the Commission's general authority elsewhere, its role under Code § 56-16.3 could not be more judicial. As such, and contrary to the plaintiff's suggestion, an injunction against Commissioner Hudson here would amount to restraining him from adjudicating a case to be brought before him. Doing so "would be a violation of the whole scheme of our government." *Ex parte Young*, 209 U.S. at 163.

The plaintiff insists that Commissioner Hudson's general duties and authority show his "central role in § 56-16.3's scheme." Memo. in Opp. at 20. But the plaintiff isn't attacking the constitutionality of a "scheme"; it has alleged that a specific statute is unconstitutional and so must identify Commissioner Hudson's connection to the enforcement *of that statute*. While this court "may look beyond [Code § 56-16.3] for this enforcement connection…we must still search for more than the general authority to enforce the laws of the state." *Doyle* at 255. Neither Code § 56-16.3, nor any other statute pertaining to it, gives the Commission or Commissioner Hudson authority to enforce Code § 56-16.3. Enjoining Commissioner Hudson from ruling on a Code § 56-16.3 proceeding, therefore, would be no different than enjoining a state court from adjudicating a case before it.

### 1.2. The plaintiff alleges no facts about the threat of enforcement.

Even if Commissioner Hudson was connected to the enforcement of Code § 56-16.3, the plaintiff does not identify any threat of enforcement. *See McBurney*, 616 F.3d at 399.

At the outset, the plaintiff incorrectly argues that, because its "official-capacity claims are not retrospective," the imminent threat of enforcement requirement of *Ex parte Young* is already satisfied. Memo. in Opp. at 14 (citing to *Coakley v. Welch*, 877 F.2d 304, 307 n.2 (4th Cir. 1989)). Merely praying for prospective injunctive relief does not automatically trigger *Ex parte Young*—to hold otherwise would value form over substance. The plaintiff also misrelies on *Coakley*, which involved a claim based on actual, past facts: the defendant had "terminated" the plaintiff and "put him through a process that deprived him of due process rights" for "a period in the past." 877 F.2d 304, 305 & 307 n.2 (4th Cir. 1989). *Coakley* thus concerned whether there was an "ongoing" violation when the unlawful acts "ha[d] ended." *Id.* at 307 n.2. The Amended Complaint has the opposite problem: there are no past facts regarding enforcement at all.

The plaintiff also argues that Commissioner Hudson "does not dispute" that he will address any petitions under § 56-16.3, "[n]or does he disclaim his broader authority to enforce the statute." Memo. in Opp. at 15. But Commissioner Hudson *does dispute* that he "enforce[s]" the statute at all: it is the parties who commence the proceedings under the statute, and Commissioner Hudson's adjudication of the dispute between adverse litigants is not the sort of imminent enforcement contemplated by *Ex Parte Young*.

More fundamentally, the plaintiff seems to invoke a sort of blanket right to assert a pre-enforcement challenge. *See* Memo. in Opp. at 15 (citing to *Meredith v. Stein*, 355 F. Supp. 3d 355, 363 (E.D.N.C. 2018)). To be sure, courts can generally find an Article III injury if there is a "credible threat of prosecution." *Maryland Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 363 (4th Cir. 2020). And courts generally permit pre-enforcement challenges to

statutes that chill speech or provide criminal or punitive measures. *See generally Ostergren v. McDonnell*, No. CIV. A. 3:08CV362, 2008 WL 3895593, at *4 (E.D. Va. Aug. 22, 2008) (discussing pre-enforcement cases), *aff'd sub nom. Ostergren v. Cuccinelli*, 615 F.3d 263 (4th Cir. 2010). But the Supreme Court of the United States "has never recognized an unqualified right to pre-enforcement review of constitutional claims in federal court," *Whole Woman's Health v. Jackson*, 595 U.S. 30, 49 (2021); Code § 56-16.3 does not provide any criminal or civil penalty; and the Court's pre-enforcement jurisprudence still requires an injury to be "actual or imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

## 2. THE COURT LACKS JURISDICTION TO GIVE DECLARATORY RELIEF.

The same pleading defects plague the plaintiff's request for declaratory relief. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, the plaintiff must show more than a "hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Here, the only relevant "fact" pleaded regarding Commissioner Hudson is the mere passage of Virginia Code § 56-16.3.

The plaintiff nonetheless claims it has suffered an injury-in-fact because "the statute *already* curtails [the plaintiff's] members right to exclude others from their property." Memo. in Opp. at 19. The plaintiff claims that its members have suffered an injury to their "right to exclude" as soon as Virginia Code § 56-16.3 was enacted, and that the statute caused its members an "additional set of costly regulatory obligations," reduced "bargaining position" with broadband companies, and exposure to "safety risks and administrative costs." Memo. in Opp. at 19-20.

But "where claims and rights have fully matured, and the alleged wrongs have already been suffered, declaratory judgment is an inappropriate remedy." *Haigler v. Royal Farms*, No. 3:22CV71-HEH, 2022 WL 2820543, at *3 (E.D. Va. July 19, 2022) (cleaned up). Stated differently, a party cannot obtain a declaratory judgment from "alleged wrongdoings and injuries that have *already taken place*." *Cordon v. Aurora Loan Servs., LLC*, No. 1:10CV645 JCC, 2010 WL 3418214 at *7 (E.D. Va. Aug. 26, 2010) (emphasis added). If the plaintiff suffered injuries on July 1, 2023, then it should sue for damages, not declaratory relief. In any event, the mere passage of a statute cannot establish an injury that could be redressed by this Court. *See Spoje, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Finally, the plaintiff lacks associational standing to seek declaratory relief. The plaintiff insists that its claims do not require the participation of its members, but then nearly concedes the opposite. So, the plaintiff says, the "market value or highest and best use of" the relevant property will "generally" exceed the statutory fee, and compensation will be inadequate in the "countless instances where the property taken is worth more than the minimal fee caps." Memo in Opp. at 21. But this assumes that at other times the fee may be adequate. In other words, the particulars matter, and the plaintiff's members are required to assert them.

2. **THE PLAINTIFF'S INDIVIDUAL CAPACITY CLAIMS SHOULD BE DISMISSED.**

    **2.1.**    **Count IV fails to plead a Due Process claim.**

The plaintiff's due process claim is based on the fiction that its members have a property interest in the continuation of the "implied contract" in Article I, § 11 of the Virginia

8

Constitution. Am. Compl. ¶¶ 167-70. But Article I, § 11 is a state constitutional provision, and "[a] state constitution is not a contract." *Church v. Kelsey*, 121 U.S. 282, 283-84 (1887).

To work around this, the plaintiff invokes Virginia jurisprudence concerning inverse condemnation and the judicially-created implied contract related thereto. The plaintiff's implied contract theory is taken out of jurisprudential context.

Article I, § 11 states "[t]hat the General Assembly shall pass no law whereby private property, the right to which is fundamental, shall be damaged or taken except for public use." These express terms "state[] only that the General Assembly 'shall pass no law' that takes or damages private property except for public use." *AGCS Marine Ins. Co. v. Arlington Cnty.*, 293 Va. 469, 476 (2017). But because the government often takes private property "without authority" of an official condemnation proceeding, courts have read into the provision an implied obligation on the government to pay just compensation when it does. *Nelson Cnty. v. Coleman*, 126 Va. 275, 279 (1919); *see ACGS Marine*, 293 Va. at 476. "[W]hen the government failed to condemn private land taken for public purposes, the landowner's recourse was to file an action for *inverse condemnation based on the implied contract* between the government and the landowner." *Richmeade, L.P. v. City of Richmond*, 267 Va. 598, 600–01 (2004) (citation and internal quotation marks omitted) (emphasis added). The "terms of that implied contract require the government to pay the landowner such amount as would have been awarded therefor, if the property had been condemned under the eminent domain statutes." *Id.*

These principles have never been stretched as the plaintiff would like. The Supreme Court of Virginia has never held that Article I, § 11 constitutes an implied contract.

9

Instead, the Court has held that an implied contract exists only in the factual context of an inverse condemnation claim, which the plaintiff does not assert. The plaintiff does not seek just compensation on an implied contract theory in this case. If it is, then it has a direct claim for inverse condemnation—not a due process claim. The plaintiff's broad "implied contract" theory would otherwise be a seismic shift in Virginia jurisprudence.

Assuming the implied contract theory could work, though, the claim still fails. A personal capacity due process claim requires that the individual defendant "acted personally in the deprivation of the plaintiff's [member's] rights." *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018). The Amended Complaint fails to allege that Commissioner Hudson has taken any of the plaintiff's member's property, or even invoked § 56-16.3. Whatever it means to "assum[e] the administrative role contemplated" under a statute, *see* Memo. in Opp. at 45, the plaintiff never explains how it amounts to personally depriving its members of their rights. Plus, § 56-16.3 provides a notice and hearing, which is all that due process requires. *See Rusu v. U.S. I.N.S.*, 296 F.3d 316, 321 (4th Cir. 2002).

Still, the plaintiff says that § 56-16.3 breaches "the contractual promises" in Article I, § 11 by failing to provide just compensation and eliminating the governments' "burden to *prove* public use." Memo. in Opp. at 40-41. But the "implied contract" in Article I, § 11, exists only with an inverse condemnation claim for just compensation. And in an inverse condemnation proceeding, it is the landowner—not the government—who has the burden of proof. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 712 (1999); *United States v. Clarke*, 445 U.S. 253, 258 (1980) ("There are important legal and

practical differences between an inverse condemnation suit and a condemnation proceeding.").

### 2.2. Count V and VI fail to plead tortious interference claims.

*Count V.* In Count V, the plaintiff asserts that Commissioner Hudson tortiously interfered with the purported contract established by Article I, § 11. For the same reasons explained above, the Court should reject the implied contract theory that undergirds this claim and dismiss it.

Count V fails for other reasons too. A defendant "cannot intentionally interfere with his own contract." *Fox v. Deese*, 234 Va. 412, 427 (1988). Commissioner Hudson, as a representative of the Commonwealth, cannot interfere with the purported contract in Article I, § 11.

To escape this doctrine, the plaintiff argues that Commissioner Hudson's actions in assuming his position under § 56-16.3 are *ultra vires* and therefore he is not acting on behalf of the Commonwealth. Memo. in Opp. at 46. As the plaintiff puts it, "Defendants here cannot claim to be agents of the Commonwealth in respect of actions that the Commonwealth is incapable of authorizing." *Id*.

This argument is perplexing given plaintiff's claims. On the one hand, the plaintiff says that Commissioner Hudson "cannot claim to be [an] agent of the Commonwealth" because his "actions" violate the Virginia Constitution. *Id.* On the other hand, the plaintiff's only basis for suing Commissioner Hudson is that he "assumed the administrative role contemplated in § 56-16.3." Am. Compl. ¶ 177. In other words, the plaintiff bases its claim on the mere passage of the statute—a true act of the "Commonwealth" if there ever

11

was one. How can Commissioner Hudson *not* be an agent of the Commonwealth by assuming a purely statutory role as a member of the State Corporation Commission? The plaintiff cannot square this circle.

The plaintiff also cannot invoke *ultra vires* principles. The *ultra vires* doctrine is an exception to Eleventh Amendment immunity when an officer's conduct is plainly unconstitutional. *See Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689-90 (1949). But Count V does not assert unconstitutional conduct: it asserts tortious conduct. The plaintiff cannot import its assertion of unconstitutional conduct as a crutch to support its tort claims.

*Count VI.* Count VI asserts a tortious interference claim based on the plaintiff's business expectancy in its "longstanding practice of entering into contracts with broadband service providers regarding crossings of railroad rights-of-way." Am. Compl. ¶ 181. Like Count V, Count VI fails because the Amended Complaint does not allege that Commissioner Hudson has taken any *affirmative* act to interfere with any contract between the plaintiff's members and broadband companies.

The Amended Complaint has also not alleged that Commissioner Hudson has acted with any "improper methods," such as violence, threats, bribery, defamation, duress, or undue influence required for a tortious interference with a business expectancy claim. *See Duggin v. Adams*, 234 Va. 221, 227 (1987). The plaintiff argues that Commissioner Hudson acted with "improper methods" because his actions in bringing Code § 56-16.3 into practical effect "were unlawful under federal and state law." Memo. in Opp. at 47. In other words, the plaintiff alleges that Commissioner Hudson's statutory role under Code § 56-

12

16.3—with nothing more—satisfies *both* the interference and improper methods elements of tortious interference. There is no basis for melding these two elements of a tortious interference claim. The premise of the "improper methods" element is that a defendant not only committed an act of interference but did so with illegal *means*. Being designated by the General Assembly to preside over a statutory proceeding is not a "means" of intentional interference—much less an improper one. The plaintiff's theory is insufficient to satisfy either of these standards.

## CONCLUSION

For these reasons, the Court should dismiss the Amended Complaint with prejudice.

**Date:** December 19, 2023

Respectfully submitted,

JEHMAL T. HUDSON
By Counsel

/s/ John P. O'Herron
John P. O'Herron (VSB No. 79357)
Peter S. Askin (VSB No. 93371)
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, VA 23219
Telephone: (804) 698-6253
Facsimile: (804) 780-1813
joherron@t-mlaw.com
paskin@t-mlaw.com
*Counsel for Defendant Jehmal T. Hudson*

## **CERTIFICATE OF SERVICE**

I certify that on the 19th day of December, 2023, the foregoing was filed electronically using the CM/ECF system, and that a Notice of Electronic Filing (NEF) was thereby sent to all counsel of record.

/s/ John P. O'Herron
John P. O'Herron (VSB No. 79357)
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, VA 23219
Telephone: (804) 698-6253
Facsimile: (804) 780-1813
joherron@t-mlaw.com
*Counsel for Defendant Jehmal T. Hudson*