

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
+1 202 736 8000
+1 202 736 8711 FAX

AMERICA • ASIA PACIFIC • EUROPE

GTODD@SIDLEY.COM
+1 202 736 8000

March 4, 2024

The Hon. David J. Novak
Spottswood W. Robinson III and
  Robert R. Merhige, Jr.
  Federal Courthouse
701 East Broad Street
Richmond, VA 23219

      Re:    *Association of American Railroads v. Hudson et al.*, No. 1:23-cv-815-DJN-WEF

Dear Judge Novak:

      On behalf of Plaintiff Association of American Railroads, I write to bring to the Court's attention a recent decision illustrating the proper standard for ICC Termination Act preemption.

      As AAR has explained, the ICCTA "preempts state laws that (1) have the effect of managing or governing rail transportation, (2) discriminate against rail carriers, or (3) unreasonably burden rail carriage." Doc. 58 at 22 (cleaned up) (quoting *Norfolk S. Ry. v. City of Alexandria*, 608 F.3d 150, 157, 160 (4th Cir. 2010)). The first prong is generally called express or "categorical" preemption, while the second and third are together called implied or "as-applied" preemption. *See Edwards v. CSX Transp., Inc.*, 983 F.3d 112, 121 & n.12 (4th Cir. 2020).

      In response, Defendants Brich and Rolband claim there is no such "three-prong test." Doc. 72 at 12. In their telling, "[t]he discrimination and burden tests … are part of an *exception* to ICCTA preemption: Where a State exercises its police powers to manage or govern rail transportation, it escapes preemption if it does not (1) discriminate against rail carriers or (2) unreasonably burden rail carriage.'" *Id.* (quoting *Norfolk S.*, 608 F.3d at 160).

      A recent Surface Transportation Board decision confirms Defendants' error. *See Town of Smithtown, N.Y.—Pet. for Declaratory Order*, No. FD 36575-1 (S.T.B. served Feb. 23, 2024). There, the STB—which administers the ICCTA—said: "Where the Board has jurisdiction over transportation by rail carrier, that jurisdiction is 'exclusive,' and state and local laws and regulations are generally preempted." Ex. A at 4. Indeed, "[i]t is difficult to imagine a broader statement of Congress' intent to preempt state regulatory authority over railroad operations." *Id.* Thus, the ICCTA "does not prevent state and local governments from … exercising their police powers *so long as* the challenged statute or regulation [1] would not unreasonably burden rail transportation, [2] discriminate against rail carriers, *or* [3] impinge on the Board's jurisdiction *or* a railroad's ability to conduct its rail operations." *Id.* (emphases added). A "state law expressly targeting railroad operations [is] preempted." *Id.* at 4 n.7 (collecting cases).

Sidley Austin (DC) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

March 4, 2024
Page 2

     *Smithtown* underscores what the ICCTA's text already reflects: There is no "police power" exception to ICCTA preemption. Rather, the federal regime "with respect to regulation of rail transportation [is] exclusive and preempt[s] the remedies provided under Federal or State law." 49 U.S.C. § 10501(b). *Smithtown* also makes clear that (i) imposing an unreasonable burden on rail transportation, (ii) discriminating against rail carriers, and (iii) regulating matters within the Board's exclusive jurisdiction are *independent* grounds for ICCTA preemption. And the Board supported this explanation by citing the Fourth Circuit's decision in *Norfolk Southern*, 608 F.3d at 160—the very case that Defendants cite for their mistaken view. *See* Doc. 72 at 12.

     Indeed, despite arguing to the contrary, Defendants elsewhere recognize that the "as applied" test *is* an independent basis for ICCTA preemption, *see* Doc. 48 at 19; Doc. 72 at 11; they simply misunderstand what it entails.

Sincerely,

/s/ *Gordon D. Todd*
Gordon D. Todd

# EXHIBIT A

51920     SERVICE DATE – FEBRUARY 23, 2024
EB

SURFACE TRANSPORTATION BOARD

DECISION

Docket No. FD 36575 (Sub-No. 1)

TOWN OF SMITHTOWN, N.Y.—PETITION FOR DECLARATORY ORDER

Digest:[1]  The Board denies the Town of Smithtown's petition for declaratory order.

Decided:  February 22, 2024

On June 16, 2023, the Town of Smithtown (Smithtown) filed a petition for declaratory order asking the Board to institute a proceeding to consider issues related to the transportation of hazardous materials by Townline Rail Terminal, LLC (Townline), should the Board grant the petition for exemption filed by Townline in Docket No. FD 36575 to construct and operate a new rail line.  For the reasons discussed below, the Board will deny Smithtown's petition but will provide guidance to the parties about the extent of the Board's jurisdiction over transloading activities as a general matter.  The Board also denies Smithtown's request that the Board declare in the abstract what would constitute a "reasonable request" for the rail transportation of hazardous materials by Townline in the event Townline's petition for exemption in Docket No. FD 36575 is granted and the proposed line is built.

BACKGROUND

By petition filed November 17, 2022, Townline, an affiliate of CarlsonCorp, Inc. (CarlsonCorp), seeks an exemption under 49 U.S.C. § 10502 from the prior approval requirements of 49 U.S.C. § 10901 to construct and operate a new rail line in Smithtown, Suffolk County, N.Y. (the Line).  See Townline Pet. 2, Townline Rail Terminal—Constr. & Operation Exemption—in Suffolk Cnty., N.Y., FD 36575.  The Line would extend approximately 5,000 feet on a portion of CarlsonCorp's industrial property, where CarlsonCorp, a noncarrier, currently operates a state-permitted waste transfer facility.  Id. at 2-3.  According to Townline, the Line would run parallel to, and connect by switch with, the Long Island Railroad's Port Jefferson Line, which is operated by the New York & Atlantic Railway.  Id.  Townline states that the purpose of the proposed construction is to provide rail service to a new truck-rail transload facility that CarlsonCorp plans to construct and operate to handle the transportation of

---

[1] The digest constitutes no part of the decision of the Board but has been prepared for the convenience of the reader.  It may not be cited to or relied upon as precedent.  See Pol'y Statement on Plain Language Digs. in Decisions, EP 696 (STB served Sept. 2, 2010).

Docket No. FD 36575 (Sub-No. 1)

construction and demolition debris and incinerator ash from Long Island.[2] Id. at 3, 5. Townline further states that it would acquire from CarlsonCorp the real property rights needed to construct and operate the Line, and that it, not CarlsonCorp, would hold the common carrier obligation to provide rail service on the Line. Id. at 3. According to Townline, in addition to serving the CarlsonCorp transload facility, the Line could serve other local shippers, such as Covanta Energy, a local waste-to-energy facility, that currently utilizes CarlsonCorp to truck incinerator ash to a landfill. Id. at 4. Townline further states that CarlsonCorp plans to offer transloading services to other local customers that want to ship by rail. Id. at 5.

On April 4, 2023, Townline Association, Inc. (the Association), an association of local residents and property owners,[3] filed in Docket No. FD 36575 a motion to dismiss Townline's petition for exemption. In a supplement to that motion, filed May 3, 2023, the Association points to public statements made by Townline indicating that Townline would not transport hazardous materials. Ass'n Suppl. 1, Townline Rail Terminal—Constr. & Operation Exemption—in Suffolk Cnty., N.Y., FD 36575; id., Ex. A. According to the Association, those statements indicate that Townline does not intend to be a rail carrier because refusing to transport hazardous materials would be an obvious violation of its 49 U.S.C. § 11101(a) common carrier obligation. Id. Townline responded on May 16, 2023, arguing that the Association had misconstrued its statements and that it does intend to fulfill its statutory obligation as a common carrier to accept any reasonable request for service, including requests to transport hazardous materials. Townline Reply 3-6, May 16, 2023, Townline Rail Terminal—Constr. & Operation Exemption—in Suffolk Cnty., N.Y., FD 36575. Townline explains that the public statements the Association relies on reflect only the fact that CarlsonCorp, which is and would remain a noncarrier, would not seek approval from the Town of Smithtown or the New York State Department of Environmental Conservation for authorization to transload hazardous materials at its planned truck-to-rail transload facility. Id. at 4. By decision served November 15, 2023, the Board denied the Association's motion to dismiss. See Townline Rail Terminal, LLC—Constr. & Operation Exemption—in Suffolk Cnty., N.Y., FD 36575 (STB served Nov. 15, 2023).

In its petition for declaratory order, Smithtown states that it has local authority to regulate the construction and use of CarlsonCorp's planned transload facility and that Smithtown's town code does not permit the storage or handling of hazardous materials. (Pet. 3.) Given Townline's statements in Docket No. FD 36575 acknowledging that it would have a common carrier obligation to transport hazardous materials upon reasonable request, Smithtown asks the Board to clarify the meaning of a "reasonable request" under § 11101(a) and the impact federal jurisdiction would have on the regulatory authority of New York state and the Town of

---

[2] Townline states that CarlsonCorp, a noncarrier, would independently own, construct, and operate the planned transload facility, and the construction and operation of the transload facility would be subject to state and local regulation. Townline Pet. 2-3, Townline Rail Terminal—Constr. & Operation Exemption—in Suffolk Cnty., N.Y., FD 36575.

[3] The Association was joined in its filing by Richard and Carol DiGrandi; Keith and Patricia Macartney; and Brian and Keegan Harris, all of whom own homes near the proposed rail construction project. Ass'n Mot. 1, Townline Rail Terminal—Constr. & Operation Exemption—in Suffolk Cnty., N.Y., FD 36575.

2

Smithtown. (Id.) Smithtown also proposes a procedural schedule for the submission of statements. (Id. at 4.)

On June 21, 2023, Townline filed a letter informing the Board that it does not oppose Smithtown's petition or the proposed procedural schedule. On July 5, 2023, the Association[4] replied in opposition to Smithtown's petition. The Association argues that Smithtown's petition for declaratory order should be denied because the common carrier obligation extends to hazardous materials and local and state regulations that prohibit the transportation of those materials are federally preempted under 49 U.S.C. § 10501(b).[5] (Ass'n Reply 1, 6-8.)

DISCUSSION AND CONCLUSIONS

Under 5 U.S.C. § 554(e) and 49 U.S.C. § 1321, the Board may issue a declaratory order to terminate a controversy or remove uncertainty. The Board has broad discretion to determine whether to issue a declaratory order. See Bos. & Me. Corp. v. Town of Ayer, 330 F.3d 12, 14 n.2 (1st Cir. 2003); Intercity Transp. Co. v. United States, 737 F.2d 103 (D.C. Cir. 1984); Delegation of Auth.—Declaratory Ord. Proc., 5 I.C.C.2d 675 (1989). Where the law is clear, the Board may decline to institute a declaratory order proceeding. See 14500 Ltd.—Pet. for Declaratory Ord., FD 35788, slip op. at 2 (STB served June 5, 2014). Here, because the case law addressing the extent of the Board's jurisdiction over transloading activities is well-established, the Board will deny Smithtown's request for a declaratory order, but it will provide guidance to the parties about the extent of the Board's jurisdiction over such activities.[6] The Board also denies Smithtown's request that the Board declare in the abstract what would constitute a "reasonable request" under § 11101(a) for the rail transportation of hazardous materials by Townline in the event Townline's petition for exemption in Docket No. FD 36575 is granted and the proposed line is built.

The Board has jurisdiction over "transportation by rail carrier." 49 U.S.C. § 10501(a). The term "transportation" is defined to include a "property, facility, . . . or equipment of any kind" related to the movement of property by rail and "services" related to that movement, including receipt, delivery, transfer, and handling of property. 49 U.S.C. § 10102(9)(A), (B). "Rail carrier" is defined as "a person providing common carrier railroad transportation for compensation." 49 U.S.C. § 10102(5). Whether a particular activity constitutes transportation by rail carrier under § 10501(a) is a case-by-case, fact-specific determination. See, e.g., Padgett v. STB, 804 F.3d 103, 108 (1st Cir. 2015); Town of Milford, Mass.—Pet. for Declaratory Ord., FD 34444, slip op. at 2 (STB served Aug. 12, 2004).

---

[4] The Association was again joined in its filing by Richard and Carol DiGrandi, Keith and Patricia Macartney, and Brian and Keegan Harris. (Ass'n Reply 1.)

[5] The Association further argues that, should the Board grant its motion to dismiss Townline's petition for construction and operation authority in Docket No. FD 36575, Smithtown's petition for declaratory order in this docket should be denied as moot. (Ass'n Reply 1 n.1.) As noted above, the Board denied the Association's motion to dismiss by decision served on November 15, 2023.

[6] Because the Board is denying Smithtown's petition for declaratory order, Smithtown's request for a procedural schedule is moot.

Docket No. FD 36575 (Sub-No. 1)

Where the Board has jurisdiction over transportation by rail carrier, that jurisdiction is "exclusive," § 10501(b), and state and local laws and regulations are generally preempted.[7] The purpose of § 10501(b) is to prevent a patchwork of state and local regulation from unreasonably interfering with interstate commerce. As the Board and courts have observed, "[i]t is difficult to imagine a broader statement of Congress' intent to preempt state regulatory authority over railroad operations." Tri-City R.R.—Pet. for Declaratory Order, FD 35915, slip op. at 6 (STB served Sept. 14, 2016) (citing City of Auburn v. United States, 154 F.3d 1025, 1030 (9th Cir. 1998)). This preemption provision does not prevent state and local governments from imposing appropriate health and safety regulations and exercising their police powers so long as the challenged statute or regulation would not unreasonably burden rail transportation, discriminate against rail carriers, or impinge on the Board's jurisdiction or a railroad's ability to conduct its rail operations. Norfolk S. Ry., 608 F.3d at 160; Norfolk S. Ry. v. City of Alexandria, 2009 WL 1011653, at *9 (E.D. Va. Apr. 15, 2009); CSX Transp., Inc.—Pet. for Declaratory Ord., FD 34662, slip op. at 7 (STB served May 3, 2005).

With respect to transloading, the Board has consistently found that such activities fall within the broad definition of transportation in § 10102(9), see, e.g., Hi Tech Trans, LLC—Pet. for Declaratory Ord.—Newark, N.J., FD 34192 (Sub-No. 1), slip op. at 5-6 (STB served Aug. 14, 2003); Louisville & Jefferson Cnty. Riverport Auth.—Pet. for Declaratory Ord., FD 36463, slip op. at 5 (STB served Oct. 22, 2021), and such activities are clearly subject to the Board's jurisdiction when performed by, or under the auspices of, a rail carrier. See City of Alexandria, Va.—Pet. for Declaratory Ord., FD 35157, slip op. at 2 (STB served Feb. 17, 2009). Whether state and local regulations prohibiting a transloading facility from storing and handling hazardous materials would be preempted under § 10501(b) depends on whether the facility's transloading services are part of or integrally related to "transportation by rail carrier." See Norfolk S. Ry. v. City of Alexandria, 608 F.3d at 159 n.11; Norfolk S. Ry. v. City of Alexandria, 2009 WL 1011653, at *8. In other words, the Board's jurisdiction extends to rail-related activities that take place at transload facilities if the activities are offered by a rail carrier, either directly or through its agent, or if a rail carrier exerts control over a third-party's operations.

According to Townline, CarlsonCorp, a noncarrier, would independently own, construct, and operate the planned transload facility, which would be served by Townline as a common carrier on the proposed Line. Townline Pet. 2-3, Townline Rail Terminal—Constr. & Operation of a Line of R.R. in Suffolk Cnty., N.Y., FD 36575; see also Ass'n Mot. 2, 4, Townline Rail

---

[7] ICCTA preempts both direct and indirect regulation that affects a railroad's ability to conduct common carrier operations. See, e.g., Norfolk S. Ry. v. City of Alexandria, 608 F.3d 150, 154-155, 160 (4th Cir. 2010) (ICCTA preempted an ordinance and permit regulating truck transportation on city streets due to their unreasonably burdensome effect on rail transportation); Cities of Auburn & Kent, WA—Pet. for Declaratory Ord.—Burlington N. R.R.—Stampede Pass Line, 2 S.T.B. 330, 339 (1997) ("[W]here the local permitting process could be used to frustrate or defeat an activity that is regulated at the Federal level, the state or local process is preempted."); see also Ass'n of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist., 622 F.3d 1094, 1098 (9th Cir. 2010) (local regulations applying "exclusively and directly to railroad activity" preempted); Burlington N. & Santa Fe Ry. v. Dep't of Transp., 206 P.3d 261, 264 (Or. Ct. App. 2009) (state law expressly targeting railroad operations preempted).

Docket No. FD 36575 (Sub-No. 1)

Terminal—Constr. & Operation of a Line of R.R. in Suffolk Cnty., N.Y., FD 36575 (stating that the Line would serve a new rail transloading facility that CarlsonCorp will build on its property that would be "subject to state and local regulation"). Although CarlsonCorp and Townline are affiliated entities, nothing in the record indicates that CarlsonCorp would act as Townline's agent, that Townline would exert control over CarlsonCorp's operations at the facility, or that CarlsonCorp's transloading would be included as part of the common carrier rail service Townline would offer to the public. Under those circumstances, the transloading activities contemplated by CarlsonCorp would not constitute "transportation by rail carrier." Assuming that the information before the Board is accurate, the transloading services offered by CarlsonCorp would not fall within the Board's jurisdiction, and, therefore, state and local regulations prohibiting CarlsonCorp from storing and handling hazardous materials at the transload facility would not be preempted under § 10501(b).[8] Although Townline, as a common carrier, would have an obligation to carry hazardous materials on reasonable request, Townline's common carrier obligation would impart no obligation on CarlsonCorp to transload such materials.

Additionally, as noted above, Smithtown asks the Board to determine the meaning of "reasonable request" in the context of the situation at hand. (See Pet. 3.) Under § 11101(a), a rail carrier has a common carrier obligation "to provide . . . service on reasonable request." See Union Pac. R.R.—Pet. for Declaratory Ord., FD 35219, slip op. at 3-4 (STB served June 11, 2009). What constitutes a reasonable request for service is not statutorily defined; whether a request is reasonable depends on the relevant facts and circumstances. Union Pac. R.R., FD 35219, slip op. at 3-4; Sherwin Alumina Co. v. Union Pac. R.R., NOR 42143, slip op. at 5 (STB served Sept. 29, 2015).[9] Here, the Board declines to describe in the abstract what may constitute a reasonable request for transportation of hazardous materials by Townline under § 11101(a).

It is ordered:

1. Smithtown's petition for declaratory order is denied.

2. This decision is effective on its service date.

By the Board, Board Members Fuchs, Hedlund, Oberman, Primus, and Schultz.

---

[8] This accords with Townline's representation that construction and operation of the planned transload facility will be subject to state and local regulation. Townline Pet. 3, Townline Rail Terminal—Constr. & Operation Exemption—in Suffolk Cnty., N.Y., FD 36575.

[9] See LI Acquis. Corp.—Aban. Exemption—in Montgomery Cnty., Pa., AB 405 (Sub.-No. 1X) et al., slip op. at 9 (ICC served Aug. 23, 1994) ("Requests for rail transportation must be specific and reasonable."); Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 325 (1981) ("But '[t]he duty to provide [rail service] is not absolute,' and the law 'exacts only what is reasonable of the railroads under the existing circumstances.'").