IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Association of American Railroads, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 1-23cv815 (DJN) |
| | ) |
| Jehmal T. Hudson, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS COMMISSIONER BRICH AND DIRECTOR ROLBAND'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

Jason S. Miyares
  *Attorney General*

Steven G. Popps (VSB #80817)
  *Deputy Attorney General*

Leslie A. T. Haley (VSB #36333)
  *Deputy Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7704 – Telephone
(804) 371-0200 – Facsimile
SPopps@oag.state.va.us

Erika L. Maley (VSB #97533)
  *Solicitor General*

Graham K. Bryant (VSB #90592)
  *Deputy Solicitor General*

Thomas J. Sanford (VSB #95965)
R. Cooper Vaughan (VSB #92580)
  *Assistant Attorneys General*

*Counsel for Defendants Michael Rolband and Stephen C. Brich*

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Clinton v. City of New York*,
   524 U.S. 417 (1998)......................................................................................................6

*Elhady v. Kable*,
   993 F.3d 208 (4th Cir. 2021) .........................................................................................7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)......................................................................................................7

*Hodel v. Virginia Surface Mining & Reclamation Ass'n. Inc.*,
   452 U.S. 264 (1981)...................................................................................................7, 8

*Horelick v. Lamont*,
   No. 3:21-cv-1431-MPS, 2023 U.S. Dist. LEXIS 158216 (D. Conn. Sep. 7,
   2023) .............................................................................................................................3

*Hunt v. Washington State Apple Advertising Comm'n*,
   432 U.S. 333 (1977)......................................................................................................2

*Kansas City S. Ry. Co. v. Arkansas La. Gas Co.*,
   476 F.2d 829 (10th Cir. 1973) ......................................................................................4

*Light v. Danville*,
   190 S.E. 276 (Va. 1937)................................................................................................5

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)......................................................................................................1

*Pennell v. San Jose*,
   485 U.S. 1 (1988).......................................................................................................7, 8

*PruneYard Shopping Ctr. v. Robins*,
   447 U.S. 74 (1980).....................................................................................................4, 6

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)......................................................................................................1

*State of Ga. v. City of Chattanooga*,
   264 U.S. 472 (1924)......................................................................................................5

*Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*,
   600 U.S. 181 (2023)......................................................................................................1

*Trin-Co Inv. Co. v. United States*,
    130 Fed. Cl. 592 (2017) ............................................................................................................7

*United States v. 8.41 Acres of Land*,
    680 F.2d 388 (5th Cir. 1982) ....................................................................................................6

*United States v. Virginia Electric Co.*,
    365 U.S. 624 (1961) ..................................................................................................................6

*Uzuegbunam v. Preczewski*,
    141 S. Ct. 792 (2021) .....................................................................................................1, 2, 3, 6

*Washington Legal Found. v. Legal Found. of Wash.*,
    271 F.3d 835 (9th Cir. 2001) ....................................................................................................7

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008) ..................................................................................................................7

**Statutes**

28 U.S.C. § 2403 .............................................................................................................................1

**Other Authorities**

Canons of Judicial Conduct for the Commonwealth of Virginia, Va. Sup. Ct. R.,
    Part 6, § III, Preamble ..............................................................................................................1

Restatement (Third) of Property: Servitudes § 1.2 ....................................................................4, 5

Defendants Michael Rolband, Director of the Department of Environmental Quality, and Stephen C. Brich, Commissioner of the Virginia Department of Transportation (together, "Defendants"), by counsel, submit this memorandum in response to the Court's invitation for supplemental briefing on standing as to Counts II and III, including the Supreme Court's decision in *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021). See March 21, 2024 Hr'g Tr. at 31:10–32:15.[1]

The Association's failure to allege a cognizable injury-in-fact for its facial takings claims deprives it of standing and warrants dismissal of this action. Among the other deficiencies discussed at length in prior briefing, see Defs.' Opening Brief, ECF No. 48, Part I.C, the Association's assertion that Code § 56-16.3 "curtails [its] members' right to exclude others" does not establish standing, Ass'n Opposition Br., ECF 58, at 19. This generalized allegation is too speculative to demonstrate that any one of the Association's members has suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); see *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181, 199 (2023) (to establish representational

---

[1] The Court announced at the hearing that it will "dismiss Counts I, IV, V, and VI," requesting additional briefing only as to Counts II and III, the two claims under the Takings Clause. Hr'g Tr. at 4:5–7. The Court further stated that it will "find that sovereign immunity applies to Defendant Rolband and Defendant Brich," *id.*, resolving the claims as to those Defendants. If the constitutional claims were to proceed as to the remaining Defendant, Commissioner Hudson, however, the Commonwealth would likely need to intervene in this action to defend the constitutionality of its statute, *cf.* 28 U.S.C. § 2403(b), particularly given that Commissioner Hudson's role as a judicial officer on the State Corporation Commission may limit his ability to take a position on the merits of the Association's claims. See Hr'g Tr. at 11:8–15; see generally Canons of Judicial Conduct for the Commonwealth of Virginia, Va. Sup. Ct. R., Part 6, § III, Preamble ("These Canons apply to . . . Commissioners of the State Corporation Commission. . . .").

1

standing, the Association must demonstrate that at least one member "would otherwise have standing to sue in [its] own right." (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977))). Whether a crossing inflicts any cognizable injury under the Takings Clause will necessarily turn on the facts of the specific crossing—including the nature of the railroad's property interest in the particular land at issue, whether and to what extent the railroad had a "right to exclude" in the first instance, and whether the value of the broadband easement taken exceeds the statute's default fee. Thus, this case is unlike *Uzeugbunam*, where the plaintiff clearly had suffered a concrete and particularized injury, and the issue was simply whether nominal damages could redress that injury where the plaintiff was unable to "quantify that harm in economic terms." *Uzeugbunam*, 141 S. Ct. at 797, 802.

*Uzeugbunam* does not apply here. The plaintiff in that case was a student whose First Amendment rights were violated when campus police ordered him to stop speaking about his faith and distributing religious literature at designated "free speech zones" on the college campus. *Uzeugbunam*, 141 S. Ct. at 796–97. During the pendency of the litigation, the college revised its speech policies, and then argued that the revision rendered the student's claims moot because he had sought only injunctive relief and nominal damages. *Id.* at 797. The Supreme Court disagreed with this argument, holding that "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." *Id*. at 802. This ruling does not aid the Association because the Association fails to establish the first element of standing—a concrete, particularized injury.

As an initial matter, *Uzuegbunam* does not apply to Counts II and III—the only Counts that remain at issue—because the Association did not make "a request for nominal damages" with respect to those claims. 141 S. Ct. at 502; see Am. Compl., ECF No. 35, at pp. 42–43 (Prayer for

Relief) (requesting nominal damages for only Counts IV, V, and VI). Nor could it—"the *Ex Parte Young* exception does not apply to [] claims for nominal damages" because "nominal damages are, of course, a form of damages." *Horelick v. Lamont*, No. 3:21-cv-1431-MPS, 2023 U.S. Dist. LEXIS 158216, at *34 (D. Conn. Sep. 7, 2023) (citing *Uzuegbunam*, 141 S. Ct. at 801).

*Uzuegbunam* also does not support the Association's argument that it has sufficiently alleged a cognizable injury-in-fact. Indeed, in *Uzuegbunam*, "[t]here [was] no dispute that [plaintiff] ha[d] established" an injury-in-fact: that his First Amendment rights were violated when campus police ordered him to stop "distributing written religious materials" and "speaking about his religion" on the college campus. *Uzuegbunam*, 141 S. Ct. at 796–97. *Uzuegbunam* considered whether a request for nominal damages could establish the third element of standing, redressability, holding that the student's claim remained redressable where his injury was primarily noneconomic in nature and was compensable only through nominal damages. *Id.* at 797, 802. The Court emphasized the narrow scope of its ruling: "Our holding concerns only redressability," and applies only to claims "based on a *completed* violation of a legal right," *id*. at 802 (emphasis added), where the plaintiff has "establishe[d] the first two elements of standing (injury and traceability)," *id*. at 797. The Court expressly noted that "[i]t remains for the plaintiff to establish the other elements of standing (*such as a particularized injury*)." *Id.* at 802 (emphasis added); see also *id.* at 802 n.* ("Nominal damages go only to redressability and are unavailable where a plaintiff has failed to establish a past, completed injury."). The Association's claims fail on this prong. See Defs.' Opening Br. Part I.C.1 & Reply Br., ECF No. 72, at 7.

The Association has not adequately alleged facts showing a concrete and particularized injury by alleging a generalized diminution of its members' right to exclude. The Complaint contains no alleged facts about any particular actual or imminent crossings, and thus whether any

3

injuries to the Association's members "are going to take place or have taken place at this point is hypothetical." Hr'g Tr. at 23:1–17. And the alleged facts do not show that every application of the challenged statute will necessarily cause an injury to a member's right to exclude. See Defs.' Opening Br. at 18–19, 21, 26 & Reply Br. at 9–10 (explaining the *Salerno* standard for facial challenges). Although the right to exclude is typically a significant "stick" in the "bundle" of property rights, not every holder of a property interest has such a right, or has it to the same extent. See *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 84 (1980) (explaining that whether a "state-authorized limitation of" the "right to exclude others" amounts to a taking is a fact-dependent question that varies based on the nature of the interest involved); see also Hr'g Tr. at 20:9–18.

In particular, for railroads, the existence and extent of a right to exclude depends upon the precise property interest the railroad holds—often itself an interest granted by the government through the exercise of eminent domain. See Restatement (Third) of Property: Servitudes § 1.2 cmt. c ("The degree of exclusivity of the rights conferred by an easement or profit is highly variable . . . ."); Brief of Amicus Curiae Virginia, Maryland, and Delaware Ass'n of Broadband Cooperatives, ECF No. 57, Part I; see generally Christian Wolmar, The Great Railroad Revolution: The History of Trains in America xxi–xxii, 25–26 (2012) (discussing how construction of America's rail network depended on eminent domain). A railroad, for instance, may hold only surface rights that may not be diminished by a subsurface or aerial crossing. See, *e.g.*, *Kansas City S. Ry. Co. v. Arkansas La. Gas Co.*, 476 F.2d 829, 835 (10th Cir. 1973) (noting that railroads with interests in surface rights cannot prevent servient estates' owners from using land below the surface that is not "used or needed by the railroad company"); see generally Brief of Amicus Curiae VCTA & NCTA, ECF No. 54, Part A.4. Or a railroad's property interests may already be subject to a public right-of-way, meaning that it lacks a right to exclude others from crossing its property. See

4

Restatement (Third) of Property: Servitudes § 1.2 cmt. c (describing how the holders of some easements have "no right to exclude anyone from making any use that does not unreasonably interfere with the uses authorized by the servitude," such as how "the holder of a private roadway easement in a public road has no right to exclude anyone from using the road"). And of course, the "right to exclude is always cabined by eminent domain." Hr'g Tr. at 22:11–19; see Defs.' Reply Br. at 7. All owners of private property interests own those interests subject to the government's background power of eminent domain. See *State of Ga. v. City of Chattanooga*, 264 U.S. 472, 480 (1924) ("The power of eminent domain is an attribute of sovereignty, and inheres in every independent state."); *Light v. Danville*, 190 S.E. 276, 281 (Va. 1937) (similar). Because the Complaint's allegations do not show that its members hold an unfettered right to exclude in the first instance, the mere existence of a statute governing the exercise of the eminent domain power for broadband crossings does not establish a particularized injury to any of the Association's members.

Nor does the Complaint adequately allege facts showing that any member has suffered a concrete and cognizable injury to its "bargaining position." Am. Compl. ¶ 143; Ass'n Opposition Br. at 20. Again, any effect of the statute on railroads' bargaining positions will necessarily vary with the particular crossing at issue. For instance, when the default fee provided by the statute is higher than the value of the easement taken, it is hard to see how a railroad's "bargaining position" would be injured. See Brief of Amicus Curiae RailPros Field Services Inc., ECF No. 71 at 5–6 (discussing how Virginia's default fee exceeds the amount railroads charged for most crossings). To the extent the Association is contending that railroads previously used their "bargaining position" to extract payments from broadband providers that were *higher* than the fair market value of the easement, the Fifth Amendment gives railroads no right to engage in such monopolistic

practices. See *United States v. 8.41 Acres of Land*, 680 F.2d 388, 392 (5th Cir. 1982) (observing that when the property interest taken "is merely an easement, the proper measure of damages is . . . the difference between the market value of the land free of the easement and the market value as burdened with the easement." (citing *United States v. Virginia Electric Co.*, 365 U.S. 624, 630 (1961))); Hr'g Tr. at 22:15–24; 26:19–25. Indeed, the only case the Association cites in support of its "bargaining theory" did not involve the Takings Clause at all. Ass'n Opposition Br. at 19–20 (citing *Clinton v. City of New York*, 524 U.S. 417 (1998)).

In short, whether a given crossing constitutes an uncompensated taking or diminishes a right to exclude will depend on the nature and value of the particular property interest a railroad has in that crossing. See *PruneYard Shopping Ctr.*, 447 U.S. at 84; Brief of Amicus Curiae RailPros Field Services Inc. at 6. Because the Association alleges no facts regarding any actual or imminent crossing, its Complaint fails to show that a particularized, concrete injury has occurred or is certainly impending to any member. If anything, this case is the opposite of *Uzeugbunam*: in *Uzeugbunam*, the injury was highly concrete and particularized, but damages were not quantifiable because the harm was noneconomic. *Uzuegbunam*, 141 S. Ct. at 796, 802. Here, by contrast, the alleged harm is entirely economic, but is too nebulous and speculative to support standing at this stage.

Finally, the posture of this case—a facial challenge to a statute under the Takings Clause brought by the Association without any of its members participating—further forecloses standing. See Hr'g Tr. at 14:18–15, 17:18–18:2 (explaining the strong presumption against facial challenges, particularly in takings cases where the analysis depends upon highly specific facts). The Fourth Circuit has explained that "'[f]acial challenges are disfavored' because," like here, "they 'often rest on speculation,' violate principles of 'judicial restraint,' and 'threaten to short circuit the

6

democratic process' by empowering judges over the people's representatives." *Elhady v. Kable*, 993 F.3d 208, 217 (4th Cir. 2021) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450–51 (2008)). And the Supreme Court has emphasized the particular importance "in takings cases [of] adher[ing] to [its] admonition that 'the constitutionality of statutes ought not be decided except in an actual factual setting that makes such a decision necessary.'" *Pennell v. San Jose*, 485 U.S. 1, 10 (1988) (quoting *Hodel v. Virginia Surface Mining & Reclamation Ass'n. Inc.*, 452 U.S. 264, 294–95 (1981)). The Association is wrong that this principle is limited to regulatory takings claims. See Hr'g Tr. at 30:20–31:4. It applies likewise to other constitutional challenges, including fact-intensive physical taking claims. See, *e.g.*, *Pennell*, 485 U.S. at 11 n.5 (noting that lack of a concrete factual setting would also make a physical taking claim against a rent control ordinance premature); *Trin-Co Inv. Co. v. United States*, 130 Fed. Cl. 592, 598 (2017) (observing in physical taking case that "[t]akings cases are typically fact-specific and often turn on facts that are developed at trial"). In short, "[b]y taking a roundhouse swing" at the statute, rather than bringing a case based on the specific facts of a particular broadband crossing, the Association has "raised the bar [it] must clear." *Elhady*, 993 F.3d at 217. It cannot clear that bar in the absence of any specific factual allegations showing that at least one of its members is injured by a particular actual or imminent broadband crossing.

For similar reasons, the Association lacks standing because "the claim asserted . . . requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000); *Washington Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835, 850 (9th Cir. 2001) (observing in takings case that "determining what, if any, just compensation is due to the owner of the property taken," is a fact-specific question that "necessarily requires the participation of the individual members"); see Defs.' Opening Br. Part

7

I.C.2 & Reply Br. at 7–8.

The Complaint fails to provide this Court the "actual factual setting" needed to support a takings claim. *Pennell*, 485 U.S. 1, 10 (quoting *Hodel*, 452 U.S. at 294–95). At bottom, determining how a purported injury to the right to exclude "plays out," Hr'g Tr. at 20:3–4, must be done in the detailed context of an actual or imminent crossing where it will be plain whether an uncompensated taking has—or has not—occurred. Without specific factual allegations on the nature and value of the railroad property involved or the details of any particular crossing, the Complaint fails to show the injury-in-fact required for standing on Counts II and III.[2]

## CONCLUSION

This Court should dismiss the First Amended Complaint in its entirety.

---

[2] For the reasons stated in Defendants' prior briefing, Counts II and III should also be dismissed on the merits pursuant to Rule 12(b)(6). See Defs.' Opening Br. II.B & Reply Br. Part II.B.

Dated: March 27, 2024                            Respectfully submitted,

**MICHAEL ROLBAND AND STEPHEN C. BRICH**

By: ___*/s/ Steven G. Popps*___
      Steven G. Popps (VSB #80817)
      *Deputy Attorney General*

Jason S. Miyares
  *Attorney General*

Erika L. Maley (VSB #97533)
  *Solicitor General*

Leslie A. T. Haley (VSB #36333)
  *Deputy Attorney General*

Graham K. Bryant (VSB #90592)
  *Deputy Solicitor General*

Thomas J. Sanford (VSB #95965)
R. Cooper Vaughan (VSB #92580)
  *Assistant Attorneys General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7704 – Telephone
(804) 371-0200 – Facsimile
SPopps@oag.state.va.us

*Counsel for Defendants Michael Rolband and Stephen C. Brich*

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on March 27, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

      ___*/s/ Steven G. Popps*___
      Steven G. Popps (VSB #80817)
      *Counsel for Defendants Michael Rolband and Stephen C. Brich*

9